# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MEMARY LAROCK, individually and on behalf of all others similarly situated, | CASE NO. 24-5745 |
| Plaintiff, | |
| v. | **COMPLAINT—CLASS ACTION** |
| ZOOMINFO TECHNOLOGIES, LLC, | (JURY TRIAL DEMANDED) |
| Defendant. | |

On behalf of herself and all others similarly situated, Plaintiff Memary LaRock complains and alleges as follows based on personal knowledge as to herself, the investigation of their counsel, and information and belief as to all other matters, and demand trial by jury. Plaintiff believes that substantial evidentiary support will exist for the allegations in this complaint, after a reasonable opportunity for discovery.

## NATURE OF THE CASE

1.      This case is about upholding the rights of millions of Americans who have never interacted with Defendant ZoomInfo Technologies, LLC but who have nonetheless had their names and other personally identifying information misappropriated and used by Defendant to advertise and promote its products and services.

2.      Defendant has built a billion-dollar business collecting, cataloging, and selling access to Americans' personally identifying information.  The crux of Defendant's business model is selling subscriptions to its Zoominfo.com platform, which provide access to a vast database of personally identifying information and a suite of other related business-development products.

3.      To maximize the revenue it generates from paid subscriptions, Defendant misappropriates the names of everyone whose personal information it has amassed in its database, and then uses these individuals' names and corresponding personally identifying information to advertise and promote subscriptions to its platform and other related products and services—without asking for, let alone obtaining consent from, any of these individuals prior to doing so.  Defendant does this in two primary ways.

4.      <u>First</u>, Defendant has established and maintains a publicly accessible free-preview "profile" page for millions of Americans (including Plaintiff and each of the proposed class members) whose personal information appears in its database. Each of these free-preview "profile" pages includes the name, employer, and other personally identifying information and attributes of the person to whom it corresponds.  Defendant has carefully optimized each of these free-preview "profile" pages with source code designed to maximize its visibility on internet search engines.

CLASS ACTION COMPLAINT

5.      Each free-preview "profile" page displays its subject's name and other corresponding personally identifying information to any member of the public who encounters the page for the singular purpose of advertising paid subscriptions to Defendant's platform.

6.      Indeed, each of these pages also contains numerous buttons and hyperlinks, including a button to "Contact Sales," any one of which when clicked routes the visitor into Defendant's sales pipeline where the visitor is able to purchase a subscription to Defendant's platform (that will unlock access to all of the personally identifying information on each of the millions of Americans whose information appears in Defendant's database) as well as other related business-development products and services.

7.      Second, Defendant offers "free trials" of its subscription services to prospective subscribers.  A "free trial" allows any potential paying subscriber to access all of the names and corresponding personally identifying information of each of the millions of people whose information Defendant has catalogued in its platform.  As with the free-preview "profile" pages, Defendant provides these "free trial" subscriptions to prospective consumers with the goal of enticing them to purchase paid subscriptions to its platform.

8.      In each of these two ways, Defendant has used the names and corresponding personally identifying information of Plaintiff and millions of other

CLASS ACTION COMPLAINT

unsuspecting Americans to advertise and sell subscriptions to its platform, without having provided prior notice to, much less obtained consent from, any of these people.

9.     Washington's Personality Rights Act ("WPRA") clearly prohibits what Defendant has done.  The WPRA prohibits companies like Defendant from using a person's "name, voice, signature, photograph, or likeness" for purposes of "advertising products, merchandise, goods, or services," without having first obtained the person's consent.  *See* RCW 63.60.050.  As alleged herein, Defendant, from its corporate headquarters and principal place of business in Washington, systematically used Plaintiff's and millions of other Americans' names and corresponding personally identifying information to advertise and sell subscriptions to its platform, without having asked for, much less obtained, any of their consent—in clear violation of the WPRA.

10.     Accordingly, Plaintiff brings this action, individually and on behalf of the proposed classes defined below, to redress and put a stop to Defendant's violations of the WPRA.

**PARTIES**

11.     Defendant ZoomInfo Technologies, LLC is a Delaware corporation that maintains its headquarters and principal place of business in Vancouver, Washington.  Defendant owns and operates the website Zoominfo.com, where it advertises and sells, from its headquarters and principal place of business in Vancouver, Washington, products and services to persons throughout the United States.

12.     Plaintiff Memary LaRock is a natural person and is, and at all times relevant hereto was, a resident of Bremerton, Washington.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (i) at least one member of each of the putative classes is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000 with respect to each of the putative classes, exclusive of interest and costs, and (iii) there are at least 100 members of each of the putative classes.

14.     Personal jurisdiction and venue are proper because Defendant maintains its corporate headquarters in Vancouver, Washington, which is within this judicial District.

## APPLICABLE STATUTORY SCHEME

### I.    Washington's Personality Rights Act

15.    The WPRA defines a relevant property right in the use of several characteristics associated with one's identity: "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness."  *See* RCW 63.60.010.

16.    The WPRA specifies that it is "intended to apply to all individuals and personalities, living and deceased, regardless of place of domicile or place of domicile at time of death."  *Id.*

17.    The WPRA prohibits companies like Defendant from, *inter alia*, publicly using an individual's "name, voice, signature, photograph, or likeness" for purposes of "advertising products, merchandise, goods, or services," without having first obtained the individual's consent.  *See* RCW 63.60.050.

18.    The WPRA provides for, *inter alia*, statutory damages of $1,500.00 per violation of the statute and injunctive relief.  *See* RCW 63.60.060.

19.    As explained below, Defendant disregarded its legal responsibilities to Plaintiff and millions of other Americans by systematically using their names and corresponding personally identifying information to advertise and sell subscriptions to its Zoominfo.com platform and other related products and services, without any of their consent—in direct violation of the WPRA.

## FACTUAL BACKGROUND

20.     As the self-styled "leading data intelligence platform for sales and go-to-market organizations," Defendant has built a billion-dollar business selling subscriptions to its Zoominfo.com platform.[1]

21.     Paying subscribers to Zoominfo.com can access a vast database of Americans' personally identifying information, including their names, email addresses, phone numbers, physical addresses, employers, and more. According to Defendant, its "database provides access to over 209 million professional profiles,"[2] collectively comprising over 32 million email addresses, 140 million contact profiles, and 150 million email addresses, among other information.[3] The success of Defendant's business to date has "rel[ied] heavily on the collection and use of information to provide effective insights to [its] customers and users."[4]

---

[1]     Press Release, ZoomInfo, "ZoomInfo Opens New Corporate Headquarters," Jan. 22, 2019, available at https://www.zoominfo.com/newsroom/press-releases/zoominfo-opens-new-corporate-headquarters-11001.

[2]     ZoomInfo, Find Emails and Phone Numbers of Professionals in United States, available at https://www.zoominfo.com/people-search/location-usa-industry.

[3]     ZoomInfo, Search 106M+ Companies and 130M+ Contacts, available at https://www.zoominfo.com/s/search.

[4]     ZoomInfo Technologies Inc., Form S-1 "Registration Statement," Feb. 26, 2020, available at https://www.sec.gov/Archives/edgar/data/1794515/000162828020002344/zoominfos-1.htm, at 24.

CLASS ACTION COMPLAINT

22.    Defendant also offers several suites of business-development products and services along with access to its database.  These suites are broadly referred to as "Sales," "Marketing," and "Talent":



23.    The business-development suites are available on a subscription basis. They provide access to products and services which enable subscribers to utilize the names, identities, contact information, and other personally identifying information accessible through Defendant's platform.   These products include, but are not limited to, the software services Chorus, Chat, and Engage, as pictured below:

CLASS ACTION COMPLAINT



24.     Defendant makes money by selling subscriptions to its platform.  In fact, Defendant "derive[s] 99% of [its] revenue from subscription services and expect[s] to continue to generate revenue from the sale of subscriptions to [its] platform and data."[5]

25.     As Defendant recently acknowledged, it remains "focused on continuing to grow the number of customers that use [its] platform in the United States and around the world," because its "operating results and growth prospects will depend in part on [its] ability to continue to attract new customers."[6]   To

---

[5]     ZoomInfo Technologies Inc., Form S-1 "Registration Statement," Feb. 26, 2020,                          available                          at https://www.sec.gov/Archives/edgar/data/1794515/000162828020002344/zoominfos-1.htm, at 28.

[6]     ZoomInfo Technologies Inc., Form 10-Q "Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934," May 7, 2024, available at

CLASS ACTION COMPLAINT

continue to attract new customers, Defendant has "invest[ed] in [several] efficient go-to-market effort[s] to acquire new customers." *Id.*

26.    This case concerns two such advertising efforts: (1) Defendant's publication and promotion of publicly accessible free-preview "profile" pages in which Defendant uses the names and corresponding personally identifying information of particular persons, without their consent; and (2) Defendant's provision of "free trials" to prospective customers which provide temporary access to its platform, including to the names and corresponding personally identifying information of all of the individuals whose information appears in Defendant's database, also without those individuals' consent.

27.    As a part of each of these efforts, Defendant has systematically misappropriated the names and corresponding personally identifying information of Plaintiff and millions of other Americans to advertise and sell paid subscriptions to its platform and related products and services.

---

https://app.quotemedia.com/data/downloadFiling?webmasterId=90423&ref=31829 9654&type=HTML, at 38.

CLASS ACTION COMPLAINT

I.    **Defendant Violates the Washington Personality Rights Act by Using Plaintiff's and Class Members' Names and Corresponding Personally Identifying Information in Free-Preview "Profile" Pages to Advertise and Sell Paid Subscriptions to Its Platform**

28.    First, Defendant advertises, promotes, and solicits sales of paid subscriptions to its platform by publishing millions of publicly accessible free-preview "profile" pages.

29.    Each of these free-preview "profile" pages pertains to a particular person, and "the categories of personal information that may be made publicly available [on these pages] include past or current name, company, company headquarters telephone number, office address, job title, and/or education."[7] Notably, Defendant admits that it "processes this information for purposes of promoting our products."[8]

30.    Each free-preview "profile" page includes the relevant individual's name and additional personally identifying information corresponding to that individual.

31.    Defendant has established a free-preview "profile" page which misappropriates Plaintiff's name and corresponding personally identifying

---

[7]    ZoomInfo Notification, "Notice of personal information processing (this is not an advertisement)," May 6, 2021, available at https://it.brown.edu/phish-bowl-alerts/notice-personal-information-processing-not-advertisement-zoominfo.

[8]    *Id.* (emphasis added).

information.  As shown in the following screenshot, this page displays Plaintiff's name, job title, employer, and employer's address among other personally identifying detail, as well as buttons and hyperlinks stating "Contact Sales," "Sign Up," and "Join Now" (circled in black):[9]



When clicked, each of the hyperlinks circled in the above-pictured page routes the visitor into Defendant's sales pipeline.

---

[9]   ZoomInfo, "Memary LaRock Email & Phone Number," available at https://www.zoominfo.com/p/Memary-Larock/-2134316848.

CLASS ACTION COMPLAINT

32.     Numerous other hyperlinks on each of these pages similarly route visitors into Defendant's sales pipeline.  These include hyperlinks reading "Discover More," "View [Name's] fill profile," "Find more contacts," "View [Name's] Full Org Chart," "Send Email," "Find Buyers," "See Scoop," "Get Full Access," and more.

33.     Defendant created, published, and disseminated this free-preview "profile" page, and included hyperlinks on it routing to its sales pipeline, for the singular purpose of selling more subscriptions to its platform.  And Defendant used the names and corresponding personally identifying information of Plaintiff on this page as bait to entice non-paying visitors into becoming paying subscribers.

34.     Defendant created, published, and disseminated millions of similar free-preview "profile" pages misappropriating the names and corresponding personally identifying information of millions of American, and included hyperlinks on each of them routing to its sales pipeline, for the singular purpose of selling more subscriptions to its platform.  And Defendant used the names and corresponding personally identifying information of the putative class members on these pages as bait to entice non-paying visitors into becoming paying subscribers.

35.     Defendant generates a substantial amount of revenue from its sales of subscriptions to persons who entered Defendant's sales pipeline through its free-preview "profile" preview pages.

CLASS ACTION COMPLAINT

36.    Each of these free-preview "profile" pages is accessible through various avenues on Defendant's website, as well as in the results yielded by searches on Google and other popular search engines.

37.    Recognizing that **"**[a]lmost nobody clicks on business links that don't make the first page of Google results,"[10] Defendant intentionally optimizes the code on each of its free-preview "profile" pages so that the page ranks highly in search engine results when a person performs a query on Google or another search engine for a name associated with a free-preview "profile" page.

38.    Defendant has also paid Google and other search engine operators to place advertisements that link to the free-preview "profile" pages in the results of search queries for the names of the persons to whom the profiles correspond.  As Defendant explains: "We rely heavily on internet search engines, such as Google, including through the purchase of sales and marketing-related keywords and the indexing of our public-facing directory pages and other web pages, to generate a significant portion of the traffic to our website."[11]

---

[10]    ZoomInfo Technologies Inc., *The Lead Generation Strategy Guide*, available at https://pipeline.zoominfo.com/sales/lead-generation#content-6.

[11] ZoomInfo Technologies Inc., Form S-1 "Registration Statement," Feb. 26, 2020, available                                                                                        at https://www.sec.gov/Archives/edgar/data/1794515/000162828020002344/zoominfos-1.htm, at 32.

CLASS ACTION COMPLAINT

39.     Defendant uses Plaintiff's and the putative class members' names and corresponding personally identifying information on the free-preview "profile" pages to advertise services that go far beyond access to contact information. Defendant uses the names and identities to advertise subscriptions to its platform. These subscriptions provide access to (1) Defendant's database of personally identifying information for millions of Americans and (2) suites of business-development software products and services.

40.     For example, when a visitor scrolls down the free-preview "profile" page misappropriating Plaintiff's name and corresponding personally identifying information, the visitor encounters a section using Plaintiff's name and employer to advertise Defendant's ZoomInfo Copilot artificial intelligence product:

CLASS ACTION COMPLAINT



41.     This part of the free-preview "profile" page uses Plaintiff's name and other personally identifying information to advertise Defendant's ZoomInfo Copilot artificial intelligence product.

42.     Clicking "Send Email" or "Find Buyers" on the above advertisement for ZoomInfo Copilot routes prospective customers into Defendant's sales pipeline.

43.     A version of this advertisement for ZoomInfo Copilot is included in every free-preview "profile" page published and disseminated by Defendant.  In each version, the advertisement displays the misappropriated name and personally

CLASS ACTION COMPLAINT

identifying information of the person to whom the free-preview "profile" page corresponds.

44.   As another example, Defendant uses Plaintiff's name and identity in another section of the free-preview "profile" page misappropriating her name and other personally identifying information to advertise its Intent[12] business-development product:



---

[12] Defendant's Intent product advises paying ZoomInfo subscribers when a person or company is searching for products or services that the subscriber offers.

CLASS ACTION COMPLAINT

45.    Clicking "Start Free" on the above advertisement for Intent routes prospective customers into Defendant's sales pipeline.

46.    A version of this advertisement for Intent is included in every free-preview "profile" page.    In each version, the advertisement displays the misappropriated name and personally identifying information of the person to whom the free-preview "profile" page corresponds.

47.    As shown in the screenshots above, Plaintiff's name and other personally identifying information is, and during the time period relevant to this action was, used by Defendant in a free-preview "profile" page to advertise paid subscriptions to the Zoominfo.com platform.

48.    Plaintiff's name appears at least 31 times on the free-preview "profile" page which misappropriates her name and personally identifying information.

49.    Defendant disseminated and published the free-preview "profile" pages misappropriating Plaintiff's and the putative class members' names and corresponding personally identifying information in Washington state.

50.    Defendant has intentionally optimized these and millions of other free-preview "profile" pages to rank highly in search engine results.

51.    Specifically, Defendant included code in all of its free-preview "profile" pages to ensure they rank highly in search engine results when a user inputs a search for an individual's name, including in the following ways:

- Placing the individual's name on the pages dozens of times. For example, Plaintiff's name appears at least 31 times on the free preview "profile" page misappropriating her identity.

- Placing the individual's name in the page's URL. For example, Plaintiff's name appears in the URL for his free-preview "profile" page:



- Placing the individual's name and employer in the page titles. For example, Plaintiff's name appears in the page title for her free-preview "profile" page, which is entitled "Memary LaRock Email & Phone Number | Administrative Assistant at Miller Sheetmetal | ZoomInfo." This is reflected in the Open Graph meta field of the page's html source code:       `</title><meta       property="og:title" content="Memary LaRock Email &amp; Phone Number | Administrative Assistant at Miller Sheetmetal | ZoomInfo">`

- Placing the individual's name and job title in the Keywords meta field of the pages' html source code. For example, variations on Plaintiff's name are the first three values in the Keywords meta field for her free-preview "profile" page, and her job title is the fourth value: `<meta`

CLASS ACTION COMPLAINT

```
name="keywords"   content="Memary   LaRock,Memary,
LaRock,  Administrative  Assistant  ZoomInfo,  Zoom
Information,  Zoom,  web  summary,  professional
summary,  professional  background,  employment
history, board memberships, education, biography,
web references">
```

- Placing the individual's name in the "headers" of the page's html source code.  For example, Plaintiff's name appears in the first "header" on his free preview "profile" page.  This is reflected in the following line of the page's source code: `<h1  _ngcontent-ng-c2345168728=""  id="person-name"  class="paywall-content">Memary LaRock</h1>`

- Including schema.org descriptors in the source code so search engines can recognize the individuals' names and job titles as representing those qualities.  This allows search engines to recognize the names and job titles as components of an individual's identity.[13]  These schema.org descriptors are reflected in the following line of the source code on Plaintiff's           free-preview           "profile"           page:

---

[13] *See* Schema.org, *Getting started with schema.org using Microdata*, available at https://schema.org/docs/gs.html.

CLASS ACTION COMPLAINT

```
{"@context":"http://schema.org","@type":"http://s
chema.org/Person","name":"Memary
LaRock","givenName":"Memary","familyName":"LaRock
","jobTitle":"Administrative
Assistant","worksFor":{"@type":"http://schema.org
/Organization","name":"Miller Sheetmetal"
```

52.    Each of these web design techniques is intended to optimize the ranking of the free-preview "profile" pages in search engine results when a user searches for the name of an individual with a free-preview "profile" page—and thereby increase sales of subscriptions to Defendant's platform.

53.    Defendant could have easily prevented the free-preview "profile" pages from appearing in search engine results by adding a "noindex" directive to the pages' source code.[14]  Defendant chose not to.

54.    Instead, Defendant did the opposite.  It included an explicit "index" permitting search engines to index the page.  This appears in the line of source code on the free-preview profile pages reading: `<meta id="metaRobots" name="robots" content="index, follow">`

---

[14] A "noindex" directive is a piece of code on the page that instructs search engines not to index the page.  *See* Google Search Central, *Block Search indexing with noindex*, available at https://developers.google.com/search/docs/crawling-indexing/block-indexing.

CLASS ACTION COMPLAINT

55.    This is further evidence of Defendant's intent to make the free-preview "profile" pages rankly as high as possible when a user submits a query on a search engine for the name of any individual whose information is contained in Defendant's Zoominfo.com platform.

56.    Plaintiff is informed and believes, and thereupon alleges, that during the time period relevant to this action numerous non-subscribers to Defendant's platform performed searches on Google and other search engines that yielded results including hyperlinks to the Plaintiff's free-preview "profile" page, along with summaries of the information available on the free-preview "profile" page in the search-engine results themselves (including Plaintiff's name and other personally identifying information).

57.    Plaintiff is informed and believes, and thereupon alleges, that during the time period relevant to this action numerous non-subscribers to Defendant's services visited Plaintiff's free-preview "profile" page by clicking on a link to such page in the results page of a search performed on Google or another search engine.

58.    Defendant tracks, *inter alia*, the number of times when (by date and time) and from where (by, *inter alia*, IP address) each of each free-preview "profile" pages is viewed by a non-subscriber, the location from which the visitor to the page originated (such as a Google search results page or a list generated from a "free

CLASS ACTION COMPLAINT

search" query on its own website), and the total numbers of persons who have visited a particular free-preview "profile page."[15]

59.    Defendant continues to improve the coding of its free-preview "profile" pages to maximize their visibility to the consuming public in the results yielded by searches on Google and other popular search engines, and employs persons (and works with contractors) who focus specifically on these efforts.

60.    Defendant also advertises subscriptions to its platform to potential customers by displaying the names and personally identifying information of Plaintiff and millions of other Americans in response to search queries performed by non-subscribers using the "free search" tool on its website.  This tool invites potential customers to search for individuals' contact information by "Job Title," "Industry," and "City," as shown in the below-depicted screenshot:

---

[15]    ZoomInfo, *ZoomInfo Privacy Policy*, Jan. 1, 2024, available at https://www.zoominfo.com/legal/privacy-policy ("When individuals visit our Site, our servers and/or those of our service providers automatically record certain information that the web browser sends, such as web request, Internet Protocol address, browser type, referring/exit pages and URLs, page loads and clicks, domain names, landing pages, pages viewed, time and date of use, and other information.").

CLASS ACTION COMPLAINT



61.     When two of these three categories are selected, prospective customers can click 'Search' and obtain a list (including names, job title, employer, and location) of individuals meeting those criteria in the database.  For example, a search for Accountants in New York City returns 50,642 contacts:



62.    When prospective customers click on a name appearing in the "free search" results, they are directed to the free-preview "profile" page pertaining to that person.  The names and corresponding personally identifying information on each of these free-preview "profile" pages, as discussed above, are accompanied by

CLASS ACTION COMPLAINT

hyperlinks to "Contact Sales," "Reveal Information," and "Sign Up," each of which place the prospective customers into Defendant's subscription sales pipeline.

63.    Plaintiff's name and other personally identifying information is, and during the time period relevant to this action was, accessible in "free search" results published by Defendant on its website.

64.    Plaintiff is informed and believes, and thereupon alleges, that during the time period relevant to this action her name and personally identifying information has been viewed by non-subscribers in the "free search" results provided to one or more non-subscriber visitor to Defendant's website.

65.    Plaintiff is informed and believes, and thereupon alleges, that during the time period relevant to this action numerous non-subscribers visited her free-preview "profile" pages by clicking on a link to such page in the results page of a search performed using the of the "free search" tool on Defendant's website.

66.    The personally identifying information of millions more Americans is available to Defendant's potential customers through similar "free search" results and the corresponding free-preview "profile" pages.

67.    Defendant tracks, *inter alia*, when (by date and time) and from where (by, *inter alia*, IP address) each free-preview "profile" page is viewed by a non-subscriber, the location from which the visitor to the page originated (such as a Google search results page or a list generated from a "free search" query on its own

CLASS ACTION COMPLAINT

website), and the total numbers of persons who have visited a particular free-preview "profile page."

68.    The value of each name and corresponding personally identifiable record accessible on a free-preview "profile" pages or on a "free search" results page—whether or not specifically searched for or viewed—enhances the formidability of Defendant's brand and adds to the perceived value of Defendants' products because it demonstrates the breadth of sensitive personal information that Defendant's products and services offer.

69.    Neither Plaintiff nor members of the proposed classes have ever consented to the use of their name or other personally identifying information to advertise or promote any of Defendant's products or services in connection with Defendant's free-preview "profile" pages, its "free search" tools, or in any other manner.

70.    Plaintiff has rights, recognized by statutory and common law in Washington, to control the use of her name in advertisements and to promote products and services, as well as privacy interests in her personally identifying information.  Plaintiff values control of her name and personal privacy and the right to control and prevent the unauthorized commercial use and distribution of her name and other forms of personally identifying information, including but not limited to preventing Defendant's unauthorized publication and promotion of free-preview

"profile" pages pertaining to them and from unlawfully profiting from the unauthorized exploitation of her personal information and commandeering of her name and personally identifying information in this or any other way.

71.    Plaintiff's name and other personally identifying information has, and during the relevant time period had, commercial value, as demonstrated by Defendant's systematic use of such information to advertise and promote paid subscriptions to its products and services throughout the relevant time period, including by way of its publication and promotion of free-preview "profile" pages pertaining to Plaintiff and the members of the classes.

72.    Defendant knows that its use of free-preview "profile" pages to advertise subscriptions to its platform infringes upon Plaintiff's and the proposed class members' rights of publicity, but continues to do so anyway—and appears to have simply written off the consequences as a cost of doing business.[16]

---

[16]    *See* Class Action Settlement Agreement, *Ramos v. ZoomInfo Technologies LLC*, No. 1:21-cv-02032 (N.D. Ill.), May 31, 2024 (resolving a previous class action on behalf of classes of California, Illinois, Indiana, and Nevada residents in which plaintiffs alleged Defendant used their names and likenesses on its free-preview "profile" pages in violation of various states' right of publicity statutes); *see also* ZoomInfo Technologies Inc., Form S-1 "Registration Statement," Feb. 26, 2020, available at https://www.sec.gov/Archives/edgar/data/1794515/000162828020002344/zoominf os-1.htm, at 25 (recognizing that "[t]he costs of complying with existing or new data privacy or data protection laws and regulations may . . . lead to significant fines, penalties, or liabilities for noncompliance").

CLASS ACTION COMPLAINT

## II.  Defendant Violates the Washington Personality Rights Act by Using Plaintiff's and Class Members' Names and Corresponding Personally Identifying Information in "Free Trials" to Promote Paid Subscriptions to Its Platform.

73.   Defendant provides potential consumers with "free trials" which make commercial use of millions of Americans' names, identities, and personally identifying information to advertise paid subscriptions to Defendant's platform.

74.   Defendant provides at least two types of "free trials."  Both types of "free trials" provide users access to "Contact Profiles" featuring the names, and other personally identifying information of Plaintiff and the putative class members.

75.   First, Defendant provides potential customers with access to its entire database for a limited period of time.  In these time-limited "free trials," Defendant holds out Plaintiff's and the putative class members' names, identities, and other personally identifying information to promote paid subscriptions to its platform.

76.   As shown below, the landing page of Defendants' Zoominfo.com website invites prospective customers to sign up for a "Free Trial" and to "Contact Sales" (circled in the upper right-hand corner):[17]

---

[17] ZoomInfo, "ZoomInfo: B2B Database," available at https://www.zoominfo.com.

CLASS ACTION COMPLAINT



77.     When prospective customers click the "Contact Sales" link, they are

invited to enter their "Full Name," "Business Email," "Phone Number," and "Job

Title."  Upon doing so, they are informed that a sales representative will be in touch

"within 90 seconds to get your trial spun up":



78.    A ZoomInfo sales representative then calls the prospective customer and sets up a time-limited "free trial" of Defendants' products and services.

79.    Defendant provides these time-limited "free trials" for the singular purpose of inducing potential customers to purchase paying subscriptions to its platform—and it uses the names, identities, and personally identifying information of Plaintiff and millions of Americans to advertise those paid subscriptions throughout the "free trial," as demonstrated further below.

80.    Once the time-limited "free trial" is enabled, the prospective customer has full access to Defendant's database of names and corresponding personally

identifying information.  This permits the prospective customer to search for and obtain the personally identifying information of millions of Americans, including for Plaintiff and each of the putative class members.

81.    In the time-limited "free trial" setting, none of the personally identifying information pertaining to any of the persons whose information comprises the database is redacted.  All the personally identifying information in the database is viewable, including the names, email addresses, phone numbers, employers, addresses, and job titles of all persons whose information is contained in the commercially available version of the database.

82.    When the "free trial" period begins, users are reminded of the limited length of their temporary access and instructed to "contact your account manager to renew your subscription."



- 32 -
CLASS ACTION COMPLAINT

83.     Throughout the time-limited "free trial" period, users are invited to "Upgrade Now" through various buttons placed across the interface.  Clicking these buttons prompts a message saying that a sales manager will be in touch soon, which is followed shortly thereafter by a call from a sales agent.

84.     When users attempt certain actions in the "free trial" period, such as exporting the personally identifying information of a certain number of contacts, they are told they have run out of "credits" and should "Upgrade" their plan to a paid subscription.



85.     When the "free trial" period ends, Defendant terminates the prospective customer's access to its platform and solicits them to sign up for a paid subscription.



86.     Second, Defendant provides another type of "free trial" through a service called ZoomInfo Lite.

87.     ZoomInfo Lite was formerly called the Community Edition of ZoomInfo.[18]

---

[18]     ZoomInfo Technologies Inc., Form 10-Q "Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934," May 7, 2024, available at https://app.quotemedia.com/data/downloadFiling?webmasterId=90423&ref=31829 9654&type=HTML, at 38.

88.     ZoomInfo Lite provides "free, ongoing access to ZoomInfo's database of millions of B2B profiles."[19]

89.     As shown above, these "millions of B2B profiles" appropriate the names, identities, and personally identifying information of millions of Americans without their consent and for the commercial purpose of promoting paid subscriptions to Defendant's platform.

90.     Users of ZoomInfo Lite receive only limited access to Defendant's platform compared to paid subscribers.

91.     For example, ZoomInfo Lite users receive only a limited number of "credits" with which they can access profiles in the company's platform.  Paying subscribers, on the other hand, may access an unlimited number of profiles.

92.     Further, only three individuals per organization are permitted to open accounts with ZoomInfo Lite.  Paying subscribers, on the other hand, may add as many accounts as they wish (though they may pay per additional user).

93.     Users of ZoomInfo Lite may view all the information contained in the limited number of profiles they are able to access.  This includes names, addresses, places of employment, phone numbers, email addresses, and more personally identifying information.  None of the information is redacted.

---

[19]     ZoomInfo, *ZoomInfo Lite FAQs*, available at https://www.zoominfo.com/faqs/community-edition.

94.    Defendant uses and holds out millions of Americans' names and corresponding personally identifying information in this manner through ZoomInfo Lite to advertise subscriptions to its platform.

95.    Defendant knowingly engages in these practices, having admitted in regulatory filings with the Securities and Exchange Commission, for example, that "[w]e believe our revenue growth depends on a number of factors, including, but not limited to, our ability to . . . convert users of and organizations on our free Community Edition into paying customers."[20]

96.    Defendant does not permit users with existing or previous paid subscriptions to access ZoomInfo Lite.  The ZoomInfo Lite "free trial" is a one-way ratchet into Defendant's sales pipeline.

97.    Plaintiff's name and personally identifying information is, and during the relevant time period was, accessible in the "free trials" (both time-limited and ZoomInfo Lite) provided to Defendant's potential customers, as shown in the screenshot below:

---

[20]    ZoomInfo Technologies Inc., Form S-1 "Registration Statement," Feb. 26, 2020, available at https://www.sec.gov/Archives/edgar/data/1794515/000162828020002344/zoominfos-1.htm, at 30.

CLASS ACTION COMPLAINT



For privacy purposes, Plaintiff's phone numbers and email addresses have been redacted from this screenshot.

98.     In each type of free trial—and as with the free-preview "profile" pages—Defendant uses Plaintiff's and the putative class members' names and corresponding personally identifying information to advertise both access to its database and a suite of business development products and services.

99.     For example, the "Contact Profile" for Plaintiff (which is accessible through either of type of "free trial") advertises several different business-development products, services, and features of Defendant's platform which are

accessible with a paid subscription. These products, services, and features are circled in the following screenshot of the "Contact Profile" misappropriating Plaintiff's name and personally identifying information:



These products and services include:

- An "Advanced Search" function;

- "Intent," a business intelligence product that identifies companies which are searching for a subscriber's services;

- "Lists," a service where subscribers can upload and create lists of contact profiles;

CLASS ACTION COMPLAINT

- "WebSights," a product that permits subscribers to track visitors to their website;

- "FormComplete," a product that streamlines the completion of forms on a subscriber's website;

- "Org Chart," organizational charts for the relevant individual's employer;

- "Employees," a list of other people working for the relevant individual's employer;

- "Technologies," a list of technologies used by the relevant individual's employer;

- "Chorus," an artificial intelligence product designed to record, summarize, and analyze virtual meetings;

- "Email," a link to the ZoomInfo Copilot artificial intelligence product and associated email sending integrations;

- "Call," a feature which dials the relevant individuals phone number from within the platform's web-based interface.

Defendant advertises each of these products, services, and features—which are available at differing tiers of paid subscriptions—by using Plaintiff's and millions of other Americans' names and corresponding personally identifiable

information on "Contact Profiles" accessible during "free trials" (both time-limited and ZoomInfo Lite).

100.   Clicking on several of the links displayed in the "Contact Profiles" brings users directly into Defendant's sales pipeline.

101.   For example, clicking on the "Chorus" link causes the following advertisement for the Chorus artificial intelligence product to be displayed:



102.   As shown, when viewed in a "free trial" subscription this "Contact Profile" uses Plaintiff's name and personally identifying information to advertise paid subscriptions to Defendant's platform, including a prominent promotion for its Chorus artificial intelligence product.

103.   Clicking on the "Contact Us" button displayed in the above screenshot results in a call from a ZoomInfo sales representative.

104.   The "Contact Profile" pages for each of the putative class members display the same promotion for the Chorus artificial intelligence product alongside the putative class members' names and corresponding personally identifying information.

105.   The "Contact Profiles" to which "free trial" users gain access are distinct from the free-preview "profile" pages.  The "Contact Profiles" have different designs, visual elements, and arrangements as compared to the free-preview "profile" pages.  The "Contact Profiles" include more links to the business-development products, services, and features available with a subscription to the platform.  As such, the "Contact Profiles" accessible through a "free trial" are different "works" than the free-preview "profile" pages within the meaning of the WPRA.  *See* RCW 63.60.060(2).

106.   Plaintiff is informed and believes, and thereupon alleges, that during the time period relevant to this action, Plaintiff's personally identifying information was viewed in one or more "free trial" provided to one or more of Defendant's potential customers.

CLASS ACTION COMPLAINT

107.   Defendant generates a substantial amount of revenue from its sales of subscriptions to persons who entered Defendant's sales pipeline through its "free trials."

108.   Plaintiff never consented to Defendant's use of her name or other personally identifying information in this way (or in any other manner) for the purpose of advertising subscriptions to Defendant's platform.

109.   None of the putative class members consented to Defendant's use of their names or corresponding personally identifying information in this way (or any other manner) for the purpose of advertising subscriptions to Defendant's platform.

110.   Defendant disseminated or published the "Contact Profiles" misappropriating Plaintiff's and the putative class members' names and corresponding personally identifying information in Washington state.

111.   The value of each personal identifying record or result that is accessible—whether or not specifically searched for or viewed—in a "free trial" adds to the perceived value of Defendants' platform because it demonstrates the breadth of sensitive personal information available to prospective customers should they purchase a subscription, which is a key part of the platform's value proposition.

112.   Plaintiff has rights, recognized by statutory and common law in Washington, to control the use of her name, image, and likeness, in advertisements and to promote products and services, as well as privacy interests in her personally

identifying information.  Plaintiff values control of her name and personal privacy and the right to control and prevent the unauthorized commercial use and distribution of her name and personally identifying information, including but not limited to preventing Defendant's unauthorized use of her name and personally identifying information in connection with the "free trials" it offers and from unlawfully profiting from its unauthorized exploitation of her personal information and commandeering of her identity in this way.

113.   Plaintiff's name and personally identifying information has, and during the relevant time period had, commercial value, as demonstrated by Defendant's systematic use of such information to advertise and promote paid subscriptions to its products and services throughout the relevant time period, including by way of its use in "free trials" provided by Defendant to prospective customers.

## CLASS ACTION ALLEGATIONS

114.   Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff brings this action, on behalf of herself and members of the "Free-Preview 'Profile' Page Class" defined as follows:

> All natural persons residing in the United States, but excluding persons residing in California, Illinois, Indiana, and Nevada, who are not subscribers to Zoominfo.com and for whom Defendant established a free-preview "profile" page on Zoominfo.com.

CLASS ACTION COMPLAINT

115.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and where applicable, 23(c)(4), Plaintiff brings this action, on behalf of herself and members of the "'Free Trial' Class," defined as follows:

> All natural persons residing in the United States, but excluding persons residing in California, Illinois, Indiana, and Nevada, who are not subscribers to Zoominfo.com and for whom Defendant established a "Contact Profile" page accessible to 'free trial' subscribers of Zoominfo.com.

116.    The Free-Preview "Profile" Page Class and "Free Trial" Class are at times collectively referred to herein as the "Classes."

117.    Excluded from the Classes are Defendants' officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants.  Also excluded from the Classes are members of the judiciary to whom this case is assigned, their families, and members of their staff.

118.    Plaintiff reserves the right to modify the definitions of the Classes, including based on discovery and further investigation.

119.    The members of each of the Classes are so numerous that their individual joinder herein is impracticable.  Plaintiff is informed and believes, and thereupon alleges, that the members of each of the Classes number in the millions. The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but will be readily determined in discovery, including by

reference to Defendant's records.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

120.    Plaintiff's claims are typical of the claims of the members of the Classes she seeks to represent in that Plaintiff and all members of the Classes were injured and sustained damages by Defendant's uniform wrongful conduct—namely, Defendant's practices of using Plaintiff's and the Classes' names and corresponding personally identifying information to advertise, sell, and promote, and to solicit sales of subscriptions to its platform, without any of their consent.

121.    Common questions of law and fact exist as to all members of each of the Classes and predominate over questions affecting only individual members. Legal and factual questions common to the Classes include, but are not limited to:

a.  Whether Defendant engaged in the alleged conduct;

b.  Whether Defendant knowingly used the personally identifying information of the members of the Classes;

c.  Whether Defendant used their names, identities, and other personally identifying information for the purposes of advertising products, merchandise, goods, or services;

d.  Whether Defendant had their consent to use their personally identifying information in this way;

CLASS ACTION COMPLAINT

e.  Whether members of the Classes are entitled to recover statutory damages;

f.  Whether members of the Classes are entitled to equitable relief, including injunctive relief.

122.    Plaintiff is an adequate representative of the Classes because Plaintiff's interests do not conflict with the interests of the other members of the Classes she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

123.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on

CLASS ACTION COMPLAINT

the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of such issues.

## FIRST CLAIM FOR RELIEF
### Violation of Washington's Personality Rights Act, RCW 63.60.050
### (By Plaintiff Memary LaRock, Individually and On Behalf of the Free-Preview "Profile" Page Class)

124.    Plaintiff, individually and on behalf of the Free-Preview "Profile" Page Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

125.    Plaintiff is a "living . . . individual" and thus an "individual" within the meaning of the WPRA.  *See* RCW 63.60.

126.    Defendant is a corporation and thus a juristic "person" within the meaning of the WPRA.  *See id.*

127.    During the time period relevant to this action, Defendant publicly used the names and corresponding personally identifying information of Plaintiff and the Free-Preview "Profile" Page Class members in the manner alleged herein, including by using such names, identities, and other personally identifying information on free-preview "profile" pages it established and promoted for each of these individuals.

128.    Defendant used Plaintiff's and the Free-Preview "Profile" Page Class members' names and corresponding personally identifying information in the

manner alleged herein for the purposes of advertising, promoting, and selling, as well as offering to sell, subscriptions to its Zoominfo.com platform, which includes a vast searchable database comprised of the personally identifying information and contact information of millions of Americans and a suite of business-development products and services.

129. The free-preview "profile" pages that Defendant established for Plaintiff LaRock and each of the Free-Preview "Profile" Page Class members were, at all times relevant hereto, publicly accessible to the public at large, and in fact were designed and intended by Defendant to be accessed and viewed by as many members of the public as possible, with the aim of converting prospective customers into paying subscribers to Defendant's Zoominfo.com platform.

130. Defendant's use of Plaintiff's and the Free-Preview "Profile" Page Class members' names and corresponding personally identifying information on free-preview "profile" pages constituted "advertising" within the meaning of WPRA. *See* RCW 63.60.050.

131. Paid subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and its suite of business-development products and services, constitute "products, merchandise, goods, or services" within the meaning of the WPRA. *See id.*

132.    Prior to using and holding out Plaintiff's and the Free-Preview "Profile" Page Class members' names and corresponding personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff nor any member of the Free-Preview "Profile" Page Class that it would do so, and neither Plaintiff nor any member of the Free-Preview "Profile" Page Class has ever consented (in writing or otherwise) to Defendant doing so.

133.    By using Plaintiff's and the Free-Preview "Profile" Page Class members' names and corresponding personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiff's and the Free-Preview "Profile" Page Class members' rights of publicity in violation of the WPRA.

134.    Plaintiff suffered mental anguish as a result of Defendant's unauthorized uses of her name and personally identifying information in the manner alleged herein.  Upon learning that her name and personal details were being used by Defendant to sell its products and services on the open market for its own financial gain, Plaintiff became worried, frustrated, and concerned, disturbing their peace of mind in a meaningful way—just as would occur to any reasonable person (including members of the Free-Preview "Profile" Page Class) under the same or similar circumstances.

CLASS ACTION COMPLAINT

135.   Significant commercial value exists in the aspects of Plaintiff's and the other Free-Preview "Profile" Page Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

136.   Defendant's use of Plaintiff's and the other Free-Preview "Profile" Page Class members' names and corresponding personally identifying information in free-preview "profile" pages was not incidental.  On the contrary, it constituted and continues to constitute an integral part of Defendant's marketing strategy to obtain paying subscriber customers to its Zoominfo.com platform.  This is demonstrated by the sheer volume of free-preview "profile" pages created by Defendant and Defendant's optimization of these pages to rank highly in search engine results.

137.   Defendant disseminated or published the free-preview "profile" pages misappropriating Plaintiffs' and the Free-Preview "Profile" Page Class members' names and corresponding personally identifying information in Washington state.

138.   On behalf of herself and the Free-Preview "Profile" Page Class, Plaintiff seeks: (1) an injunction requiring Defendant to obtain written consent from class members prior to the use of their names and identities to advertise products or services pursuant to RCW 63.60.060; (2) $1,500.00 in statutory liquidated damages to Plaintiff and each Free-Preview 'Profile' Page Class member pursuant to RCW 63.60.060; and (3) costs and reasonable attorneys' fees pursuant to RCW 63.60.060.

## SECOND CLAIM FOR RELIEF
### Violation of Washington's Personality Rights Act, RCW 63.60.050
### (By Plaintiff Memary LaRock, Individually and On Behalf of the "Free Trial" Class)

139.   Plaintiff, individually and on behalf of the "Free Trial" Class, repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

140.   Plaintiff LaRock is a "living . . . individual" and thus an "individual" within the meaning of the WPRA.  *See* RCW 63.60.

141.   Defendant is a corporation and thus a juristic "person" within the meaning of the WPRA.  *See id*.

142.   During the time period relevant to this action, Defendant publicly used the names and other personally identifying attributes of Plaintiff and the "Free Trial" Class members in the manner alleged herein, including by using such names and corresponding personally identifying information on "Contact Profile" pages accessible to "free trial" users of its subscription platform.

143.   Defendant used and held out Plaintiff's and the "Free Trial" Class members' names and corresponding personally identifying information in "Contact Profiles" accessible through free trials for the purposes of advertising, promoting, and selling, as well as offering to sell, subscriptions to its Zoominfo.com platform, which includes a vast searchable database comprised of the personally identifying information and contact information of millions of Americans and a suite of business-development products and services.

CLASS ACTION COMPLAINT

144.   Defendant's use of Plaintiff's and the "Free Trial" Class members' names and corresponding personally identifying information in "free trials" of its Zoominfo.com platform constituted "advertising" within the meaning of WPRA. *See* RCW 63.60.050.

145.   Paid subscriptions to Defendant's platform, including its vast, searchable database of Americans' personally identifying information and its suite of business-development products and services, constitute "products, merchandise, goods, or services" within the meaning of the WPRA. *See id.*

146.   Prior to using and holding out Plaintiff's and the "Free Trial" Class members' names and corresponding personally identifying information for advertising purposes in the manner alleged herein, Defendant did not notify Plaintiff nor any member of the "Free Trial" Class that it would do so, and neither Plaintiff nor any member of the "Free Trial" Class has ever consented (in writing or otherwise) to Defendant doing so.

147.   By using Plaintiff's and the "Free-Trial" Class members' names, identities, and other personally identifying information to advertise its products and services, without their prior consent, Defendant infringed upon Plaintiff's and the "Free Trial" Class members' rights of publicity in violation of the WPRA.

148.   Plaintiff suffered mental anguish as a result of Defendant's unauthorized uses of her name and corresponding personally identifying information

CLASS ACTION COMPLAINT

in the manner alleged herein.  Upon learning that her name and corresponding personally identifying information as were being used by Defendant to sell its products and services on the open market for its own financial gain, Plaintiff became worried, frustrated, and concerned, disturbing their peace of mind in a meaningful way—just as would occur to any reasonable person (including members of the "Free Trial" Class) under the same or similar circumstances.

149.   Significant commercial value exists in the aspects of Plaintiff's and the other "Free Trial" Class members' names and identities that Defendant used and continues to use in the manner alleged herein.

150.   Defendant's use of Plaintiff's and the other "Free Trial" Class members' names, identities, and other personally identifying information in "free trials" of its Zoominfo.com platform was not incidental.  On the contrary, it constituted and continues to constitute an integral part of Defendant's marketing strategy to obtain paying subscriber customers to its Zoominfo.com platform.  This is demonstrated by the sheer volume of "Contact Profiles" accessible through the "free trials" and Defendant's heavy promotion of free trials throughout its website and marketing materials.

151.   Defendant disseminated or published the "Contact Profiles," which are accessible in "free trials" on Defendant's platform and misappropriate Plaintiffs' and

the "Free Trial" Class members' names and corresponding personally identifying information, in Washington state.

152.   On behalf of themselves and the "Free Trial" Class, Plaintiff seeks: (1) an injunction requiring Defendant to obtain written consent from class members prior to the use of their names and identities to advertise products or services pursuant to RCW 63.60.060; (2) $1,500.00 in statutory liquidated damages to Plaintiff and each "Free Trial" Class member pursuant to RCW 63.60.060; and (3) costs and reasonable attorneys' fees pursuant to RCW 63.60.060.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of the members of the Classes, as follows:

A.   For an order certifying the Classes pursuant to Federal Rule of Civil Procedure 23 and naming Plaintiff as representative of the Classes and Plaintiff's undersigned attorneys as counsel to represent the Classes;

B.   For an order entering judgment in favor of Plaintiff and the members of the Classes on all claims for relief stated herein;

C.   For an order awarding Plaintiff and the members of the Classes actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in the amounts set by statute or to be proven at trial;

D.   For an order for appropriate injunctive relief;

CLASS ACTION COMPLAINT

E.     For an order awarding pre- and post-judgment interest according to law; and

F.     For an award of attorneys' fees, costs and expenses to Plaintiff's counsel.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and members of the Classes, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims and issues so triable.

Dated: September 5, 2024              Respectfully submitted,

                                     By: /s/ Nick Major

                                     **NICK MAJOR LAW**
                                     NICK MAJOR
                                     450 Alaskan Way S. #200
                                     Seattle, WA 98104
                                     Telephone: (206) 410-5688
                                     E-Mail: nick@nickmajorlaw.com

                                     **HEDIN LLP**
                                     FRANK S. HEDIN*
                                     1395 Brickell Ave, Suite 610
                                     Miami, Florida 33131
                                     Telephone: (305) 357-2107
                                     E-Mail: fhedin@hedinllp.com

**HEDIN LLP**
TYLER K. SOMES*
1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone: (202) 900-3331
E-Mail: tsomes@hedinllp.com

* Pro Hac Vice Application Forthcoming

*Counsel for Plaintiff and the Putative Classes*

CLASS ACTION COMPLAINT