THE HONORABLE KYMBERLY EVANSON

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MEMARY LAROCK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZOOMINFO TECHNOLOGIES LLC,<br><br>Defendant. | Case No. 3:24-cv-05745-KKE<br><br>**ZOOMINFO TECHNOLOGIES LLC'S MOTION TO DISMISS PURSUANT TO FRCP 12**<br><br>NOTE ON MOTION CALENDAR:<br><br>December 16, 2024<br><br>ORAL ARGUMENT REQUESTED |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 4

I. PLAINTIFF'S "RIGHT OF PUBLICITY" CLAIMS FAIL BECAUSE THE CHALLENGED USE ACCURATELY DESCRIBES ZOOMINFO'S SERVICES ..... 4

II. PLAINTIFF'S "RIGHT OF PUBLICITY" CLAIMS INDEPENDENTLY FAIL BECAUSE THE CHALLENGED USE IS INCIDENTAL ..... 7

CONCLUSION ..... 12

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aligo v. Time-Life Books, Inc.*,
1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ....................7, 8, 11

*Allison v. Vintage Sports Plaques*,
136 F.3d 1443 (11th Cir. 1998) ....................7

*Almeida v. Amazon.com, Inc.*,
456 F. 3d 1316 (11th Cir. 2006) ....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*Balsley v. LFP, Inc.*,
2010 WL 11561844 (N.D. Ohio Jan. 26, 2010) ....................8

*Bogie v. Rosenberg*,
2012 WL 12995704 (W.D. Wis. Mar. 16, 2012) ....................10

*Charisma Hudson, et al. v. Datanyze, LLC*,
702 F. Supp. 3d 628 (N.D. Ohio 2023), *appeal docketed*, No. 23-3998 (6th Cir. Dec. 14, 2023) ....................5, 8, 9

*Davis v. Electronic Arts Inc.*,
775 F.3d 1772 (9th Cir. 2015) ....................9

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ....................1, 12

*ETW Corp. v. Jireh Pub., Inc.*,
332 F.3d 915 (6th Cir. 2003) ....................7

*Groden v. Random House, Inc.*,
61 F.3d 1045 (2d Cir. 1995) ....................11

*Harvey v. Sys. Effect, LLC*,
154 N.E.3d 293 (Ohio 2020) ....................8

*Hensley Mfg. v. ProPride, Inc.*,
579 F.3d 603 (6th Cir. 2009) ....................6

*JBCHoldings NY, LLC v. Pakter*,
931 F. Supp. 2d 514 (S.D.N.Y. 2013) ....................6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Ladany v. William Morrow & Co., Inc.*,
465 F. Supp. 870 (S.D.N.Y. 1978) ....................11

*Landham v. Lewis Galoob Toys, Inc.*,
227 F.3d 619 (6th Cir. 2000) ....................5

*Lindholm v. Gibney*,
2006 WL 8451489 (S.D. Tex. Sept. 12, 2006) ....................11

*Lohan v. Perez*,
924 F. Supp. 2d 447 (E.D.N.Y. 2013) ....................11

*McFarland v. Miller*,
14 F.3d 912 (3d Cir. 1994)....................9

*Netzer v. Continuity Graphic Associates, Inc.*,
963 F. Supp. 1308 (S.D.N.Y. 1997)....................11

*Pooley v. National Hole-In-One Ass'n*,
89 F. Supp. 2d 1108 (D. Ariz. 2000) ....................9

*Preston v. Martin Bregman Productions, Inc.*,
765 F. Supp. 116 (S.D.N.Y. 1991) ....................11

*Roe v. Amazon.com*,
714 F. App'x 565 (6th Cir. 2017) ....................9

*Schifano v. Greene County Greyhound Park, Inc.*,
624 So. 2d 178 (Ala. 1993)....................9

*Solid 21, Inc. v. Breitling U.S.A., Inc.*,
96 F.4th 265 (2d Cir. 2024) ....................5, 7

*Stayart v. Google Inc.*,
2011 WL 13160131 (E.D. Wis. Aug. 17, 2011), *aff'd*, 710 F.3d 719 (7th Cir. 2013) ....................10

*Torain v. Casey*,
2016 WL 6780078 (S.D.N.Y. Sept. 16, 2016)....................11

*Upper Deck Company v. Flores*,
569 F. Supp. 3d 1050 (S.D. Cal. 2021)....................10

*Valenzuela Gallardo v. Lynch*,
818 F.3d 808 (9th Cir. 2016) ....................12

*Vinci v. Am. Can Co.*,
591 N.E.2d 793 (1990)....................8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089 (E.D. Cal. 2009)....................9

**Statutes**

15 U.S.C. § 1115(b)(4) ....................5

WASH. REV. CODE § 63.60.010....................4

WASH. REV. CODE § 63.60.070....................4

WASH. REV. CODE § 63.60.070(5) (2024) ....................4

WASH. REV. CODE § 63.60.070(6) (2024) ....................7, 12

Washington's Personality Rights Act, RCW §§ 63.60.010-63.60.080....................1, 4, 5, 7, 11

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 652C (AM. LAW INST. 1977)....................7, 8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

**PRELIMINARY STATEMENT**

ZoomInfo provides a database that gives customers access to a directory of business contact information—it is akin to "[t]he 'yellow pages' telephone directory [that] was once a ubiquitous part of American life, found in virtually every household and office." *See Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 953 (9th Cir. 2012). Plaintiff Memary LaRock sues based on the mere fact that her name and information—along with the information of millions of others—appear in ZoomInfo's directory. Specifically, she contends it is actionable that visitors to ZoomInfo's website can view her information before signing up for a paid subscription, by either viewing the publicly-available portions of ZoomInfo's website or enrolling in a free trial that provides limited-time access to the entire ZoomInfo database.

Based on these benign "uses," plaintiff asserts two claims under Washington's Personality Rights Act, RCW §§ 63.60.010-63.60.080 ("WPRA"). However, the Washington legislature explicitly limited the statute to prevent the type of overreach plaintiff now attempts.

***First,*** the WPRA exempts uses that accurately describe a party's services. Here, the "uses" plaintiff challenges are ***previews of the database ZoomInfo offers***. It is difficult to imagine a more apt example of a permitted use that "accurately describe[s] the goods or services of a party."

***Second,*** the WPRA does not prohibit any mention of a person's name in connection with commercial activities, as plaintiff's theory assumes. To the contrary, the WPRA expressly permits such use provided it is "insignificant, de minimis, or incidental." Here, plaintiff concedes her name and contact information are commingled with entries for "***209 million***" other people, and further that her information will appear only if a user expressly searches for it. Plaintiff (a non-celebrity or public figure) does not contend her information has any particular value or significance to ZoomInfo's directory—instead, the value of ZoomInfo's database lies in its *aggregation* of information and the business insights it can provide. Plaintiff is the proverbial "needle in the haystack," and the alleged use is thus exempt from the WPRA as incidental. Her claims fail as a matter of law.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

**BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

ZoomInfo operates an online platform that offers business-development tools. Compl. at ¶ 2. The platform includes a searchable database with professional contact information—name; company name and description; company phone number; work email; job title; and company address—for millions of professionals. *See* ZoomInfo.com; Compl. at ¶¶ 21, 128 (alleging the "database provides access to over 209 million professional profiles"). As plaintiff recognizes, the value of ZoomInfo's database results from its "collection" of information, which can be used "to provide effective insights" to ZoomInfo's users (*id.* at ¶ 21)—for example, "[s]ourcing intelligence" on potential job candidates for a company looking to fill a role, or generating information about a company's "buying intent signals" to help optimize sales (*id.* at ¶ 22).

Although plaintiff alleges her name and business contact information appear within ZoomInfo's database, she also acknowledges this information is not "featured" in any way on ZoomInfo's site. She instead concedes this information is displayed only if ZoomInfo's users ***affirmatively search*** for plaintiff by name or otherwise happen upon it in conducting research on a particular job role or industry. *See, e.g., id.* at ¶ 38 (alleging links to the publicly-accessible page with her information might appear "in the results of search queries for the names of the persons to whom the profiles correspond"); ¶ 60 (alleging ZoomInfo displays "the names and personally identifying information of Plaintiff and millions of other Americans in response to search queries performed by non-subscribers using the 'free search' tool on its website"); ¶ 80 (alleging the "free trial" "permits the prospective customer to search for and obtain the personally identifying information of millions of Americans"); ¶¶ 60-61 (alleging "a search for Accountants in New York City returns 50,642 contacts"). Plaintiff does not contend her name and information have any independent value; rather she contends the only purported "value" associated with her name derives from its alleged "use" on ZoomInfo's website. *Id.* at ¶ 71.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

Plaintiff's complaint takes aim at two particular "uses" of her information. ***First,*** plaintiff alleges visitors to ZoomInfo can view "free-preview profiles" that contain limited previews of the information from ZoomInfo's database:

*Id.* at ¶¶ 4-5, 31.

***Second,*** plaintiff alleges ZoomInfo offers two "free trials." *See, e.g.*, *id.* at ¶ 74. The first type of "free trial" provides access to the "entire" ZoomInfo database for a limited period of time. *Id.* at ¶ 75. The second offers users a limited number of credits to access the site. *See, e.g.*, *id.* at ¶¶ 86, 91.

Plaintiff does not allege any wrongful "use" of her name or information other than in descriptions of ZoomInfo's site (*i.e.*, the platform plaintiff asserts her name is being used to advertise). *See, e.g.*, *id.* at ¶ 31 (screenshot featuring information about plaintiff's employer and her role at the company, available to any visitor to ZoomInfo's site who searches plaintiff's name); ¶ 40 (describing how "ZoomInfo Copilot" can be used to understand information about businesspeople, including plaintiff); ¶ 61 (screenshot displaying how lists of names might be turned up in response to a search for certain "industry" and "job title" parameters); ¶ 97 (screenshot from ZoomInfo's site featuring information about plaintiff's employer and her role at

the company, accessible to free-trial users who are given limited-time access to ZoomInfo's full database). *See also id.* at ¶ 101 (describing ZoomInfo's "Chorus" service without any reference to plaintiff's name).

Based on these alleged uses, plaintiff asserts two claims for relief, each based in the WPRA. *Id.* at ¶¶ 124-152. The first claim is based on ZoomInfo's "free-preview profile" pages. *Id.* at ¶ 128. The second claim is premised on ZoomInfo's free trials. *Id.* at ¶ 143.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible" on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when factual allegations permit the "reasonable inference" that the defendant is liable for the conduct alleged. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Facts that are "merely consistent with" liability fail to state a claim. *Id.* (quotations omitted).

## ARGUMENT

### I. PLAINTIFF'S "RIGHT OF PUBLICITY" CLAIMS FAIL BECAUSE THE CHALLENGED USE ACCURATELY DESCRIBES ZOOMINFO'S SERVICES

Washington recognizes a limited statutory "right of publicity." WASH. REV. CODE § 63.60.010. The statute also includes express exemptions. Revised Code of Washington § 63.60.070, titled "Exemptions from use restrictions—When chapter does not apply," states:

> This chapter does not apply to a use or authorization of use of an individual's or personality's name that is merely descriptive and used fairly and in good faith only to . . . ***accurately describe the goods or services of a party.***

WASH. REV. CODE § 63.60.070(5) (2024) (emphasis added). Here, the uses plaintiff challenges fall precisely within this "accurate description" exemption and thus constitute permitted uses.

The sole function of the alleged uses of plaintiff's name is to describe the contents of ZoomInfo's database. Compl. at ¶¶ 31, 40, 61, 97. In the case of the "free preview profile," the content is a free, partial view of the information on ZoomInfo's site that is available to

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

subscribers. *Id.* at ¶ 31. The same is true of the challenged "free trials," which give users access to ZoomInfo's "entire database." *Id.* at ¶¶ 75, 97. And the remaining alleged "uses" in the Complaint simply describe how ZoomInfo's database works—whether the ability to generate a list of names in response to searches of certain "job titles" or "industries" (*id.* at ¶ 61) or an accurate description of the features of ZoomInfo's "Copilot" service (*id.* at ¶ 40). It is difficult to envision a more straightforward way to "accurately describe the goods or services of a party" than to *provide access to those very goods and services*.[1] *Cf. Charisma Hudson, et al. v. Datanyze, LLC*, 702 F. Supp. 3d 628, 634 (N.D. Ohio 2023), *appeal docketed*, No. 23-3998 (6th Cir. Dec. 14, 2023) ("Under Plaintiffs' theory, Datanyze can sell its product, just not give it away for free. . . . The Court agrees that this result would be paradoxical.") (quotation omitted).

The Court need not look beyond the plain language of the legislature's exemption to dismiss plaintiff's claims. However, to the extent analogies to other intellectual property rights are instructive—and because no court has previously interpreted this WPRA exemption—case law interpreting the Lanham Act's analogous provision concerning descriptive fair use provides further reasoning that supports application of the WPRA's exemption here. *See Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 622-23 (6th Cir. 2000) (courts often turn to intellectual property law for guidance in right-of-publicity cases because "case law on this right is exceedingly rare").

Just as the WPRA permits uses of individuals' names to describe the contents of goods or services, the Lanham Act—which governs trademarks—provides a defense to an infringement claim where "the use of the [trademarked] name . . . is a use . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." *See* 15 U.S.C. § 1115(b)(4). The Lanham Act's "fair use" defense is interpreted in a "broad sense." *Solid 21, Inc. v. Breitling U.S.A., Inc.*, 96 F.4th 265, 276 (2d Cir. 2024) (internal quotations omitted). Courts look to whether the use (1) does not try to capitalize on the value of another's trademark;

[1] No allegations of bad faith are or could plausibly be at issue here.

(2) is descriptive in nature; and (3) occurred in good faith. *See, e.g., JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 531 (S.D.N.Y. 2013). Here—as applicable to plaintiff's name—all three considerations make clear the challenged use is merely descriptive.

*First*, in the trademark context, courts examine whether the defendant is attempting to trade on its association with another's mark. *Id.* (quotation, citation omitted) (considering whether use is "as a mark," and noting that when the use "is accompanied by a defendant's own, conspicuously visible mark,"—*i.e.*, the defendant is not trying to trade on its association with another's mark—"this generally does not constitute trademark use." ). In *JBCHoldings*, for example, the defendant had used the plaintiff's mark in messages to clients. 931 F. Supp. 2d at 531. However, because "[t]here was no way for [the defendant] to inform her clients that the services she would be providing would include the assistance of [the plaintiff] without invoking [the plaintiff's] name," the court concluded use of the plaintiff's name was "otherwise than as a mark." *Id.*

So too here. Plaintiff does not allege ZoomInfo is attempting to trade on some value associated with her—for example, through representations that plaintiff uses or endorses ZoomInfo's database. Indeed, plaintiff does not claim any "value" associated with her name other than as a result of its alleged use as part of ZoomInfo's database. Compl. at ¶ 71. She instead alleges only that ZoomInfo accurately presents her information to describe the database ZoomInfo offers.

*Second*, a use is "descriptive" when it is "used to describe characteristics of goods." *Id.* In *Hensley Mfg. v. ProPride, Inc.*, for example, the court determined use of the plaintiff's mark was permissibly "descriptive" where the defendant used the plaintiff's name "to identify him as a designer of trailer hitches . . . describe his relationship to [the defendant], and tell the story behind [the plaintiff's] success." 579 F.3d 603, 612 (6th Cir. 2009).

Here, there likewise can be no meaningful dispute on this point. Every alleged use plaintiff challenges is nothing more than a description of ZoomInfo's database—her claims are based on previews of the content available on ZoomInfo's site and descriptions of its

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

functionality. As in *Hensley*, the alleged "uses" of plaintiff's name are merely a part of the description.

*Finally*, plaintiff has not alleged an absence of "good faith." Nor could she. Plaintiff does not allege the information is inaccurate, and she concedes ZoomInfo's presentation of her information is part of a "preview" or "free trial" access to its site. When a defendant's use is in an accurate, descriptive sense, rather than trading on the value of another's mark, courts use those factors as evidence of good faith. *Solid 21, Inc.*, 96 F.4th at 279 ("[O]ur good faith analysis often travels together with descriptiveness. . . . We think it rare that a defendant who uses a descriptive term only to describe its products, and not as a trademark, will nevertheless intend[] to sow confusion between the two companies' products.") (quotation, citation omitted).

Because the challenged uses indisputably provide an accurate description of the database ZoomInfo offers, plaintiff's claims fall within this statutory exemption and should be dismissed.

## II. PLAINTIFF'S "RIGHT OF PUBLICITY" CLAIMS INDEPENDENTLY FAIL BECAUSE THE CHALLENGED USE IS INCIDENTAL

The WPRA does not apply "to the use of an individual's or personality's name" that "is an ***insignificant, de minimis, or incidental use***." WASH. REV. CODE § 63.60.070(6) (2024) (emphasis added).

Because no court has interpreted this provision of Washington's law, cases interpreting similar provisions in other states' right of publicity laws provide guidance. *See, e.g.*, *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 936 (6th Cir. 2003) (looking to out-of-circuit cases considering other states' right of publicity laws when analyzing right of publicity claim). Additionally, "[t]he commercial appropriation right of privacy . . . is similar . . . to the right of publicity," *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1446 (11th Cir. 1998), and has a well-rooted incidental use exception that can provide guidance, *see* RESTATEMENT (SECOND) OF TORTS § 652C cmt. d (AM. LAW INST. 1977).

Courts consider various factors in deciding whether a use is "incidental." *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994). Those considerations

include: (1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; and (3) the duration, prominence or repetition of the name or likeness relative to the rest of the publication. *Id. See also* RESTATEMENT (SECOND) OF TORTS § 652C cmt. d (AM. LAW INST. 1977) ("The value of the plaintiff's name is not appropriated by mere mention of it."). Here, each factor demonstrates the alleged use is incidental.

***First,*** when a name or likeness is used "for purposes other than taking advantage of" one's "reputation, prestige, or other value," the use is incidental. *Balsley v. LFP, Inc.*, 2010 WL 11561844, at *9 (N.D. Ohio Jan. 26, 2010) (finding incidental use because inclusion of photograph in magazine was not used to show plaintiff's endorsement of the magazine). In *Vinci v. Am. Can Co.*, for example, the plaintiff (an Olympic gold medalist) asserted a right of publicity claim based on use of his name and likeness on promotional drinking cups. 591 N.E.2d 793, 794 (Ohio 1990). In rejecting the plaintiff's claims, the court held that "[i]t is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded." *Id.* (cleaned up). Because there was "no implication that the athletes used, supported, or promoted the product," the plaintiff's claim failed. *Id.*

Similarly, in *Hudson v. Datanyze, LLC*, the plaintiff asserted a right of publicity claim based on the alleged inclusion of her name, email address, direct dial number, and other information in a "subscription-based directory of sales and marketing professionals" involving over 120 million people's information. 702 F. Supp. 3d 628, 630, 634 (N.D. Ohio 2023), *appeal docketed*, No. 23-3998 (6th Cir. Dec. 14, 2023). The court found the use was "incidental." *Id.* "The publication of Plaintiffs' information, with no implication that they use, support, or promote the product, in Defendant's database, which purportedly contains 120 million profiles," was an incidental use. *Id.* at 634.

Other courts have similarly applied these same principles. *See, e.g.*, *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306 (Ohio 2020) (rejecting right of publicity claim where plaintiff

"failed to present any evidence that her name had significant value or, indeed, any commercial value"); *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) (plaintiff must "demonstrate that there is value in associating an item of commerce with [their] identity"); *McFarland v. Miller*, 14 F.3d 912, 919–20 (3d Cir. 1994) ("At its heart, the value of the right of publicity is associational. People link the person with the items the person endorses and, if that person is famous, that link has value."); *Schifano v. Greene County Greyhound Park, Inc.*, 624 So. 2d 178, 181 (Ala. 1993) (affirming summary judgment in favor of the defendant and distinguishing past case involving use of former college football star).

Here, plaintiff does not allege her name has any "reputation, prestige, or other value" that ZoomInfo is using to its advantage. To the contrary, the only alleged "value" purportedly results from *ZoomInfo's* use of her name. Compl. at ¶ 71. It cannot be that ZoomInfo is taking advantage of any "prestige" or "value" associated with plaintiff when it is *ZoomInfo's* use that allegedly confers that value. *See, e.g., Hudson*, 2023 WL 8004715 at *4 ("[D]eliberate use of an individual's likeness by a defendant ***does not*** automatically confer value upon it."). And plaintiff's allegations otherwise make clear the value of ZoomInfo's database does not lie in *her* information—it is instead the aggregation of *millions* of business contacts and the insights that aggregation can provide that give ZoomInfo its value. *See, e.g.*, Compl. at ¶ 21.

Plaintiff's situation is thus entirely distinct from those where courts have found a plaintiff's name or image had unique value. For example, in *Yeager v. Cingular Wireless LLC*, unlike here, the plaintiff's "name and identity [were] unique and non-fungible in that he is the person associated with breaking the sound barrier for the first time." 673 F. Supp. 2d 1089, 1101 (E.D. Cal. 2009). Likewise, in *Pooley v. National Hole-In-One Ass'n*, the plaintiff was "a person who made a million dollars for a hole-in-one," and without use of his footage, the defendant's "'Million Dollar Hole-in-One Shootout' would not have been very attractive to many golfers." 89 F. Supp. 2d 1108, 1112-13 (D. Ariz. 2000). Similarly, in *Davis v. Electronic Arts Inc.*, the defendant had paid millions of dollars to replicate college athletes in simulated versions of themselves, which added unique value to the defendant's product. 775 F.3d 1772, 1180-81 (9th

Cir. 2015). And in *Upper Deck Company v. Flores*, the defendant had produced a trading card with *Michael Jordan's* name, image, and autograph on both sides. 569 F. Supp. 3d 1050, 1069-70 (S.D. Cal. 2021). Plaintiff here cannot allege anything remotely similar.

***Second,*** plaintiff's name does not "contribute something of significance" to ZoomInfo's database—in fact, her allegations demonstrate the *opposite*. Plaintiff alleges her information is one in ***209 million***, and even then it is available only where a user affirmatively seeks it out. Courts have found use to be "incidental" based on far more significant inclusions. In *Bogie v. Rosenberg*, for example, the plaintiff asserted a right of publicity claim based on a "16-second clip in an hour and twenty-four-minute documentary." 2012 WL 12995704, at *9 (W.D. Wis. Mar. 16, 2012). The court correctly determined that "no reasonable jury could find that this [use] is a non-incidental use of [plaintiff's] image for a commercial purpose." *Id.*

Further, courts have correctly recognized that publishing information on a platform—which is all that plaintiff has alleged here—is *not* a significant contribution. *See Stayart v. Google Inc.*, 2011 WL 13160131, at *1-2 (E.D. Wis. Aug. 17, 2011), *aff'd*, 710 F.3d 719 (7th Cir. 2013) ("The fact that a defendant . . . makes a profit from the business of publication or supports its business with advertising is not enough to make the incidental use of a name a commercial use.").

For example, the Seventh Circuit held that Amazon's use of book covers and publisher descriptions to sell books was "incidental" because the court could "discern no set of facts by which an internet retailer such as Amazon, which functions as the internet equivalent to a traditional bookseller, would be liable for displaying content that is incidental to book sales, such as providing customers with access to a book's cover image and a publisher's description of the book's content." *Almeida v. Amazon.com, Inc.*, 456 F. 3d 1316, 1326 (11th Cir. 2006).

Here, ZoomInfo purportedly used plaintiff's business contact information amidst millions of similar records. Plaintiff's record has no "significance," and ZoomInfo's alleged use is plainly incidental.

***Finally,*** the alleged use is minimal in duration, prominence and repetition relative to the rest of ZoomInfo's database. District courts evaluate the use in context of the entire publication to determine whether the use is incidental. *Aligo*, 1994 WL 715605, at *3. For example, in *Aligo v. Time-Life Books, Inc.*, the court found the defendant's four-second use of the plaintiff's photograph in a 29-minute infomercial was incidental as a matter of law. *Id.* at *4. Other courts have consistently reached similar conclusions, finding the use incidental where, for example:

- The use occurred in a book containing the names of 101 people. *Ladany v. William Morrow & Co., Inc.*, 465 F. Supp. 870, 881-82 (S.D.N.Y. 1978);
- The plaintiff made a 9-second appearance in a motion picture. *Preston v. Martin Bregman Productions, Inc.*, 765 F. Supp. 116, 118-19 (S.D.N.Y. 1991);
- An advertisement depicted the names, photographs, and quotations of six different authors. *Groden v. Random House, Inc.*, 61 F.3d 1045, 1048, 1051 (2d Cir. 1995);
- The plaintiff's name was used 1 time in 1 line of a song with 104 lines. *Lohan v. Perez*, 924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013);
- The plaintiff's name was used in 1 of 116 panels in a 24-page comic book. *Netzer v. Continuity Graphic Associates, Inc.*, 963 F. Supp. 1308, 1326 (S.D.N.Y. 1997);
- The plaintiff was depicted for 1.5 seconds in a movie trailer. *Lindholm v. Gibney*, 2006 WL 8451489, at *9 (S.D. Tex. Sept. 12, 2006); and
- The plaintiff's name was used once in a 33-minute interview. *Torain v. Casey*, 2016 WL 6780078, at *4 (S.D.N.Y. Sept. 16, 2016).

Similarly here, plaintiff's complaint hinges on a single database entry out of ***millions***. Compl. ¶ 9. Courts have found incidental uses with uses of much greater duration, prominence and repetition.[2]

---

[2] A contrary outcome under the incidental use exception would also give rise to serious First Amendment issues. The incidental use exception is intended to avoid conflicts between the right of publicity and free speech rights—as courts have recognized, "allowing anyone briefly depicted or referred to for commercial purposes [to sue] would unduly burden expressive activity." *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994). Were plaintiff correct that the WPRA applies on the facts alleged (she is not for the reasons shown above), the statute would infringe on ZoomInfo's First Amendment right to free

Accordingly, the Court should find the WPRA's incidental use exception, RCW § 63.60.070(6), applies to ZoomInfo's use and requires dismissal of plaintiff's claims.

**CONCLUSION**

For the reasons shown above, the Court should dismiss plaintiff's complaint in its entirety.

DATED: November 1, 2024

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: /s/ *Alicia Cobb*

Alicia Cobb, WSBA #48685
1109 First Avenue, Suite 210
Seattle, Washington 98101
Phone (206) 905-7000
Fax (206) 905-7100
aliciacobb@quinnemanuel.com

Shon Morgan (*pro hac vice*)
John W. Baumann (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Phone (213) 443-3000
Fax (213) 443-3100
shonmorgan@quinnemanuel.com
jackbaumann@quinnemanuel.com

*Attorneys for Defendant ZoomInfo Technologies LLC.*

speech. Indeed, courts have repeatedly held that directories of names, phone numbers, and job details—like a phone book or ZoomInfo's platform—are "noncommercial speech," and thus receive fulsome protection under the First Amendment that would prohibit a lawsuit such as this. *See, e.g.*, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012). However, it is an "elementary rule" that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 817 (9th Cir. 2016). As shown above, the incidental use exception applies here and must be interpreted to avoid this concern.

**WORD COUNT**

I certify that this memorandum contains 4,014 words, in compliance with the Local Civil Rules.

DATED this 1st day of November, 2024.

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685

MOT. TO DISMISS PURSUANT TO FRCP 12
(3:24-CV-05745-KKE)

13

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2024, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of record.

DATED this 1st day of November, 2024.

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685