1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

THE HONORABLE KYMBERLY EVANSON

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

MEMARY LAROCK, individually and on
behalf of all others similarly situated,

                Plaintiff,

    v.

ZOOMINFO TECHNOLOGIES, LLC,

                Defendant.

Case No. 3:24-cv-05745-KKE

NOTE ON MOTION CALENDAR:

January 6, 2025

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS AND MOTION TO STRIKE

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

WASHINGTON'S PERSONALITY RIGHTS ACT ........................................2

BACKGROUND ...................................................................................................2

ARGUMENT ........................................................................................................3

   I.   The Motion to Dismiss Should Be Denied ...............................................3

      A.  The WPRA's "Merely Descriptive" Exemption Does Not Apply..................4

      B.  The WPRA's "Incidental Use" Exemption Does Not Apply ........................8

   II.  The Motion to Strike Should Be Denied...................................................11

      A.  The WPRA's Class Action Bar Does Not Apply ........................................11

          1.  Federal Rules that "Really Regulate Procedure" Apply in Federal Diversity Actions Notwithstanding Conflicting State Laws......................................................................................................12

          2.  Rule 23 Applies to This Action Because it "Really Regulates Procedure," Notwithstanding the Nature or Purpose of the WPRA's Provision Barring Class Actions ..............................................17

          3.  Even if Justice Stevens's Concurrence Controls, Rule 23 Still Applies Because the WPRA's Class Action Ban Does Not Define the Rights or Remedies Provided by the Statute .......................18

      B.  The Multi-State Class is Properly Alleged .................................................21

CONCLUSION.....................................................................................................24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

i

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

*Abbas v. Foreign Pol'y Grp., LLC,*
   783 F.3d 1328 (D.C. Cir. 2015)......................................................................... 16

*Aligo v. Time-Life Books, Inc.,*
   1994 WL 715605 (N.D. Cal. Dec. 19, 1994)....................................................... 10

*Batis v. Dun & Bradstreet Holdings, Inc.,*
   No. 22-CV-01924, 2023 WL 1870057 (N.D. Cal. Feb. 9, 2023) ........................... 5

*Benson v. Double Down Interactive, LLC,*
   527 F. Supp. 3d 1267 (W.D. Wash. 2021).......................................................... 24

*Callahan v. PeopleConnect, Inc.,*
   No. 20-CV-09203-EMC, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ............... 5

*Camacho v. Control Grp. Media Co., LLC,*
   No. 21-CV-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022) ........................... 5

*CoreCivic, Inc. v. Candide Group, LLC,*
   46 F.4th 1136 (9th Cir. 2022) ............................................................................. 16

*Curry v. Mrs. Fields Gifts, Inc.,*
   No. 2:22-CV-00651, 2023 WL 6318108 (D. Utah Sept. 28, 2023)...................... 20

*Dep't of Ecology v. Campbell & Gwinn, LLC,*
   146 Wash.2d 1 (2002)........................................................................................... 4

*Deposit Guar. Nat'l Bank v. Roper,*
   445 U.S. 326 (1980)............................................................................................ 18

*Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD,*
   766 F. Supp. 2d 1122 (W.D. Wash. 2011).......................................... 21, 22, 23, 24

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd,*
   762 F.3d 829 (9th Cir. 2014) ........................................................................ 22, 24

*Hill v. LLR, Inc.,*
   No. CV-18-120-GF-BMM-JCL, 2019 WL 2404900 (D. Mont. Mar. 8, 2019)..... 16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

ii

**HEDIN LLP**
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

*Fraley v. Commonspirit Health*,
    26 Wash. App. 2d 588 (2023) .................................................................. 8

*Fraternal Ord. of Eagles v. Grand Aerie of Fraternal Ord. of Eagles*,
    148 Wash. 2d 224 (2002) ................................................................. 4, 9

*Fry v. Ancestry.com Operations Inc.*,
    No. 3:22-CV-140, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) ............... 5, 10, 11

*Green v. Datanyze, LLC*,
    No. 23-CV-1605, 2024 WL 168123 (N.D. Ill. Jan. 16, 2024) ..................... 5

*Gaul v. Truth Now, LLC*,
    No. 21-CV-1314, 2022 WL 3647257C.D. Ill. Aug. 24, 2022) ..................... 5

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ................................................................. 12, 13, 14

*Hudson v. Datanyze, LLC*,
    702 F. Supp. 3d 628 (N.D. Ohio 2023) ......................................... 10

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
    299 F.R.D. 648 (S.D. Cal. 2014) ............................................... 15, 19

*In re Packaged Seafood Prod. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017) ....................................... 16

*Keepseagle v. Perdue*,
    856 F.3d 1039 (D.C. Cir. 2017) ................................................ 18

*Kellman v. Spokeo, Inc.*,
    599 F. Supp. 3d 877 (N.D. Cal. April 19, 2022) ......................... 5, 11

*King v. Palmer*,
    950 F.2d 771 (D.C. Cir. 1991) ................................................. 15

*Knapke v. PeopleConnect Inc.*,
    553 F. Supp. 3d 865 (W.D. Wash. 2021) .................................... 11

*Kolebuck-Utz v. Whitepages Inc.*,
    No. C21-0053-JCC, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ........ 5, 10, 11

*Krause v. RocketReach, LLC*,
    561 F. Supp. 3d 778 (N.D. Ill. Sept. 21, 2021) ............................ 5, 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*Landham v. Lewis Galoob Toys, Inc.*,
    227 F3d 619 (6th Cir. 2000) ................................................................................................. 4

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ........................................................................................... 15

*Lessin v. Ford Motor Co.*,
    No. 3-19-CV-01082, 2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) ................................... 16

*Lindstrom v. Polaris, Inc.*,
    No. CV 23-137, 2024 WL 4275619 (D. Mont. Sept. 24, 2024) .......................................... 16

*Lisk v. Lumber One Wood Preserving, LLC*,
    792 F.3d 1331 (11th Cir. 2015) ................................................................................... 14, 19

*Love v. Assoc. Newspapers, Ltd.*,
    611 F.3d 601, 610 (9th Cir. 2010) ................................................................................ 21, 23

*Lukis v. Whitepages Inc.*,
    454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................................................ 5, 11

*Lukis v. Whitepages Inc.*,
    549 F. Supp. 3d 798 (N.D. Ill. 2021) ................................................................................... 5

*Makaeff v. Trump University, LLC*,
    715 F.3d 254 (9th Cir. 2013) ............................................................................................. 16

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ........................................................................................... 16

*Marks v. United States*,
    430 U.S. 188 (1977) ........................................................................................................... 15

*Martin v. Pierce Cnty.*,
    34 F.4th 1125 (9th Cir. 2022) ............................................................................................ 16

*Martinez v. ZoomInfo Techs. Inc.*,
    No. 21-CV-5725, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ....................................... 4

*Mississippi Publishing Corp. v. Murphree*,
    326 U.S. 438 (1946) ..................................................................................................... 14, 18

*Miller v. Ford Motor Co.*,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

iv

**HEDIN LLP**
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

620 F. Supp. 3d 1045 (E.D. Cal. 2022)...................................................................................... 16

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
  498 F.2d 821 (9th Cir. 1974) ............................................................................................. 11

*Nolen v. PeopleConnect, Inc.*,
  No. 20-CV-09203, 2023 WL 4303645 (N.D. Cal. June 30, 2023) ....................................... 5

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
  390 U.S. 102 (1968) ........................................................................................................... 18

*Reed v. Dynamic Pet Prod.*,
  No. 15-CV-0987, 2016 WL 3996715 (S.D. Cal. July 21, 2016) ......................................... 16

*Roberts v. C.R. England*,
  321 F. Supp. 3d 1251 (D. Utah 2018) ............................................................................... 19

*Rodriguez v. Zavala*,
  188 Wash. 2d 586, 593 (2017)............................................................................................. 4

*Roe v. Amazon.com*,
  714 F. App'x 565 (6th Cir. 2017) ...................................................................................... 10

*Sedlacek v. Hillis*,
  145 Wash. 2d 379 (2001) ..................................................................................................... 8

*Seizer v. Sessions*,
  132 Wash.2d 642 (1997) .................................................................................................... 21

*Sessa v. Ancestry.com Operations Inc.*,
  561 F. Supp. 3d 1008 (D. Nev. 2021) ................................................................................ 10

*Sibbach v. Wilson & Co.*,
  312 U.S. 1 (1941)........................................................................................................ *passim*

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) .................................................................................................... *passim*

*Shannon Arnstein, et al. v. Sundance Holdings Group, LLC*,
  No. 2:24-cv-00344, 2024 WL 4882857 (D. Utah Nov. 25, 2024).................................. 19, 20

*Siegel v. ZoomInfo Techs., LLC*,
  No. 21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021)........................................... 5, 6

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

v

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

*Smith-Brown v. Ulta Beauty, Inc.*,
    No. 18-C-610, 2019 WL 932022, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019) ................... 19

*Spindler v. Seamless Contacts, Inc.*,
    No. 4:22-CV-00787-KAW, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022) ................. 5, 10

*Travelers Cas. Ins. Co. of Am. v. Hirsh*,
    831 F.3d 1179 (9th Cir. 2016) ................................................................................. 16

*United Food & Com. Workers Loc. 1776 v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) ................................................................... 13

*United States v. Hoffman*,
    154 Wash. 2d 730 (2005) ......................................................................................... 8

*Whatcom County v. City of Bellingham*,
    128 Wash.2d 537 (1996) .......................................................................................... 7

*Welch v. Texas Dep't of Highways and Public Transportation*,
    483 U.S. 468 (1987) ............................................................................................... 15

*Wittman v. CBI*,
    No. CV-15-105, 2016 WL 3093427 (D. Mont. June 1, 2016) ............................... 17

*Williams v. Striker*,
    29 Wash. App. 132 (1981) ....................................................................................... 8

*Wilson v. Ancestry.com LLC*,
    653 F. Supp. 3d 441 (S.D. Ohio Jan. 31, 2023) ................................................ 5, 10

**STATUTES**

Revised Code of Washington 63.60.10, *et. seq.* ..............................................*passim*

**RULES**

Federal Rule of Civil Procedure 32 ................................................................*passim*

**OTHER**

Charles Alan Wright et al.,
    *Federal Practice and Procedure* § 1758 (3d ed. 2017) ...................................... 17

J. Thomas McCarthy,
    *Rights of Publicity & Privacy* § 4:17 (2d ed 2010) ............................................ 11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

Kevin M. Clermont,

*The Repressible Myth of Shady Grove*, 86 Notre Dame L. Rev. 987 (2011)................. 15, 17

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

vii

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

Plaintiff Memary LaRock submits this response in opposition to the motion to strike (ECF No. 19) and motion to dismiss (ECF No. 20) filed by Defendant ZoomInfo Technologies, LLC.

## INTRODUCTION

This case is about Defendant's systematic misappropriation of millions of American's personality rights to advertise its own products in violation of the Washington Personality Rights Act ("WPRA"). *See* Revised Code of Washington ("RCW") 63.60.10, *et. seq.*

Defendant, based in Vancouver, Washington, operates a multi-billion-dollar business collecting, cataloging, and selling access to Americans' personally identifying information. Its revenue comes from sales of subscriptions to an online platform hosted at www.zoominfo.com. Paying subscribers to this platform gain access to a vast database of millions of Americans' personal information and related suites of market research and business-development tools.

To advertise its products, Defendant uses the names and personal details of the millions of people whose information it has amassed in its database. Defendant does this in two ways. First, Defendant publishes millions of free-preview "profile" pages, each one of which prominently displays the name and personal details of a specific individual and advertises Defendant's products and services. Second, Defendant offers free trials which enable would-be customers to view the names and personal details of anyone in the database and which also advertise paid subscriptions. In both ways, Defendant incorporates millions of Americans' names and identities into advertisements for its own products—all without asking for, let alone obtaining consent from, any of those individuals.

Defendant's motion to dismiss and motion to strike should be swiftly denied. First, Plaintiff has stated a claim under the WPRA and neither statutory exception invoked by Defendant covers her allegations. Second, Rule 23 applies to the alleged multi-state plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1    class because federal courts sitting in diversity must apply valid federal procedural rules

2    (including Rule 23) and the WPRA protects the personality rights of individuals domiciled

3    outside of Washington from conduct occurring within the state.

4                           **WASHINGTON'S PERSONALITY RIGHTS ACT**

5           The WPRA is Washington's right of publicity statute.  It defines a property right in the

6    use of several characteristics associated with one's identity: "Every individual or personality has

7    a property right in the use of his or her name, voice, signature, photograph, or likeness."  *See*

8    RCW 63.60.010.   The WPRA provides that anyone who "uses" any of those protected

9    characteristics "on or in goods, merchandise, or products entered into commerce in this state, or

10   for purposes of advertising products merchandise, goods or services . . . or if any person

11   disseminates or publishes such advertisements in this state," without the consent of the owner,

12   "has infringed such right."  RCW 63.60.050.   Among other remedies, the WPRA provides for

13   statutory damages of $1,500 per violation and injunctive relief.  RCW 63.60.060.

14                                          **BACKGROUND**

15          Plaintiff Memary LaRock filed the Class Action Complaint stating one count of

16   misappropriation under the WPRA on September 5, 2024.  ECF No. 1 (the "Complaint").  The

17   Complaint alleges that Defendant systematically misappropriates the personality interests of

18   millions of Americans to promote its products.  Plaintiff seeks to represent two classes individuals

19   whose personality rights have been misappropriated by Defendant.  *See id*. at ¶¶ 114-115.

20          The Complaint alleges a wide-ranging campaign of misappropriation.  First, it describes

21   the millions of free-preview "profile" pages published and disseminated by Defendant.  Each of

22   these pages features the name and personal details of one individual and uses those attributes to

23   advertise Defendant's products in multiple ways.  ECF No. 1, ¶¶ 30-31; 40-46.  Defendant also

2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

uses the relevant individuals' names to optimize the free-preview "profile" pages to rank highly on internet search engines whenever someone submits a query for the name of the individual to whom any given page corresponds. *See id.* at ¶¶ 50-59.

Second, the Complaint describes the free trials Defendant offers to its platform. These free trials provide potential subscribers access to "contact profiles" containing the names and personal details of everyone in Defendant's database. ECF No. 1, ¶¶ 80-81, 93-94. Each "contact profile" also displays advertisements for Defendant's subscription-only products. *Id.* at ¶¶ 99-104. Defendant offers these free trials—and uses the individuals' names and personal details therein—solely for the purpose of advertising subscriptions to its platform. *See id.* at ¶¶ 95-102.

Defendant conducts these activities from Washington state. It maintains its headquarters and principal place of business in Vancouver, Washington. ECF No. 1, ¶ 11. It publishes and disseminates both the free-preview "profile" pages and the free trial "contact profiles" in and from Washington state. *Id.* at ¶¶ 49, 110.

## ARGUMENT

The Court should deny Defendant's motion to dismiss and motion to strike because the Complaint states a claim for relief under the WPRA on behalf of Plaintiff and all putative class members and because Rule 23 applies to the multi-state class alleged in this action.

### I.    __The Motion to Dismiss Should Be Denied__

Defendant moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) on two grounds: (1) Plaintiff's claim arises from Defendant's use of her name to "accurately describe" its products, placing it within the exemption found in RCW 63.60.070(5); and (2) Plaintiff's claim arises from Defendant's use of her name in an "incidental" manner, placing it within the exemption found in RCW 63.60.070(6). *See* ECF No. 20 at 1. However,

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

the factual allegations of the Complaint plainly demonstrate that neither of these exceptions

apply.  The motion to dismiss should be denied.

### A.  The WPRA's "Merely Descriptive" Exemption Does Not Apply

First, the WPRA's "merely descriptive" exemption does not apply to Defendant's alleged

uses of the Plaintiff's and putative class members' names. RCW 63.60.70(5) creates this

exemption and provides: "This chapter does not apply to a use or authorization of use of an

individual's or personality's name that is merely descriptive and used fairly and in good faith only

to identify or describe something other than the individual or personality. . . ." *Id*. (emphasis

added).  Read coherently, RCW 63.60.70(5) exempts any "use" of an individual's name which

is: (1) "merely descriptive," and made (2) "fairly and in good faith" and (3) made "only to identify

or describe something other than the individual or personality."  *See id*.; *see also Rodriguez v.

Zavala*, 188 Wash. 2d 586, 593 (2017) (Washington state statutes must be interpreted such that

no part is rendered superfluous).

RCW 63.60.70(5)'s "merely descriptive" exception does not apply for at least three

reasons.[1]  First, Defendant uses the names to "identify or describe" the relevant "individual or

---

[1]  Defendant's analogy to the Lanham Act is inapposite.  Where a "statute's meaning is plain on its face, then the court must give effect to that plain meaning."  *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wash.2d 1, 9-10 (2002).  As Defendant concedes, the "plain language" here is sufficient to resolve the question.  *See* ECF No. 20 at 5.  The Court need not borrow from unrelated jurisprudence addressing a separate cause of action, distinct statutory text, and federal (as opposed to Washington state) interpretative law which is simply not at issue here.  *See Fraternal Ord. of Eagles v. Grand Aerie of Fraternal Ord. of Eagles,* 148 Wash. 2d 224, 239 (2002) ("An unambiguous statute is not subject to judicial construction").

Case law on the right of publicity is not "exceeding rare," as Defendant claims to justify the Lanham Act analogy.  *See id*. (quoting *Landham v. Lewis Galoob Toys, Inc*., 227 F3d 619, 622-23 (6th Cir. 2000)).  At least two courts—including this Court—have previously denied motions to dismiss right of publicity lawsuits **brought against this same Defendant** which challenged the **exact same** types of free-preview "profile" pages.  *See Martinez v. ZoomInfo Techs. Inc.*, No. C21-5725, 2022 WL 1078630, at *1 (W.D. Wash. Apr. 11, 2022) (Pechman, J.) (denying a motion to dismiss right of publicity claims against Defendant under California law); *Siegel v. ZoomInfo Techs., LLC*, No. 21-C-2032, 2021 WL 4306148, at *1 (N.D. Ill. Sept. 22, 2021) (denying a motion to dismiss right of publicity claims against Defendant under Illinois law).

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

**HEDIN LLP**
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107


personality." *See* RCW 63.60.70(5). The free-preview "profile" pages display the names alongside the relevant individual's job title, employer, city and state of residence, and other personally identifying details. *See* ECF No. 1, ¶ 31. The same is true for the free-trial "contact profiles." *See id.* at ¶ 97. Thus, they are used to identify the "individual or personality" to whom they belong. This takes them outside the scope of the exception. *See* RCW 63.60.70(5) ("This chapter does not apply to a use or authorization of use of an individual's or personality's name that is merely descriptive and used fairly and in good faith *only to identify or describe something other than the individual or personality* . . . .") (emphasis added).

Second, Defendant does not use the names "merely" and "only" to "identify or describe" its own "goods or services." *See* RCW 63.60.70(5); *see also* ECF No. 20 at 4 (arguing "[t]he sole function of the alleged uses of plaintiff's name is to describe the contents of ZoomInfo's database."). Rather, Defendant uses the names for the additional purpose of drawing consumers to its webpages, where it then serves those consumers advertisements for its own products and services. That is a classic commercial—rather than descriptive—use of personality interests. *See,*

On the contrary, case law on the right of publicity is bountiful—and courts routinely deny motions to dismiss right of publicity claims against similar 'people search' websites. *See, e.g.*, *Green v. Datanyze, LLC*, No. 23-CV-1605, 2024 WL 168123, *1-*3 (N.D. Ill. Jan. 16, 2024) (denying motion to dismiss right of publicity claims brought under Illinois law); *Fry v. Ancestry.com Operations Inc.*, No. 3:22-CV-140, 2023 WL 2631387, at *1 (N.D. Ind. Mar. 24, 2023) (same under Indiana law); *Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 447 (S.D. Ohio Jan. 31, 2023) (same under Ohio law); *Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2023 WL 4303645, at *1 (N.D. Cal. June 30, 2023) (same under California law); *Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL 1870057, at *8 (N.D. Cal. Feb. 9, 2023) (same); *Spindler v. Seamless Contacts, Inc.*, No. 4:22-CV-00787-KAW, 2022 WL 16985678, at *1 (N.D. Cal. Oct. 24, 2022) (same); *Gaul v. Truth Now, LLC*, No. 21-CV-1314-JES-JEH, 2022 WL 3647257, at *6 (C.D. Ill. Aug. 24, 2022) (same under Illinois law); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 884 (N.D. Cal. April 19, 2022) (same under California, Ohio, and Indiana law); *Camacho v. Control Grp. Media Co., LLC*, No. 21-CV-1954-MMA (MDD), 2022 WL 3093306, at *1 (S.D. Cal. July 18, 2022) (same under Alabama and California law); *Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079, at *14 (N.D. Cal. Nov. 1, 2021) (same under California law); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 781 (N.D. Ill. Sept. 21, 2021) (same under Illinois law); *Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053-JCC, 2021 WL 1575219, at *1 (W.D. Wash. Apr. 22, 2021) (same under Ohio law); *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 802 (N.D. Ill. 2021) (same under Illinois law); *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020) (same).

**HEDIN LLP**
1395 BRICKELL AVE., SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

*e.g.*, *Siegel*, 2021 WL 4306148 at \*2-\*4 (finding a plaintiff sufficiently alleged—based upon the *very same* type of ZoomInfo free-preview "profile" pages at issue here—that Defendant used his name for a commercial purpose).

Defendant's uses the names to draw in potential customers is demonstrated by its search engine optimization techniques. In each free-preview "profile" page, Defendant has placed the relevant individual's name into two html source code fields which exist *exclusively* for search engine optimization purposes. ECF No. 1, ¶¶ 51-55. First, the name appears in the 'Keywords' meta field. *Id*. at ¶ 51. Second, the name appears in the 'schema.org' descriptor field (where it is defined as a 'name' to assist with search engine recognition). *Id*. (quoting the relevant html source code from Plaintiff's free-preview "profile" page). Neither of these fields correspond to any visual element of the webpages. Defendant places the names there solely to hold them out on internet search engines and draw in potential subscribers. When someone searches for the relevant individual on a search engine, these uses of that person's name ensure that the free-preview "profile" page ranks highly in the search engine results. *Id*. Tellingly, Defendant makes no attempt to defend these search engine optimization practices. *See* ECF No. 20.

The free-trial "contact profiles," too, include non-descriptive uses of the putative class members' names for advertising purposes. For example, a version of the following advertisement appears in every free-trial "contact profile":

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

*Id.* at ¶ 101; *see also id.* at ¶ 99.  As shown, this page includes an advertisement for a product called Chorus (which summarizes and analyzes customer calls).  *See id.* at ¶¶ 23, 99, 101, 102. Plaintiff's name appears here, but not to "identify or describe" the Chorus product in any way. *See* RCW 63.60.70(5); *see also* ECF No. 1 at ¶ 99 (listing products advertised in each 'contact profile').  It is instead used as "bait" to draw users to the page and then serve them an advertisement for Defendant's Chorus product.  *See* ECF No. 1, ¶¶ 33, 99-101.

        The foregoing "uses" of Plaintiff's name are not "merely" and "only" descriptive of Defendant's products, as Defendant contends.  While they may be descriptive in some respect, they also hold out Plaintiff's name, whether on internet search engines or within the free trials, to draw potential customers to pages where they will see advertisements for Defendant's products. That is not protected by the "merely descriptive" exception.  *See* RCW 63.60.70(5).

        Third, the terms "fairly" or "in good faith" in RCW 63.60.70(5) must be given meaning. *See Whatcom County v. City of Bellingham*, 128 Wash.2d 537, 546 (1996) ("Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.").  Those words are undefined in the statute and therefore take their

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

**HEDIN LLP**
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1   ordinary values.  *See United States v. Hoffman*, 154 Wash. 2d 730, 741 (2005).  Washington

2   courts define "good faith" to mean "an honest belief, based on reasonable grounds, that [a person]

3   has" acted lawfully.  *See Williams v. Striker*, 29 Wash. App. 132, 137 (1981); *accord Fraley v.*

4   *Commonspirit Health*, 26 Wash. App. 2d 588, 599 (2023).  Here, where the Complaint alleges

5   that Defendant never sought permission to use millions of Americans' names in advertisements

6   (ECF No. 1, ¶ 8), "knowingly" and "intentionally" engaged in the alleged misconduct (*id.* at ¶¶

7   36, 50, 72), and has written off the consequences of breaking the law as a "cost of doing business"

8   (*id.*, ¶ 72) (noting that Defendant has previously settled two lawsuits for materially the same

9   conduct under four different right of publicity laws), Defendant cannot—taking all interferences

10  in favor of Plaintiff—be said to have acted either "fairly" or "in good faith," and certainly not

11  both.  *See* RCW 63.60.70(5).[2]

12          For these reasons, the Court should deny Defendant's motion to dismiss.

13  **B.  The WPRA's "Incidental Use" Exemption Does Not Apply**

14          Similarly, the WPRA's "incidental use" exemption does not apply to Defendant's alleged

15  conduct.  As shown below, the Complaint plainly and expressly alleges that Defendant's uses of

16  the names are not insignificant, de minimis, or incidental.

17          The WPRA's "incidental use" exemption provides: "This chapter does not apply to the

18  use of an individual's or personality's name, voice, signature, photograph, or likeness when the

19

20

21  [2] The terms "fairly" and "in good faith" also imply a reasonable limitation on the most expansive possible
    readings of the exemption.  *See* RCW 63.60.70(5).  Otherwise, the exemption would swallow the substantive

22  right.  Defendant's reading would permit unlicensed use of anyone's name in advertising so long as a product
    does indeed contain that person's name.  That cannot be what the Washington legislature intended.  *See*

23  *Sedlacek v. Hillis*, 145 Wash. 2d 379, 390, (2001) (en banc) (exceptions should be "applied cautiously in order
    to avoid allowing an exception to swallow the general rule"); *Fraternal Ord. of Eagles*, 59 P.3d at 663 (2002)
    (courts avoid reading Washington statutes in a manner causing "unlikely, absurd, or strained consequences.").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S                    **HEDIN LLP**
MOTION TO DISMISS AND MOTION TO STRIKE                   1395 BRICKELL AVE.,
CASE NO. 3:24-CV-05745-KKE                               SUITE 1140
                                                         MIAMI, FLORIDA 33131
                                                         PHONE: (305) 357-2107

use of the individual's or personality's name, voice, signature, photograph, or likeness is an insignificant, de minimis, or incidental use." RCW 63.60.70(6).

The Complaint consistently alleges that Defendant's use of the names is not "insignificant, de minimis, or incidental." Instead, it shows that the names are the central focus of the webpages where they appear. *See, e.g.*, ECF No. 1, ¶¶ 31, 97. Plaintiff's name appears at least 31 times in the free-preview "profile" page which misappropriates her identity. *Id*. at ¶ 51. It further appears in the page's title, in the page's URL, and in hmtl source code fields designed to hold out and elevate her name on internet search engines. *Id*. at ¶¶ 51-55. That hardly seems incidental.

Further, the Complaint alleges that the misappropriations are central to Defendant's business strategy. *See id*. For example, the Complaint states:

> Defendant's use of Plaintiff's and the other Free-Preview "Profile" Page Class members' names and corresponding personally identifying information in free-preview "profile" pages was ***not incidental***. On the contrary, it constituted and continues to constitute an ***integral part of Defendant's marketing strategy*** to obtain paying subscriber customers to its Zoominfo.com platform.

ECF No. 1, ¶ 136 (emphasis added); *see also id*. at ¶ 150 (same for free-trial "contact profiles").

Defendant's own statements support these allegations. For example, Defendant has said:

> We ***rely heavily*** on internet search engines, such as Google, including through the purchase of sales and marketing-related keywords and the ***indexing of our public-facing directory pages and other web pages***, to generate a ***significant portion*** of the traffic to our website.

ECF No. 1 at ¶ 38 (emphasis added); *see also* ¶ 37. Similarly, Defendant has acknowledged the significance of free-trials to its strategy, stating "our revenue growth depends on a number of factors, including, but not limited to, our ability to . . . convert users of and organizations on our free Community Edition [e.g., free trial edition] into paying customers." *Id*. at ¶ 95.

Courts have *overwhelming* found that analogous misappropriations (e.g., those involving 'people search' websites) are not incidental. *See, e.g., Kellman*, 599 F. Supp. 3d at 895 (holding

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1     California's incidental use exception did not apply because plaintiffs alleged that "Spokeo's

2     business model depends on using the names, information, and likenesses of average people to

3     entice others to subscribe to its services."); *Spindler*, 2022 WL 16985678 at *5 ("Even if, as

4     Plaintiff alleges, he is only one of 'millions of individuals' included in Defendant's database, in

5     aggregate that is not incidental."); *Fry*, 2023 WL 2631387 at *8 (similar under Indiana law);

6     *Wilson*, 653 F. Supp. 3d at 456–57 (similar under Ohio law); *Kolebuck-Utz*, 2021 WL 1575219

7     at *2 (similar under Ohio law); *Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008,

8     1021 (D. Nev. 2021) (similar under Nevada law).

9          Against this strong tide, Defendant cites cases which read a commercial value requirement

10    into the incidental use analysis.[3]  Unlike the laws considered in those decisions, the WPRA does

11    not require misappropriated names to have independent commercial value.  *See* RCW 63.60.10,

12    *et. seq.*; *accord Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 877 (W.D. Wash. 2021)

13    (discussing Ohio's express statutory requirement for commercial value); *Fry*, 2023 WL 2631387

14    at *6-*8 (same for Indiana).  This eliminates any rationale for imputing a commercial value

15    element into the WPRA's incidental use exemption.[4]

16

17

18    ───────────────

      [3] *See, e.g.*, ECF No. 20 at 7 (citing *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19,
      1994) ("The rationale for this rule is that an incidental use has no commercial value."), 8 (citing *Hudson v.

19    Datanyze, LLC*, 702 F. Supp. 3d 628, 630 (N.D. Ohio 2023) (analyzing the Ohio right of publicity statute's
      'incidental use' exception in light of the statute's express 'commercial value' requirement); 9 (citing *Roe v.

20    Amazon.com*, 714 F. App'x 565, 567 (6th Cir. 2017).

      [4] Even if the Court considers commercial value relevant to the incidental use analysis, it should hold that the
21    fact of a name's misappropriation for advertising purposes proves its commercial value.  *See, e.g.*, J. Thomas
      McCarthy, *Rights of Publicity & Privacy* § 4:17 (2d ed 2010) ("If a defendant uses a relatively unknown
22    person's identity to promote sales, it follows that defendant thought that the identity had commercial value.")
      (collecting cases); *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 825–27 n.11 (9th Cir.
      1974) (overruled in part on other grounds) ("[T]he appropriation of the identity of a relatively unknown person
23    may . . . create economic value in what was previously economically valueless."); *Knapke*, 553 F. Supp. 3d at
      877; *Fry*, 2023 WL 2631387 at *6-*8; *Kolebuck-Utz*, 2021 WL 1575219 at *2.

1    Defendant also cites a string of factually far-removed cases.  *See* ECF No. 20 at 11.  In

2    each, the alleged use was materially different than the uses alleged here, including a mere mention

3    of an individual in a book, a momentary appearance in a feature-length film, and a sole reference

4    in a single line of verse.  *See id.* (describing numerous cases).  Here, by contrast, Defendant

5    published webpages and advertisements which feature an individual's name and identity as their

6    central focus, not as some passing reference—and Defendant admits that those webpages are

7    central to its business strategy.  *See* ECF No. 1 at ¶¶ 35, 37, 38, 40, 44, 51, 99, 101.

8    Finally, Defendant's contention that the WPRA implicates First Amendment concerns has

9    been roundly rejected by courts assessing similar claims across the country.  *See, e.g.*, *Krause*,

10   561 F. Supp. 3d at 783-84; *Lukis*, 454 F. Supp. 3d at 763; *Kellman*, 599 F. Supp. 3d at 895;

11   *Kolebuck-Utz*, 2021 WL 1575219 at *2.

12   For these reasons, the Court should deny Defendant's motion to dismiss.

13   **II.    The Motion to Strike Should Be Denied**

14   The Court should also deny Defendant's motion to strike.  First, under long-standing

15   jurisprudence, courts sitting in diversity—as this Court does here—must apply federal procedural

16   rules, including Rule 23, despite any conflicts with state law.  Second, the multi-state plaintiff

17   class is properly alleged because Defendant is headquartered in Washington state and published

18   and disseminated the violative advertisements in Washington state, making it subject to the duties

19   and obligations created by the WPRA.

20   **A.  The WPRA's Class Action Bar Does Not Apply**

21   The motion to strike the Complaint's class allegations fails because Rule 23, not the

22   WPRA's provision barring class actions, applies in this case.

23

11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1

2

### 1. Federal Rules that "Really Regulate Procedure" Apply in Federal Diversity Actions Notwithstanding Conflicting State Laws

3

Rule 23, like all Federal Rules properly promulgated by the Supreme Court pursuant to

4

the Rules Enabling Act, applies in this federal diversity action despite any conflicting state law.

5

In the early days of the Federal Rules of Civil Procedure,[5] the Supreme Court established

6

a simple test for determining whether a federal court sitting in diversity should apply a Federal

7

Rule which conflicts with a state law. It wrote: "The test [is] whether [the] [R]ule really regulates

8

procedure." *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14 (1941). If the Rule "really regulates

9

procedure," then it does not exceed the Rules Enabling Act's authorization and must apply,

10

regardless of the substantive or procedural nature of any conflicting state law. *See id.* ("If we

11

were to adopt the suggested criterion of the importance of the alleged [state-created] right we

12

should invite endless litigation and confusion . . . ."); *see also Shady Grove Orthopedic Assocs.,*

13

*P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 411-412 & n.9 (2010) (Scalia, J.) (plurality opinion)

14

(explaining that "*Sibbach* adopted and applied a rule with a single criterion: whether the Federal

15

Rule 'really regulates procedure,'" without regard for "the idiosyncrasies of state law," "the

16

function or purpose of a particular state law," or "whether individual applications of the Rule

17

abridge or modify state-law rights").[6] In the decades following *Sibbach*, the Supreme Court has

18

_____

19

[5] In this memorandum, the capitalized form of 'Federal Rule' and 'Rule' refers to rules issued by the Supreme Court under the authority of the Rules Enabling Act (e.g., the Federal Rules of Civil Procedure and the Federal Rules of Evidence). References to 'federal rules,' in the lower case, refer to federal procedural rules generally, including those emanating from other sources such as federal common law, statutes, and the Constitution. This distinction is important because Federal Rules are evaluated under the two-step framework established in *Sibbach*, whereas other federal procedural rules are assessed under the Rules of Decision Act and subject to the "murky waters" of the "relatively unguided" *Erie* analysis. *See Shady Grove*, 559 U.S. at 397 (Scalia, J.) (majority opinion); *id.* at 417 (Stevens, J.) (concurrence) (quoting *Hanna*, 380 U.S. at 471).

20

21

22

[6] *Shady Grove* contained several opinions, including: a majority opinion joined by five Justices and written by Justice Scalia (encompassing Parts I and II-A); a plurality opinion joined by four justices and written by Justice Scalia (Parts II-B, II-C, and II-D); a concurrence in the judgement by Justice Stevens; and a dissent joined by

23

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1    reinforced the applicability of this test on multiple occasions.  *See, e.g.*, *Hanna v. Plumer*, 380

2    U.S. 460, 464 (1965) ("'The test must be whether a rule really regulates procedure—the judicial

3    process for enforcing rights and duties recognized by substantive law and for justly administering

4    remedy and redress for disregard or infraction of them.'") (quoting *Sibbach*, 312 U.S. at 14).

5         The Supreme Court's decision in *Shady Grove* did not overturn the "really regulates

6    procedure" test.  As a threshold matter, every Justice in *Shady Grove* agreed that a two-step

7    framework governs whether a Federal Rule displaces a conflicting state law.  *See id*. at 397

8    (Scalia, J.) (majority opinion), 421 (Stevens, J.) (concurrence), 438 (Ginsberg, J.) (dissent).  In

9    step one, the court asks whether a Federal Rule applies to the circumstances at issue.  *See Shady*

10   *Grove*, 559 U.S. at 398 (Scalia, J.) (majority opinion).  In step two, the court asks whether the

11   Rule is valid under the Rules Enabling Act.[7]  *See id*. ("The framework for our decision is familiar.

12   We must first determine whether Rule 23 answers the question in dispute.  If it does, it governs—

13   New York's law notwithstanding—unless it exceeds statutory authorization or Congress's

14   rulemaking power.").  *Id*.  This requires assessing whether the Rule complies with the Rules

15   Enabling Act's command not to "abridge, enlarge, or modify any substantive right."  *See id*.

16   (citing 28 U.S.C. § 2072(b)).  After applying these steps, the Supreme Court held in *Shady Grove*

17   that Rule 23 applied even despite a conflicting class action ban in a New York state law.  559

18   U.S. at 393-94 (2010) (syllabus) (noting five Justices joined in this holding).[8]

19

20   four justices and written by Justice Ginsberg.  *See Shady Grove*, 559 U.S. at 395.  For purposes of clarity,
     citations to *Shady Grove* herein are accompanies by notations to the author and the portion of the opinion cited.

21   [7] The "three-factor test" in Defendant's brief appears nowhere in Supreme Court jurisprudence, nor in Ninth
     Circuit case law—and is not even a presented as a "test" at all in the case cited by Defendant.  *See* ECF No. 19
22   at 4 (citing *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku
     Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1084 (N.D. Cal. 2014)).  It does not apply.

23   [8] Some courts have found *Shady Grove*'s holding alone controlling, regardless of the methodology applied in
     the second step.  For example, the Eleventh Circuit has written: "five justices agreed that applying Rule 23 to

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

**HEDIN LLP**
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

As to the precise contours of the second step inquiry, however, there is no majority opinion—at least not in *Shady Grove*. Justice Scalia and the plurality favored maintaining the historical approach, looking only to the substantive or procedural nature of the Federal Rule. *Shady Grove*, 559 U.S. at 407 ("What matters is what the rule *itself* regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid. . . .") (quoting *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 445 (1946)) (Scalia, J.) (plurality opinion). Justice Stevens broke from the majority on this point alone to express concern that in *some* cases, matters of state law which *seem* traditionally procedural might be so closely interwoven with state-created rights and remedies as to be inseparable, and in such cases proposed applying the conflicting state law as substantive. *See id.* at 419 (Stevens, J., concurring). Since there is no controlling opinion on the second step of the analysis in *Shady Grove*, however, federal courts today remain bound by the pre-existing precedent in *Sibbach* and *Hanna*.

Some courts have adopted Stevens's solo concurrence as resting on the "narrowest ground" under *Marks v. United States*, 430 U.S. 188 (1977).[9] This reasoning is, as one commentator put it, "seriously off base." Kevin M. Clermont, *The Repressible Myth of Shady Grove*, 86 Notre Dame L. Rev. 987, 1015 n.137. *Marks* has no application here—and especially not in the Ninth Circuit. The Ninth Circuit has directed: "the *Marks* rule is applicable only where one opinion can be meaningfully regarded as narrower than another *and* can represent a common denominator of the Court's reasoning." *Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012)

---

allow a class action for a statutory penalty created by New York law did not abridge, enlarge, or modify a substantive right; Rule 23 controlled. Regardless of which *Shady Grove* opinion is binding, the holding is binding. On this there can be no dispute." *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015) (emphasis added) (applying Rule 23 to displace a state class action ban).

[9] Every single case cited by Defendant applying Stevens's concurrence relies, either directly or through sub-citation, upon *Marks*. *See* ECF No. 19 at 3 – 7.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1    (emphasis added). Stevens's concurrence is neither the "logical subset" of the plurality, nor its

2    "common denominator," especially since it was joined by not a single other justice. *See In re*

3    *Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 653-54 (S.D. Cal. 2014); Clermont,

4    *supra* at 1015 n.137. Justice Scalia may well have anticipated the *Marks* argument, as he

5    dedicated an entire section of his plurality opinion to showing that the concurrence's approach

6    was irreconcilable with his own. *See Shady Grove*, 559 U.S. at 410-13 (Scalia, J.) (plurality)

7    (noting that "the concurrence seeks not to apply *Sibbach,* but to overrule it. . . .").

8        Defendant asks the Court to find that Justice Stevens's solitary concurrence is

9    "controlling" and overturned decades of binding precedent. That cannot be correct. *See King v.*

10   *Palmer*, 950 F.2d 771, 782 (D.C. Cir. 1991) ("When eight of nine Justices do not subscribe to a

11   given approach to a legal question, it surely cannot be proper to endow that approach with

12   controlling force, no matter how persuasive it may be."); *Welch v. Texas Dep't of Highways and*

13   *Public Transportation,* 483 U.S. 468, 494 (1987) ("[T]he doctrine of *stare decisis* is of

14   fundamental importance to the rule of law."). As Justice Kavanaugh explained before his

15   elevation to the Supreme Court, "no common conclusion was articulated [in *Shady Grove*]" with

16   respect to step two of the analysis, so courts must "follow the Supreme Court's pre-existing

17   precedent in *Sibbach*." *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir.

18   2015) (Kavanaugh, J.).

19       Indeed, the Ninth Circuit continues to apply *Sibbach*'s "really regulates procedure" test

20   long after *Shady Grove. See, e.g., Martin v. Pierce Cnty.*, 34 F.4th 1125, 1132 (9th Cir. 2022)

21   (citing then-Judge Kavanaugh's on-point language in *Abbas* to find that Rule 8 really regulates

22   procedure and is thus valid under the Rules Enabling Act, without considering the substantive or

23   procedural nature of the conflicting state law); *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1179, 1183 (9th Cir. 2016) ("When the state law directly conflicts with one of the Federal Rules . . . [t]he Federal Rule will trump as long as it complies with the Rules Enabling Act, and the Supreme Court has held that a Rule will do so if it 'really regulates procedure.'") (cleaned up) (quoting *Sibbach*, 312 U.S. at 14).[10]  So, too, do district courts in the Ninth Circuit—including by often applying Rule 23 over state class action bans.[11]  Authoritative legal scholars are also in accord.  *See Charles Alan Wright et al., Federal Practice and Procedure* § 1758 (3d ed. 2017) ("[I]t is now clear that Rule 23 controls whether a class action may be maintained, regardless of a conflicting state law."); Clermont, *supra* at 1004-1027.

Accordingly, this Court must apply the controlling, long-standing test established in *Sibbach* at step two of the analysis by asking whether Rule 23 "really regulates procedure."

---

[10] The Ninth Circuit decisions cited in Defendant's motion do not show otherwise—far from it.  *See* ECF No. 19 at 4 (citing *CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1141 (9th Cir. 2022) (noting that *Shady Grove* "broke little new ground" and holding that there is no "direct collision" between California's anti-SLAPP statute and a federal Rule under the *first step* of the analysis); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (applying California's anti-SLAPP statute in federal court without mentioning *Shady Grove*); *Makaeff v. Trump University, LLC*, 715 F.3d 254, 260 (9th Cir. 2013) (applying California's anti-SLAPP statute in federal court, with concurrences from former Chief Judge Kozinski and Judge Paez endorsing Justice Scalia's *Sibbach*-aligned approach in *Shady Grove*).  In fact, the Ninth Circuit has never held that Justice Stevens's concurrence is controlling—and, as shown, continues to apply the *Sibbach* test.

[11] *See, e.g.*, *Lindstrom v. Polaris, Inc.*, No. CV-23-137-BLG-SPW, 2024 WL 4275619, at *5 (D. Mont. Sept. 24, 2024) (holding Rule 23 preempts a state law class action ban); *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1076 (E.D. Cal. 2022) (same); *Lessin v. Ford Motor Co.*, No. 3-19-CV-01082-AJB-AHG, 2021 WL 3810584, at *15 (S.D. Cal. Aug. 25, 2021) (same); *Hill v. LLR, Inc.*, No. CV-18-120-GF-BMM-JCL, 2019 WL 2404900, at *11 (D. Mont. Mar. 8, 2019), *report and recommendation adopted as modified*, No. CV-18-120-GF-BMM, 2019 WL 3024896 (D. Mont. July 11, 2019) (same); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1085-86 (S.D. Cal. 2017) (same); *Reed v. Dynamic Pet Prod.*, No. 15CV0987-WQH-DHB, 2016 WL 3996715, at *6 (S.D. Cal. July 21, 2016) (same); *Wittman v. CBI*, No. CV 15-105-BLG, 2016 WL 3093427 at *5 (D. Mont. June 1, 2016) (same).

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1

2

  **2. Rule 23 Applies to This Action Because it "Really Regulates Procedure,"**
   **Notwithstanding the Nature or Purpose of the WPRA's Provision Barring**
   **Class Actions**

3

  The Court should faithfully apply the test established by the Supreme Court in *Sibbach,*

4

find that Rule 23 "really regulates procedure," and apply Rule 23 in this case in favor of the

5

conflicting provision found in RCW 63.60.070(3).  *See Sibbach*, 312 U.S. at 14.

6

  As a threshold matter, Defendant does not dispute that, at step one of the analysis, "Rule

7

23 answers the question in dispute" of "whether [the] suit may proceed as a class action."  *Shady*

8

*Grove*, 559 U.S. at 398 (majority opinion).  As the *Shady Grove* majority explained, Rule 23

9

establishes a "categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue

10

his claim as a class action."  559 U.S. at 398 (Scalia, J.) (majority opinion).  The class action bar

11

found in RCW 63.60.070(3) directly collides with Rule 23 because it "attempts to answer the

12

same question" as Rule 23—e.g., it states that certain persons "shall not bring their cause of action

13

as a class action." *See id*. at 399; RCW 63.60.070(3).  Accordingly, RCW 63.60.070(3) "cannot

14

apply in diversity suits unless Rule 23 is ultra vires." *Id*.

15

  As Defendant concedes, Rule 23 is not "ultra vires."  ECF No. 19 at 3.  That is because

16

Rules "governs only 'the manner and the means' by which the litigants' rights are 'enforced.'"

17

*Shady Grove*, 559 U.S. at 407 (Scalia, J.) (plurality) (quoting *Mississippi Publishing Corp.,* 326

18

at 445).  Indeed, Rule 23 is merely a claims-processing device that enables the adjudication of

19

multiple claims on behalf of a "class"—a species of joinder.  *Provident Tradesmens Bank & Trust*

20

*Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968) ("in a diversity case the question of joinder is

21

one of federal law.").  This makes it a quintessential example of a federal Rule that "really

22

regulates procedure," e.g., "the judicial process for enforcing rights and duties recognized by

23

substantive law and for justly administering remedy and redress for disregard or infraction of

1    them." *Shady Grove*, 559 U.S. at 407 (Scalia, J.) (plurality) (quoting *Sibbach,* 312 U.S. at 14);

2    *see also Keepseagle v. Perdue,* 856 F.3d 1039, 1069 (D.C. Cir. 2017) (referring to the class-action

3    device as "nothing more than a mere 'species' of joinder"); *Deposit Guar. Nat'l Bank v. Roper*,

4    445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only,

5    ancillary to the litigation of substantive claims.").  Because Rule 23 purely regulates procedure,

6    it must be applied in this case notwithstanding the conflicting class action bar found in RCW

7    63.60.070(3).

8           **3.  Even if Justice Stevens's Concurrence Controls, Rule 23 Still Applies**
               **Because the WPRA's Class Action Ban Does Not Define the Rights or**
9              **Remedies Provided by the Statute**

10          Even if the Court chooses to adopt Justice Stevens's *Shady Grove* concurrence, Rule 23

11   still applies to this action because the WPRA's class action bar does not affect substantive rights

12   or remedies under the statute, such that applying Rule 23 would not "abridge, enlarge, or modify"

13   a substantive right.  *See* 559 U.S. at 436 (Stevens, J.) (concurrence).

14          Justice Stevens himself wrote: "the bar for finding an Enabling Act problem is a high

15   one." *Shady Grove*, 559 U.S. at 432 (Stevens, J.) (concurrence) (stating, also, that "few seemingly

16   'procedural' rules define the scope of a substantive right or remedy.").  Reaching for this high

17   bar, Defendant contends that the location of the class action ban in the WPRA's statutory scheme

18   is determinative.  ECF No. 19 at 5-6.  The Eleventh Circuit has thoroughly dispatched that idea:

19          [H]ow a state chooses to organize its statutes affects the analysis not at all.  Surely
            the New York legislature could not change the *Shady Grove* holding simply by
20          reenacting the same provision as part of the statutory-interest statute. . . .  The goal
            of national uniformity that underlies the federal rules ought not be sacrificed on so
21          insubstantial a ground.  And more importantly, the question whether a federal rule
            abridges, enlarges, or modifies a substantive right turns on matters of substance—
22          not on the placement of a statute within a state code.

23

1    *Lisk*, 792 F.3d 1331 at 1336.  District courts, too, frequently reject this approach.  *See, e.g., Smith-*

2    *Brown v. Ulta Beauty, Inc.*, No. 18-C-610, 2019 WL 932022, 2019 WL 932022 at *13-14 (N.D.

3    Ill. Feb. 26, 2019) ("This Court agrees with those decisions holding that the fact that a class action

4    bar is included within a consumer protection statute does not make it any more substantive than

5    if it were found instead among the state's rules of procedure."); *Roberts v. C.R. England*, 321 F.

6    Supp. 3d 1251 (D. Utah 2018) ("considering Justice Stevens's merely passing mention of the

7    New York statute's location in the state code, the significant weight placed on this single factor

8    appears misplaced."); *Hydroxycut*, 299 F.R.D. at 654 (similar).  This Court should hold similarly.

9        Even if the Court accords the class action ban's statutory location any weight, that

10   consideration cuts against Defendant's position here.  The section of the code creating the

11   substantive right is RCW 63.60.010, entitled "Property right—Use of name, voice, signature,

12   photograph, or likeness."  The class action ban appears six sections later, in RCW 63.60.070.

13   Although Defendant emphasizes the word "remedy" in Justice Stevens's phrase "bound up with

14   the state-created right or remedy," *see* ECF No. 19 at 7, the WPRA's class action ban *does not*

15   *appear in its sub-section on remedies*, either, which are outlined in a separate section, RCW

16   63.60.060.  *See Shannon Arnstein, et al. v. Sundance Holdings Group, LLC*, No. 2:24-cv-00344,

17   2024 WL 4882857, at *6 (D. Utah Nov. 25, 2024) ("the provisions creating the rights, duties, and

18   remedies [] never reference, acknowledge, or incorporate [] the class action bar").

19       The WPRA's class action ban never touches its substantive rights or remedies.  Not only

20   is the provision containing the class-action ban cordoned off from the statute's provisions that

21   create substantive rights and provide for remedies, but the sole focus of the provision containing

22   the class-action ban is the *unavailability* of a hypothetical *defense* to liability—a sure sign that

23   the class action ban does not in any way "define the scope of a substantive right or remedy." *See*

1    RCW 63.60.070(3) ("It is no defense to an infringement action under this chapter that the use of

2    an individual's or personality's name, voice, signature, photograph, or likeness includes more than

3    one individual or personality so identifiable.").  Indeed, with or without the class-action ban in

4    place, each putative class member's substantive claim for relief and the remedies to which each

5    is entitled remain the same.  Whether 10,000 individuals bring suit individually seeking $1,500

6    each, or a single person brings a class action on behalf of himself and 9,999 others seeking $1,500

7    for each, each individual's claim for relief remains the same, the remedies to which each is entitled

8    remains the same, and Defendant's exposure for damages remains the same.  *See Curry v. Mrs.*

9    *Fields Gifts, Inc.*, No. 2:22-CV-00651-JNP-DBP, 2023 WL 6318108, at *5 (D. Utah Sept. 28,

10   2023).  That is because the class action ban "neither dictates what must be pleaded or proved as

11   a cause of action, nor does it determine what a plaintiff *gets* should he prevail on such a claim."

12   *Id*. at *5 (emphasis in original).  "Instead," it is "entirely a matter of procedure, merely going to

13   the preferred means of joinder and aggregation," making it a "'classically procedural

14   calibration.'"  *Id*. (quoting *Shady Grove*, 559 U.S. at 435 (Stevens, J.) (concurrence)).

15         "The mere possibility that a federal rule would alter a state-created right is not sufficient.

16   There must be little doubt."  *Shady Grove*, 559 U.S. at 432 (Stevens, J.) (concurrence).  For the

17   foregoing reasons, Defendant has failed to demonstrate even "the mere possibility," let alone

18   "little doubt," that section RCW 63.60.070(3)'s class action bar is "really some part of the State's

19   definition of its right or remedies."  *See id.*; *see also id*. at 426 n.10 ("It will be rare that a federal

20   rule that is facially valid under [the Rules Enabling Act] will displace a State's definition of its

21   own substantive rights.") (Stevens, J.) (concurrence).  Accordingly, Rule 23 applies in this case

22   even under the test articulated by Justice Stevens in his *Shady Grove* concurrence.

23

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

**B.  The Proposed Multi-State Class is Properly Alleged**

Defendant's backup argument for striking the Complaint's allegations regarding class members outside of Washington state fares no better.  According to Defendant, conflict of law principles and the dormant commerce clause bar Plaintiff from asserting claims on behalf individuals domiciled outside Washington state. ECF No. 19 at 15-18.  These arguments are without merit and have been previously turned away by courts including the Ninth Circuit.

Federal courts must apply the forum state's choice of law rules.  *Love v. Assoc. Newspapers, Ltd.,* 611 F.3d 601, 610 (9th Cir. 2010).  "In Washington, courts will not engage in a conflict of laws analysis unless an actual conflict exists between the laws or interests of Washington and the laws or interests of another state."  *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD,* 766 F. Supp. 2d 1122, 1132 (W.D. Wash. 2011) (citing *Burnside v. Simpson Paper Co.,* 123 Wash. 2d 93, 100–01 (1994)).  "In determining which of two or more conflicting laws to apply, Washington courts use the methodology outlined in the Restatement (Second) of Conflict of Laws § 6 (1971) [hereinafter "Restatement"]."  *Experience,* 766 F. Supp. 2d at 1132 (citing *Seizer v. Sessions,* 132 Wash.2d 642, 650–52, 940 P.2d 261 (1997)).  Section 6 of the Restatement provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."  Restatement § 6(1); *accord Experience,* 766 F. Supp. 2d at 1132.

The WPRA contains a clear statutory directive that it applies to conduct occurring within Washington state which violates the rights of individuals domiciled outside of the state.  It provides: "This chapter is intended to apply to all individuals and personalities, living and deceased, *regardless of place of domicile*. . . ."  RCW 63.60.010 (emphasis added).  Other sections of the WPRA reiterate the same directive.  *See, e.g.*, RCW 63.60.020(1)-(2).  This language is so

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1  clear because the Washington legislature specifically amended the WPRA in 2008 to make certain

2  that it applies to people domiciled outside Washington.  *See Experience Hendrix L.L.C. v.*

3  *Hendrixlicensing.com Ltd*, 762 F.3d 829, 834-835 (9th Cir. 2014) (discussing the amendments).

4  In doing so, it "lifted from a Ninth Circuit opinion that suggests how to phrase a choice-of-law

5  provision."  *Experience*, 766 F. Supp. 2d at 1133.  Following the amendments, a district court

6  briefly struck them as violating the dormant commerce clause, due process, and the full faith and

7  credit clause.  *Id*. at 1141.  As Defendant acknowledges, however, the Ninth Circuit quickly

8  reversed that holding, meaning the amended language remains good law today.  *See Experience*,

9  762 F.3d 829 at 835-837.  As a result, one would be hard-pressed to find a clearer statutory

10  directive on this topic anywhere in the country.

11         This case is on all fours with the Ninth Circuit's decision in *Experience*.  In *Experience*,

12  the court applied the WRPA where the defendant allegedly sold offending products within

13  Washington state, even though the plaintiff was domiciled outside of Washington.  762 F.3d at

14  835-837.  The same thing is alleged here, including that:

15         • "Defendant, from its corporate headquarters and principal place of business in
             Washington, systematically used Plaintiff's and millions of other Americans'
16           names and corresponding personally identifying information to advertise and sell
             subscriptions to its platform, without having asked for, much less obtained, any of
17           their consent— in clear violation of the WPRA."  ECF No. 1, ¶ 11.

18         • "Defendant owns and operates the website Zoominfo.com, where it advertises and
             sells, from its headquarters and principal place of business in Vancouver,
19           Washington, products and services to persons throughout the United States."  *Id*.

20         • "Defendant disseminated and published the free-preview 'profile' pages
             misappropriating Plaintiff's and the putative class members' names and
21           corresponding personally identifying information in Washington state," *id*. at ¶ 49;
             *see also id*. at ¶ 110 (same for the free trial "contact profiles").

22

23

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1    Thus, even assuming the WPRA dictates a different result than any other state's right of

2    publicity statute, the WRPA is nonetheless enforceable on behalf of all such persons because the

3    statute specifically "prescribes application of Washington law, 'regardless of place of domicile'"

4    *Experience*, 766 F. Supp. 2d at 1132 (quoting RCW 63.60.010) (citing Restatement § 6(1)).[12]

5    The WPRA applies to conduct which occurs in Washington state.  *See* RCW § 63.60.050

6    ("Any person who uses or authorizes the use of a[n] . . . individual's . . . name . . . or likeness, on

7    or in goods, merchandise, or products entered into commerce in this state, or for purposes of

8    advertising products, merchandise, goods, or services, . . . or if any person disseminates or

9    publishes such advertisements in this state . . . has infringed such right.").  Since it also "contain[s]

10    'a clear directive to apply the law of Washington'" to individuals domiciled outside the state, the

11    only issue left before the Court to resolve "is whether such legislative directive is 'subject to

12    constitutional restrictions.'"  *Experience,* 766 F. Supp. 2d at 1133. (quoting Restatement § 6(1)).

13    The only "constitutional restriction" Defendant raises is the dormant commerce clause, but that

14    argument has been specifically foreclosed by the Ninth Circuit.  *See Experience*, 762 F.3d at 836.

15    Even if the Court chooses to reach the dormant commerce clause question, Defendant's

16    argument is meritless.  The Ninth Circuit requires dormant commerce clause challenges to facially

17    neutral laws, such as the WRPA, to be supported by "substantial evidence" that the law actually

18    has "the effect of deleteriously intruding upon Interstate Commerce."  *Black Starr Farms, LLC v.*

19

20    _____

[12] Defendant argues that "the state with the 'most significant relationship' will generally 'be the state where the
21    plaintiff was domiciled' when the alleged injury occurred," (ECF No. 19 at 16-17), and cites in support to *The
Cousteau Society, Inc. v. Cousteau*, 498 F. Supp. 3d 287, 314 (D. Conn. 2020), *Love*, 611 F.3d at 610-11, and
22    *Willstrop v. Prince Marketing LLC*, 2019 WL 11851138, at *3 (D. Neb. July 1, 2019).  But the cited decisions
are inapposite because, as discussed above, the WRPA contains a clear directive to apply Washington law to
redress the nonconsensual use of a person's name in an advertisement disseminated or published in Washington
23    (as Plaintiff seeks to do here on behalf of putative class members), regardless of the person's place of domicile.
*See* Restatement § 6(1).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

1   *Oliver*, 600 F.3d 1225, 1232 (9th Cir. 2010)*; see also Nat'l Ass'n of Optometrists & Opticians v.*

2   *Brown*, 709 F. Supp. 2d 968, 975 (E.D. Cal. 2010) ("When a plaintiff has failed to demonstrate

3   the presence of a burden on interstate commerce, courts need not attempt to balance whether a

4   non-burden is excessively outweighed by the putative local benefits of the law.").  In this case,

5   Defendant has offered no evidence of any negative impacts on interstate commerce that would

6   result if the WRPA applies to out-of-state class members. *See Experience,* 762 F.3d at 837 (noting

7   that the "WRPA does not discriminate against out-of-state interests . . . .").  Courts considering

8   similar challenges routinely reject them. *See Kellman*, 599 F. Supp. at 899 (turning away a

9   dormant commerce clause challenge to right of publicity claims brought under California,

10  Indiana, and Ohio law and noting that the defendant "cannot point to a single case that held that

11  any similar law ran afoul of the dormant Commerce Clause."); *Benson v. Double Down*

12  *Interactive, LLC*, 527 F. Supp. 3d 1267, 1272 (W.D. Wash. 2021) (denying a motion to strike

13  nationwide class action allegations with respect to claims brought under Washington's Consumer

14  Protection Act pursuant to the "most significant relationship"—which applies in the absence of a

15  clear statutory directive like the WPRA's—and rejecting the defendant's dormant commerce

16  clause argument).

17       For these reasons, the motion to strike should be denied.

18                              **CONCLUSION**

19       Plaintiff respectfully requests this Court to deny the motion to dismiss and motion to strike

20  in their entirety.

21

22

23

24

Plaintiff's Opposition to Defendant's
Motion to Dismiss and Motion to Strike
Case No. 3:24-cv-05745-KKE

1  Dated:  December 16, 2024                Respectfully submitted,

2

3                                           By:   */s/ Nick Major*

4                                           **NICK MAJOR LAW**
                                            NICK MAJOR
5                                           450 Alaskan Way S. #200
                                            Seattle, WA 98104
6                                           Telephone: (206) 410-5688
                                            E-Mail: nick@nickmajorlaw.com
7
                                            **HEDIN LLP**
8                                           Frank S. Hedin (*pro hac vice*)
                                            1395 Brickell Ave, Suite 610
9                                           Miami, Florida 33131
                                            Telephone: (305) 357-2107
10                                          Facsimile: (305) 200-8801
                                            Email: fhedin@hedinllp.com
11
                                            **HEDIN LLP**
12                                          Tyler K. Somes (*pro hac vice*)
                                            1100 15th Street NW, Ste 04-108
13                                          Washington, DC 20005
                                            Telephone: (202) 900-3331
14                                          Email: tsomes@hedinllp.com

15                                          *Counsel for Plaintiffs and the Putative Classes*

16

17

18

19

20

21

22

23

PLAINTIFF'S OPPOSITION TO DEFENDANT'S                                    **HEDIN LLP**
MOTION TO DISMISS AND MOTION TO STRIKE                                   1395 BRICKELL AVE.,
CASE NO. 3:24-CV-05745-KKE                                               SUITE 1140
                                                                         MIAMI, FLORIDA 33131
                                                                         PHONE: (305) 357-2107

1

## **WORD COUNT**

2       I certify that this memorandum contains 8,379 words in compliance with the Local

3    Rules.

4

5       DATED this 16th day of December, 2024.

6                            /s/ Tyler K. Somes
                             Tyler K. Somes
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

**HEDIN LLP**
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2024, I caused a true and correct copy of the forgoing to be filed in this Court's CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Tyler Somes*
Tyler K. Somes

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO. 3:24-CV-05745-KKE

HEDIN LLP
1395 BRICKELL AVE.,
SUITE 1140
MIAMI, FLORIDA 33131
PHONE: (305) 357-2107