1

2                                                    THE HONORABLE KYMBERLY EVANSON

3

4

5

6

7
                          UNITED STATES DISTRICT COURT
8                        WESTERN DISTRICT OF WASHINGTON
                                  AT SEATTLE
9

10   MEMARY LAROCK, individually and on          Case No. 3:24-cv-05745-KKE
     behalf of all others similarly situated,
11                                               **REPLY IN SUPPORT OF
              Plaintiff,                         DEFENDANT'S MOTION TO DISMISS
12                                               AND MOTION TO STRIKE CLASS
     v.                                          ALLEGATIONS**
13
     ZOOMINFO TECHNOLOGIES LLC,                  NOTE ON MOTION CALENDAR:
14
              Defendant.                         January 6, 2025
15
                                                 ORAL ARGUMENT REQUESTED
16

17

18

19

20

21

22

23

24

25

26

27

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND          QUINN EMANUEL URQUHART & SULLIVAN, LLP
MOTION TO STRIKE CLASS ALLEGATIONS                                      1109 First Avenue, Suite 210
(3:24-cv-05745-KKE)                                                     Seattle, Washington 98101
                                                                            (206) 905-7000

1

<u>**TABLE OF CONTENTS**</u>

**Page**

2

3  PRELIMINARY STATEMENT .................................................................................................1

4  ARGUMENT .........................................................................................................................2

5  I.    THE CHALLENGED CONDUCT FALLS WITHIN EXPRESS WPRA
       EXEMPTIONS ...............................................................................................................2

6

7        A.    Plaintiff Ignores The Plain Language Of The "Descriptive Use"
             Exemption ...........................................................................................................2

8        B.    Plaintiff Cannot Dispute That Her Name Is "Incidental" In The Context Of
             The Millions Of Other Records Accessible In Zoominfo's Database ...................6

9

10 II.  THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS .................10

11       A.    Plaintiff Disregards Ninth Circuit Precedent That Requires Enforcing The
             WPRA's Class Action Prohibition..........................................................................10

12       B.    Plaintiff Misapplies Washington's Choice Of Law Analysis To
             Unconstitutionally Expand The Reach Of The WPRA ........................................13

13

14 CONCLUSION.......................................................................................................................17

15

16

17

18

19

20

21

22

23

24

25

26

27

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)                                    i

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Abbas v. Foreign Pol'y Grp., LLC,*
5
   783 F.3d 1328 (D.C. Cir. 2015) ............................................................................11

6

*Aligo v. Time-Life Books, Inc.,*
   1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ..........................................................7

7

8

*Am. C.L. Union v. Johnson,*
   194 F.3d 1149 (10th Cir. 1999) ............................................................................16

9

*Balsley v. LFP, Inc.,*
10
   2010 WL 11561844 (N.D. Ohio Jan. 26, 2010) .......................................................8

11

*Benson v. Double Down Interactive, LLC,*
   527 F. Supp. 3d 1267 (W.D. Wash. 2021) ............................................................16

12

*Black Star Farms LLC v. Oliver,*
13
   600 F.3d 1225 (9th Cir. 2010) ..............................................................................16

14

*Cheneau v. Garland,*
15
   997 F.3d 916 (9th Cir. 2021) ..................................................................................3

16

*CoreCivic, Inc. v. Candide Group, LLC,*
   46 F.4th 1136 (9th Cir. 2022) ...............................................................................11

17

*Cross v. Facebook*, Inc.,
18
   14 Cal. App. 5th 190, 210 (2017) ...........................................................................5

19

*Davis v. Elec. Arts, Inc.,*
   2017 WL 8948083 (N.D. Cal. Dec. 11, 2017)..........................................................4

20

21

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd,*
   762 F.3d 829 (9th Cir. 2014) (Opp. ) ...............................................................15, 16

22

*Ford v. Hyundai Motor America,*
23
   2021 WL 7448507 (C.D. Cal. Oct. 5, 2021)..........................................................11

24

*Fry v. Ancestry.com Operations Inc.,*
   2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) ...................................................9, 14

25

*Gonzalez v. Am. Honda Motor Co.,*
26
   720 F. Supp. 3d 833 (C.D. Cal. 2024) .............................................................11, 12

27

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)

ii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Harvey v. Sys. Effect, LLC*,
  154 N.E.3d 293 (Ohio 2020)............................................................................................8

*Hill v. LLR, Inc.*,
  2019 WL 3024896 (D. Mont. Mar. 8, 2019) ...............................................................13

*In re HIV Antitrust Litigation*,
  2022 WL 22609107 (N.D. Cal. Sept. 27, 2022) .........................................................11

*Hudson v. Datanyze, LLC*,
  702 F. Supp. 3d 628 (N.D. Oh. 2023), *appeal docketed*, No. 23-3998 (6th Cir.
  Dec. 14, 2023).........................................................................................................8, 9

*Jackson v. Suzuki Motor of Am., Inc.*,
  2024 WL 3914666 (C.D. Cal. July 9, 2024).................................................................15

*Jones v. Micron Technology*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019).........................................................................12

*Kellman v. Spokeo*,
  599 F. Supp. 3d 877 (N.D. Cal. 2022).....................................................................9, 16

*Knapke v. PeopleConnect Inc.*,
  553 F. Supp. 3d 865 (W.D. Wash. 2021)........................................................................9

*Kolebuck-Utz v. Whitepages Inc.*,
  2021 WL 1575219 (W.D. Wash. Apr. 22, 2021).............................................................9

*Ladany v. William Morrow & Co., Inc.*,
  465 F. Supp. 870 (S.D.N.Y. 1978) ................................................................................7

*Landham v. Lewis Galoob Toys, Inc.*,
  227 F.3d 619 (6th Cir. 2000) .........................................................................................6

*Lessin v. Ford Motor Co.*,
  2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) .............................................................13

*Lindstrom v. Polaris Inc.*,
  2024 WL 4275619 (D. Mont. Sept. 24, 2024) .............................................................13

*Lohan v. Perez*,
  924 F. Supp. 2d 447 (E.D.N.Y. 2013) ...........................................................................7

*Makaeff v. Trump Univ., LLC*,
  736 F.3d 1180 (9th Cir. 2013) .....................................................................................10

*Makaeff v. Trump University, LLC*,
  715 F.3d 254 (9th Cir. 2013) .......................................................................................11

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-cv-05745-KKE)

iii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ..................................................................11

*Martin v. Pierce County*,
    34 F.4th 1125 (9th Cir. 2022) ...........................................................10, 12

*McFarland v. Miller*,
    14 F.3d 912 (3d Cir. 1994)........................................................................8

*Miller v. Ford Motor Company*,
    620 F. Supp. 3d 1045 (E.D. Cal. 2022)....................................................13

*Murphy v. Toyota Motor Sales USA Inc.*,
    2020 WL 10354129 (C.D. Cal. Nov. 24, 2020)........................................11

*In re Myford Touch Consumer Litigation*,
    2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) .........................................11

*National Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) .................................................................16

*Navigators Ins. Co. v. National Union Fire Ins. Co.*,
    2013 WL 4008826 (W.D. Wash. Aug. 5, 2013) .........................................6

*In re Packaged Seafood Prod. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017).....................................................12

*Pope Res. LP v. Certain Underwriters at Lloyd's, London*,
    19 Wash. App. 2d 113, 124 (2021) ..........................................................14

*Ramos v. ZoomInfo Technologies, LLC*,
    Case No. 1:21-cv-02032 (N.D. Ill.), ECF No. 129-1 .................................6

*Reed v. Dynamic Pet Prod.*,
    2016 WL 3996715 (S.D. Cal. July 21, 2016) ...........................................13

*Roe v. Amazon.com*,
    714 F. App'x 565 (6th Cir. 2017) ..............................................................8

*Schifano v. Greene County Greyhound Park, Inc.*,
    624 So. 2d 178 (Ala. 1993) .......................................................................9

*Seizer v. Sessions*,
    132 Wash. 2d 642 (1997) .........................................................................14

*Sessa v. Ancestry.com Operations Inc.*,
    561 F. Supp. 3d 1008 (D. Nev. 2021) ........................................................9

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS                    iv
(3:24-cv-05745-KKE)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ..............................................................................................10, 11, 12

*Siegel v. Zoominfo Technologies, LLC*,
  2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) ...........................................................................4

*Solid 21, Inc. v. Breitling U.S.A., Inc.*,
  96 F.4th 265 (2d Cir. 2024) ......................................................................................................5

*Spindler v. Seamless Contacts, Inc.*,
  2022 WL 16985678 (N.D. Cal. Oct. 24, 2022).........................................................................9

*Staley v. Gilead Scis., Inc.*,
  446 F. Supp. 3d 578 (N.D. Cal. 2020) ......................................................................10, 11, 12

*The Cousteau Society, Inc. v. Cousteau*,
  498 F. Supp. 3d 287 (D. Conn. 2020) ....................................................................................15

*Travelers Cas. Ins. Co. of am. v. Hirsh*,
  831 F.3d 1179 (9th Cir. 2016) ................................................................................................11

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001) ....................................................................................................................3

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health &*
  *Welfare Fund v. Teikoku Pharma USA, Inc.*,
  74 F. Supp. 3d 1052 (N.D. Cal. 2014) ...................................................................................11

*Vinci v. Am. Can Co.*,
  591 N.E.2d 793 (Ohio 1990)....................................................................................................8

*Wittman v. CB1, Inc.*,
  2016 WL 3093427 (D. Mont. June 1, 2016)....................................................................12, 13

*In re Xyrem (Sodium Oxybayte) Antitrust Litigation*,
  555 F. Supp. 3d 829 (N.D. Cal. 2021) ...................................................................................11

## **Rules/Statutes**

Federal Rule of Civil Procedure 23 ...........................................................................................12

15 U.S.C. § 1115(b)(4) ................................................................................................................6

Lanham Act...................................................................................................................................6

Illinois Right of Publicity Act.....................................................................................................4

RCW § 63.60.020 ........................................................................................................................3

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS            v
(3:24-CV-05745-KKE)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

RCW § 63.60.050 ........................................................................................................14

RCW § 63.60.070(3)'s .................................................................................................13

RCW § 63.60.070(5) ..............................................................................................3, 4, 6

South Carolina Unfair Trade Practices Act ...............................................................12

### **Other Authorities**

FINAL BILL REP., H.B. 1074, REG. SESS. (Wash. 1998) ...............................................12

HOUSE BILL REP., H.B. 1074, REG. SESS. (Wash. 1998) .............................................11

Restatement (Second) of Conflict of Laws § 6 (1971) ...............................................14

Restatement (Second) Conflict of Laws § 188 ...........................................................14

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS            vi
(3:24-CV-05745-KKE)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1

## PRELIMINARY STATEMENT

2      Consistent with the WPRA's aim to prohibit unauthorized use of personal information for

3 promotional endorsements, the statute exempts from liability "descriptive" and "incidental" uses

4 of one's name.  Plaintiff's opposition proposes to strike out these exemptions based on illogical

5 interpretations that would render mere "use" actionable without qualification.  The WPRA

6 further expressly precludes class actions, an enforceable prohibition plaintiff seeks to evade by

7 asking the Court to ignore Ninth Circuit precedent in favor of law review musings that

8 hypothesize a different approach.

9      Plaintiff concedes the WPRA expressly exempts uses that "accurately describe the goods

10 or services of a party."  And she does not dispute that the publicly-available previews of the

11 information available through a paid ZoomInfo subscription—the subject of her complaint—

12 accurately describe ZoomInfo's "goods or services."  She instead proffers an interpretation that

13 would render this exemption meaningless: that the exemption should not apply because the

14 alleged use identifies her by name.  But the exemption *specifically contemplates* identification

15 because that is a threshold predicate for the statute to apply at all; only because plaintiff's name

16 was used would the Court further consider whether an *exemption* permits that use.  Similarly,

17 plaintiff circularly argues that her name could not have been used "fairly" or in "good faith"

18 merely because she has alleged lack of consent.  But the exemption, by design, specifies uses of

19 identifying information that are permissible *without* consent.  The relevant question under the

20 exemption is *how* the name has been used (*i.e.*, whether the use is descriptive), not whether the

21 name has been used at all or whether the plaintiff consented.  Put differently, if there was no use

22 or if the plaintiff consented, there would be no predicate claim to which the exemption might

23 apply.  Because plaintiff cannot identify any non-descriptive uses—nor any facts to support her

24 argument that such descriptive use was not done "fairly" or in "good faith"—her WPRA claim

25 falls within this exemption and should be dismissed.

26      Plaintiff's attempt to avoid the "incidental use" exemption is also misguided.  She

27 concedes her information appears alongside information for *hundreds of millions* of others, and

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)

1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

that users of ZoomInfo's site must affirmatively seek out her information to find it. Yet Plaintiff ignores this context, focusing instead on only the preview of *her* information. Courts do not apply the incidental use exception in this myopic way and instead assess the nature of the use relative to the product *as a whole*. Plaintiff cannot dispute that her information is but one grain of sand on a beach in the context of ZoomInfo's site as a whole, and the incidental use exemption thus forecloses her claim.

Compounding the substantive deficiencies with plaintiff's WRPA claim, she acknowledges that the Washington legislature expressly prohibited pleading such claims as class actions. Her bid to avoid this express ban mischaracterizes Ninth Circuit precedent and ignores numerous resulting district court decisions that enforced nearly identical class action bans in federal court. The class allegations should also be stricken for the independent reason that plaintiff's purported multi-state class would require the Court to apply Washington law to conduct that occurred wholly outside Washington and purportedly injured non-Washington residents, which would be constitutionally impermissible.

## ARGUMENT

## I.    THE CHALLENGED CONDUCT FALLS WITHIN EXPRESS WPRA EXEMPTIONS

### A.    Plaintiff Ignores The Plain Language Of The "Descriptive Use" Exemption

Plaintiff does not allege ZoomInfo is attempting to trade on some value associated with her name—for example, through representations that plaintiff uses or endorses ZoomInfo's database. Rather, every alleged use plaintiff challenges constitutes nothing more than a description of the content available on ZoomInfo's site and descriptions of its functionality. The Washington legislature rightly exempted such benign (and necessary) uses from liability under the WPRA, and none of plaintiff's arguments can avoid applying those exemptions here.

*First,* plaintiff implausibly interprets the WPRA's "descriptive use" exemption in a manner that would completely nullify it. The exemption applies to a "use or authorization of use *of an individual's or personality's name* that is merely descriptive and used fairly and in good

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-cv-05745-KKE)

2

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1    faith only to identify or describe something other than the individual or personality, such as,

2    without limitation . . . to accurately describe the goods or services of a party."  RCW §

3    63.60.070(5) (emphasis added).  Plaintiff notes that ZoomInfo's website contains information

4    that can be used to identify her (*i.e.*, her name) and, on this basis, contends the exemption cannot

5    apply.  *See* Opp. at 4-5.  But identification of the plaintiff is *specifically contemplated* by the

6    exemption, which applies to "***use of an individual's or personality's name***."  *Id.* (emphasis

7    added); RCW § 63.60.020 ("Name means the actual or assumed name, or nickname . . . ***that is***

8    ***intended to identify*** that individual.") (emphasis added) (internal quotation marks omitted).

9          Were it the case, as plaintiff contends, that any use that identifies or describes an

10    individual falls outside the exemption, the exemption would have no application: it *only* applies

11    in such circumstances.  Plaintiff's approach thus runs afoul of the "cardinal principle of statutory

12    construction that a statute ought, upon the whole, to be so construed that, if it can be prevented,

13    no clause, sentence, or word shall be superfluous, void, or insignificant."  *Cheneau v. Garland*,

14    997 F.3d 916, 921 (9th Cir. 2021) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001))

15    (internal quotation marks omitted).  Contrary to plaintiff's interpretation, the exemption by its

16    terms covers any use of a plaintiff's name that "accurately describe[s] the goods or services of a

17    party," and is not solely a description of "the individual or personality" herself.  RCW §

18    63.60.070(5).  Where, as here, plaintiff's name appears only because it is contained in a

19    previewed example of the very items ZoomInfo offers, she cannot meaningfully dispute that the

20    challenged use "accurately describe[s] the goods or services" of ZoomInfo and thus falls within

21    the exemption.

22          ***Second,*** plaintiff's argument that her name appears in search fields that do not

23    "correspond to any visual element of the webpages," Opp. at 6, cannot be reconciled with the

24    premise of plaintiff's complaint—that *ZoomInfo* used her information to "advertise" its paid

25    products.  To the contrary, by plaintiff's own allegations these search fields are triggered only

26    where a particular *user* "inputs a search for an individual's name."  Compl. ¶ 51.  It cannot fairly

27    be suggested that *ZoomInfo* "exploits" plaintiff's name when it returns results in response to a

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)                                3

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

user-initiated search, any more than Google or Bing or Yahoo can be deemed to violate publicity

rights when those sites return search results with individual names and identifying information

millions of times a day.  To find otherwise would threaten basic internet functionality by

prohibiting search engines from allowing person-specific searches.  Absent such a user-initiated

search, there is no dispute that plaintiff's name would remain undisclosed among tens of millions

of other records in ZoomInfo's database.  *See Davis v. Elec. Arts, Inc.*, 2017 WL 8948083 (N.D.

Cal. Dec. 11, 2017) (rejecting right of publicity premised on use of plaintiffs' names in source

code because there is no "authority that would explain how a statutory violation of the right of

publicity would arise from a use of plaintiffs' names in a place where they are not visible to the

public").

In all events, even if these non-visible search fields could support a claim, they too are

plainly descriptive of ZoomInfo's site regardless of whether the user sees the underlying data

fields.  As plaintiff concedes, the underlying data fields contain information that reflects *what is

on ZoomInfo's site*, *i.e.,* they allow ZoomInfo to return that content in response to a user's query.

It is akin to an index that reflects the inventory of a bookstore—if that index shows the store

carries a book written by Michael Crichton, this use cannot fairly be characterized as anything

other than a "descri[ption of] the goods or services of" the bookstore.  RCW § 63.60.070(5).  So

too here.  The information in ZoomInfo's search fields merely reflect the information available

on ZoomInfo's site.

Plaintiff perplexingly cites *Siegel v. Zoominfo Technologies, LLC*, 2021 WL 4306148

(N.D. Ill. Sept. 22, 2021), which involved the Illinois Right of Publicity Act, a statute that does

*not* contain an exemption for descriptive uses, unlike the WPRA.  *Id.* at *2-4.  The *Siegel* court

thus did not analyze whether alleged use in "html source code fields" were descriptive (or could

even give rise to a claim), and the case has no application to the materially different WPRA

statute.

***Third,*** plaintiff advances the non-sequitur argument that ZoomInfo's free-trial page also

contains a description of ZoomInfo's "Chorus" function that does *not* contain her name.  Opp. at

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS          4
(3:24-CV-05745-KKE)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1    6-7.  But the absence of her information in the Chorus section merely confirms she cannot state a

2    claim based on this description—there is no arguable use of her information within it.

3        Further, even if this juxtaposition of the preview of her information with the separate

4    Chorus description could somehow implicate the WPRA, plaintiff offers no reason this use too

5    would not fall within the "descriptive use" exemption.  *Cf. Cross v. Facebook, Inc.*, 14 Cal. App.

6    5th 190, 210 (2017) (rejecting right of publicity claim where "[t]he gravamen of [the plaintiff's]

7    complaint is that Facebook displayed unrelated ads from Facebook advertisers adjacent to the

8    content that allegedly used Knight's name and likeness").  Returning to the brick-and-mortar

9    analogy, it would be akin to arguing a bookstore that properly offers an index showing it sells a

10   Michael Crichton novel somehow loses protection of the exemption if it also indicates the store

11   sells coloring books or contains a coffee bar.  This interpretation is nonsensical.  Instead, what

12   matters is the information in this "free trial" page accurately describes what ZoomInfo offers.

13   Plaintiff cannot dispute this and the "descriptive use" exemption thus applies.

14       **Finally,** plaintiff baselessly merges the questions of "good faith" and "fairness" with the

15   question of consent.  In plaintiff's telling, ZoomInfo's use of her name cannot have occurred

16   "fairly" or in "good faith" because she did not consent to such use.  Opp. at 8.  But where the

17   main liability provision of the WPRA generally prohibits use of names without consent, the

18   exemptions carve out instances where those names *can* be used without such consent.  Plaintiff's

19   interpretation would vitiate the descriptive use exemption.  It is not mere use without consent

20   that dictates whether the use occurred "fairly" or in "good faith," but instead whether the use is

21   descriptive, as opposed to an attempt to trade on the value of the plaintiff's name (*e.g.*, through a

22   suggestion that plaintiff uses or endorses ZoomInfo).  *See Solid 21, Inc. v. Breitling U.S.A., Inc.*,

23   96 F.4th 265, 279 (2d Cir. 2024) (assessing the nearly-identical "descriptive use" exemption

24   under the Lanham Act and holding that the "good faith analysis often travels together with

25   descriptiveness. . . . We think it rare that a defendant who uses a descriptive term only to

26   describe its products, and not as a trademark, will nevertheless intend[] to sow confusion

27

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)

5

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

between the two companies' products").[1]  Plaintiff has failed to allege any facts that suggest ZoomInfo sought to "sow confusion" about plaintiff's affiliation with ZoomInfo's database or that could otherwise support her conclusory assertion that the alleged use did not occur "fairly" or in "good faith."[2]

**B.      Plaintiff Cannot Dispute That Her Name Is "Incidental" In The Context Of The Millions Of Other Records Accessible In ZoomInfo's Database**

Plaintiff ignores the actual context in which her name appears—along with the information for 209 million other individuals and, even then, only where a user affirmatively seeks it out (Compl. at ¶¶ 21, 37)—to argue her name (1) is "central" to ZoomInfo's site; and (2) has some value or significance to ZoomInfo's business.  Opp. at 9-10.  Neither argument has merit.

*First,* plaintiff observes that her name appears multiple times within one free-preview "profile" entry.  Opp. at 9.  However, proper assessment of the incidental use exemption "is determined by the role that the use plays with respect to the ***entire publication***," not one small aspect of it, as plaintiff argues here.  *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *3

---

[1]   Plaintiff asks the Court not to consider cases interpreting the analogous "descriptive use" provision found in the Lanham Act because case law assessing the right of publicity is not "exceedingly rare."  Opp. at 4 n. 1.  Tellingly, plaintiff fails to cite a single case analyzing the descriptive use exemption under the WPRA.  And courts have recognized "the general constitutional policy of maintaining uniformity in intellectual property laws" warrants consideration of "the entire available body of case law when deciding right of publicity cases." *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 622–23 (6th Cir. 2000).  The Lanham Act's descriptive use defense is nearly identical to the exemption contained in the WPRA.  *Compare* 15 U.S.C. § 1115(b)(4) (providing descriptive where the use is "descriptive of and used fairly and in good faith only to describe the goods or services of such party"), *with* WASH. REV. CODE § 63.60.070(5) (exempting use "that is merely descriptive and used fairly and in good faith only to . . . accurately describe the goods or services of a party.").  Other courts' interpretations of the Lanham Act's "good faith" provision are thus instructive, particularly given the absence of statutory definitions for these terms in the WPRA.

[2]   Plaintiff also observes that ZoomInfo previously settled a right of publicity case and acknowledged the cost of the settlement in its company disclosures, but this is entirely irrelevant.  By its terms, the settlement was not an "admission, concession, or evidence of the validity of any Released Claims," and cannot be used as evidence of such.  *Ramos v. ZoomInfo Technologies, LLC*, Case No. 1:21-cv-02032 (N.D. Ill.), ECF No. 129-1 at ¶ 10.5.  *See also Navigators Ins. Co. v. National Union Fire Ins. Co.*, 2013 WL 4008826, at *6 (W.D. Wash. Aug. 5, 2013) (settlement agreements cannot be used to establish liability).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)

6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

(N.D. Cal. Dec. 19, 1994) (emphasis added).  As plaintiff concedes, ZoomInfo's site comprises information for "millions of people."  Opp. at 1.  Plaintiff's argument is akin to contending an entry for Leavenworth, Washington in an encyclopedia is "central" to its content because that entry references "Leavenworth" several times—this, of course, ignores the existence of hundreds of thousands of other topics covered elsewhere in the encyclopedia.

For example, in *Lohan v. Perez*, 924 F. Supp. 2d 447 (E.D.N.Y. 2013), the court found that use of the plaintiff's name one time in a 104-line song was incidental in the context of the song *as a whole*.  *Id.* at 455.  The court did not compare the use of the plaintiff's name to the line in which it appeared—under such an approach, a use would never be "incidental" because it is not being compared to the overall product.  The question is not whether a use on a single page of a book is "incidental" to the page of that book (plaintiff's free-preview "profile" page), but whether the use is "incidental" to the book as a whole (the database).  *See Ladany v. William Morrow & Co., Inc.*, 465 F. Supp. 870, 881-82 (S.D.N.Y. 1978) (use of the plaintiff's name in a book containing the names of 101 other people was incidental).

Plaintiff summarily dismisses cases such as *Lohan* as "factually far-removed" because they involve a "passing reference."  Opp. at 11.   But plaintiff does not even attempt to explain why the alleged use of her name is anything other than a "passing reference" in the context of ZoomInfo's database *as a whole*—instead, she incorrectly focuses solely on her own preview page, which is not the proper context for the inquiry.

***Second,*** plaintiff argues her name has value to ZoomInfo because ZoomInfo has stated it "rel[ies] heavily on internet search engines . . . including through . . . the indexing of our public-facing directory pages . . . to generate a significant portion of the traffic to our website."  Opp. at 9.  But the value of ZoomInfo's *collection* of directory pages says nothing of whether ZoomInfo has appropriated to its benefit any value associated with *plaintiff's* information.

The court in *Hudson v. Datanyze, LLC*, 702 F. Supp. 3d 628, 631-34 (N.D. Ohio 2023), *appeal docketed*, No. 23-3998 (6th Cir. Dec. 14, 2023) addressed an analogous situation.  There, the defendant's database contained "120 million profiles," and there was no implication that the

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)                                          7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

plaintiffs "use[d], support[ed], or promote[d] the product." *Id.* at 634. The court concluded this use was "incidental" because it was clear the defendant was not attempting to trade on any value that might be associated with the plaintiff's names. *Id.* So too here—plaintiff alleges only that ZoomInfo includes her information in its database (with millions of others) and that users can seek it out if they choose to do so. She does not allege any use that would suggest she "use[s], support[s], or promote[s]" ZoomInfo's site, *see Hudson*, 702 F. Supp. 3d at 634, and has thus failed to allege ZoomInfo appropriated any "reputation, prestige, social or commercial standing, public interest, or other values" associated with her name. *Id.* at 632 (quotation, citation omitted). Instead, the alleged use of plaintiff's name consists of the "mere mention of it, or . . . reference to it in connection with legitimate mention of [plaintiff's] public activities," and is thus incidental. *Id.* (quotation, citation omitted).

Plaintiff's only response to *Hudson* and similar cases that have reached the same result is to observe that those cases involved statutes that required the plaintiffs to prove their names had independent "commercial value." Opp. at 10. But that is a distinction without difference— neither *Hudson* (nor the other cases cited in ZoomInfo's motion[3]) turned on the plaintiffs' inability to prove their names had commercial value. Instead, the courts concluded the alleged uses were "incidental" because the plaintiffs could not show the *defendant's use* was an attempt

---

[3]    *Balsley v. LFP, Inc.*, 2010 WL 11561844, at *9 (N.D. Ohio Jan. 26, 2010) (finding incidental use because inclusion of photograph in magazine was not used to show plaintiff's endorsement of the magazine); *Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794 (Ohio 1990) ("[i]t is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded," and because there was "no implication that the athletes used, supported, or promoted the product," the use was incidental) (cleaned up); *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306 (Ohio 2020) (rejecting right of publicity claim where plaintiff "failed to present any evidence that her name had significant value or, indeed, any commercial value"); *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) (plaintiff must "demonstrate that there is value in associating an item of commerce with [their] identity"); *McFarland v. Miller*, 14 F.3d 912, 919–20 (3d Cir. 1994) ("At its heart, the value of the right of publicity is associational. People link the person with the items the person endorses and, if that person is famous, that link has value."); *Schifano v. Greene County Greyhound Park, Inc.*, 624 So. 2d 178, 181 (Ala. 1993) (affirming summary judgment in favor of the defendant and distinguishing past case involving use of former college football star).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)

8

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1    to trade on any such value (or "reputation, prestige, social or commercial standing, [or] public

2    interest").

3            None of the cases plaintiff cites support a contrary result here.  Most of them do not even

4    discuss an incidental use exemption.  *See Fry v. Ancestry.com Operations Inc.*, 2023 WL

5    2631387, at *8-9 (N.D. Ind. Mar. 24, 2023) (discussing the Indiana Right of Publicity law's

6    "exception for material that has political or newsworthy value"); *Sessa v. Ancestry.com

7    Operations Inc.*, 561 F. Supp. 3d 1008, 1029-30 (D. Nev. 2021) (discussing the Nevada Right of

8    Publicity Act's exception for uses "contained in material which is commercially sponsored but

9    [where] the use is not directly connected with the commercial sponsorship") (internal quotation

10   marks omitted); *Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219, at *2 (W.D. Wash. Apr.

11   22, 2021) (discussing commercial value requirement under Ohio right of publicity law); *Knapke

12   v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 877 (W.D. Wash. 2021) (same).  And the two that

13   did purport to address "incidental use" (*Kellman v. Spokeo*, 599 F. Supp. 3d 877 (N.D. Cal.

14   2022) and *Spindler v. Seamless Contacts, Inc.*, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022))

15   did so in the context of California's right of publicity statute, which (unlike the WPRA) lacks an

16   express "incidental use" exemption.  *See Hudson*, 702 F. Supp. 3d at 633-34 (distinguishing

17   *Kellman* on this basis).

18           Because plaintiff's information represents only a tiny fraction of ZoomInfo's database

19   and site, and the alleged use is no more than the "mere mention" of her name and public

20   information, the use is "incidental."

21

22   **II.      THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

23           **A.      Plaintiff Disregards Ninth Circuit Precedent That Requires Enforcing The
                       WPRA's Class Action Prohibition**

24

25           Regardless whether Justice Stevens' concurrence in *Shady Grove Orthopedic Associates,

26   P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) constitutes the controlling opinion of the Supreme

27   Court (as plaintiff disputes at great length), it ***does*** reflect the controlling interpretation by the

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-cv-05745-KKE)                                          9

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1    *Ninth Circuit*, which binds this Court.  The Ninth Circuit "has relied on Justice Stevens's

2    concurrence for the proposition that 'there are some state procedural rules that federal courts

3    must apply in diversity cases because they function as part of the State's definition of the

4    substantive rights and remedies.'"  *Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 625–26

5    (N.D. Cal. 2020) (citing and quoting *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1187 (9th

6    Cir. 2013)).  In fact, in *Martin v. Pierce County*, 34 F.4th 1125 (9th Cir. 2022)—a case even

7    plaintiff relies on (Opp. at 15)—the court explicitly cited this portion of Justice Stevens'

8    concurrence when articulating the applicable rule.  *See id.* at 1128-29 (quoting *Shady Grove*, 559

9    U.S. at 418, 423 (Stevens, J., concurring in part and concurring in the judgment)).

10           Plaintiff cannot cite a single Ninth Circuit case that declined to adopt the reasoning of

11   Justice Stevens' concurrence in *Shady Grove*.  Thus, plaintiff relies instead on a law review

12   article that disagrees with courts' interpretations of *Shady Grove*, pre-*Shady Grove* cases, and a

13   single post-*Shady Grove* opinion from a different circuit that *directly departed from the Ninth*

14   *Circuit*.[4]  Indeed, the only Ninth Circuit authority plaintiff cites in support of her argument is

15   *Martin* which, as noted above, relied on Justice Stevens' concurrence when articulating the rule.[5]

16           Nor does plaintiff meaningfully engage with any of the numerous district court decisions

17   within the Ninth Circuit that have applied similar class action bans in federal court.  *See, e.g.*,

18   *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v.*

19   *Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1084 (N.D. Cal. 2014); *Staley*, 446 F. Supp. at

20   625-26; *In re HIV Antitrust Litigation*, 2022 WL 22609107, at *18 (N.D. Cal. Sept. 27, 2022); *In*

---

22   [4]   Opp. at 15 (citing *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015),
23   which departed from the Ninth Circuit on the question whether state anti-SLAPP laws apply in
      federal court).  *Compare Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) (reaching the
24   opposite conclusion); *Makaeff v. Trump University, LLC*, 715 F.3d 254, 260 (9th Cir. 2013)
      (same); *CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136, 1142-43 (9th Cir. 2022) (same,
25   distinguishing *Abbas*).

26   [5]   Plaintiff also cites *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1183 (9th Cir.
27   2016), but fails to acknowledge that her citation comes from a concurrence, not the controlling
      opinion of the court.

1   *re Xyrem (Sodium Oxybate) Antitrust Litigation*, 555 F. Supp. 3d 829, 884-85 (N.D. Cal. 2021);

2   *Murphy v. Toyota Motor Sales USA Inc.*, 2020 WL 10354129, at *6-7 (C.D. Cal. Nov. 24, 2020);

3   *Gonzalez v. Am. Honda Motor Co.*, 720 F. Supp. 3d 833, 847 (C.D. Cal. 2024); *Ford v. Hyundai*

4   *Motor America*, 2021 WL 7448507, at *27-28 (C.D. Cal. Oct. 5, 2021); *In re Myford Touch*

5   *Consumer Litigation*, 2016 WL 7734558, at *27 (N.D. Cal. Sept. 14, 2016).

6        Plaintiff's criticism of these cases' reliance on a "three-factor test" that "appears nowhere

7   in Supreme Court jurisprudence" (Opp. at 13 n.7) disregards the fact that district courts

8   developed this test to assess the relevant question under Justice Stevens' concurrence; *i.e.*,

9   whether a state procedural rule "function[s] as part of the State's definition of the substantive

10   rights and remedies."  *See Shady Grove*, 559 U.S. at 416-17 (Stevens, J., concurring).  That this

11   test was derived from Supreme Court jurisprudence—rather than explicitly delineated in any

12   Supreme Court opinion—is entirely irrelevant.  The result is the same under either analysis.

13        Plaintiff does not meaningfully respond to ZoomInfo's application of Ninth Circuit

14   precedent to show that the WPRA's class action ban is "bound up with the state-created right or

15   remedy" and therefore substantive.  *Shady Grove*, 559 U.S. at 419-20.  Plaintiff offers no

16   alternative reading of the legislative history of the WPRA, which included the class action ban in

17   a section labeled "Remedies."  Final Bill Rep., H.B. 1074, Reg. Sess. (Wash. 1998); House

18   Bill Rep., H.B. 1074, Reg. Sess. (Wash. 1998).  And plaintiff simply ignores that the prohibition

19   does not appear in a separate "procedural" section—or in its own section—of the statute.

20        Instead, plaintiff's sole response is to observe that the class action ban appears in the

21   *exemptions* to the WPRA.  Opp. at 19-20.  But that only proves the point: exemptions, of course,

22   work to define the scope of a substantive right and remedy (if something is exempted, it falls

23   outside the scope of the statute).  *See, e.g.*, *Gonzalez*, 720 F. Supp. 3d at 847 (plaintiffs "should

24   not be permitted to transform the nature and scope of the statutory right conferred upon them

25   merely by pleading in federal court pursuant to Rule 23") (quotation, citation omitted); *Jones v.*

26   *Micron Technology*, 400 F. Supp. 3d 897, 926-27 (N.D. Cal. 2019) (applying class action

27

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)

11

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

prohibition where, as here, the prohibition "was incorporated in the same statutory provision as the underlying right (and not set out as a separate procedural rule)").

None of the cases plaintiff cites warrant a different result. In certain instances, the courts correctly recognized Justice Stevens' concurrence controls under applicable Ninth Circuit precedent, but simply found that different state law restrictions were procedural, rather than substantive. *See, e.g.*, *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1069-70, 1085-86 (S.D. Cal. 2017) (applying Justice Stevens' concurrence to enforce several state bars in federal court, but declining to apply a class action ban in the South Carolina Unfair Trade Practices Act only after concluding it was procedural). Others pre-date courts' correct recognition that the Ninth Circuit has relied on Justice Stevens' concurrence for this analysis (*e.g.*, *Staley*, 446 F. Supp. 3d at 625-26 (N.D. Cal. 2020)) and the Ninth Circuit's reliance on Justice Stevens' concurrence in *Martin*, 34 F.4th at 1128-29 (9th Cir. 2022). *See, e.g.*, *Wittman v. CB1, Inc.*, 2016 WL 3093427, at *5 (D. Mont. June 1, 2016) (recognizing, "[m]any courts have interpreted the concurring opinion in *Shady Grove* to constitute the narrowest grounds, and thus the controlling approach," but opting to follow an earlier line of district court cases that applied "pre-*Shady Grove* approaches"); *Hill v. LLR, Inc.*, 2019 WL 3024896, at *5 (D. Mont. Mar. 8, 2019) (following *Wittman* to reach the same result); *Reed v. Dynamic Pet Prod.*, 2016 WL 3996715, at *6 (S.D. Cal. July 21, 2016) (relying on earlier district court orders applying the pre-*Shady Grove* analysis); *Lessin v. Ford Motor Co.*, 2021 WL 3810584, at *15 (S.D. Cal. Aug. 25, 2021) (same). The only more recent case plaintiff cites[6] is *Lindstrom v. Polaris Inc.*, 2024 WL 4275619, at *6-7 (D. Mont. Sept. 24, 2024). But even *Lindstrom* acknowledged that "[m]any courts, including this Court, have found Justice Stevens' opinion to be controlling." *Id.* Although *Lindstrom* ultimately did not follow that approach, the court did so without proper analysis of Ninth Circuit precedent—it instead examined only whether Justice Stevens'

---

[6] Plaintiff also cites *Miller v. Ford Motor Company*, 620 F. Supp. 3d 1045, 1076 (E.D. Cal. 2022), where the court oddly followed a decision from the Eleventh Circuit without discussion of Justice Stevens' concurrence or whether the rule at issue was substantive or procedural.

concurrence constitutes the controlling opinion of the Supreme Court, as plaintiff urges here. *See id.* As shown above, however, this is immaterial in light of the Ninth Circuit's approach to this issue.

Here, the court should follow the unbroken line of Ninth Circuit precedent to find that RCW § 63.60.070(3)'s class action ban applies in federal court, and thus requires that plaintiff's class allegations be stricken.

### B.    Plaintiff Misapplies Washington's Choice Of Law Analysis To Unconstitutionally Expand The Reach Of The WPRA

Plaintiff's bid to override each state's distinct policy choices for regulating publicity rights ignores the necessary limitations the Washington legislature imposed on the reach of the WPRA. And rather than grapple with the Constitutional hurdles this unsupported approach would create under the Dormant Commerce Clause, she instead invokes an irrelevant test to try to dodge these issues.

*First,* plaintiff wrongly argues the WPRA contains a "statutory directive" that mandates its application to individuals domiciled outside of Washington. According to plaintiff, this obviates the need for a choice-of-law analysis based on the "most significant relationship" test under Restatement (Second) Conflict of Laws § 188. Opp. at 21-22. Not so.

As plaintiff recognizes, although the WPRA purports to apply to "individuals domiciled outside of the state," it does so only where the allegedly violative conduct "occur[ed] within Washington state." Opp. at 21. *See also* RCW § 63.60.050 (applying only to conduct "in this state"). That ZoomInfo is based in Washington is immaterial. Rather, the WPRA applies based on where the "name, voice, signature, photograph, or likeness" are distributed, not based on the location of the defendant. *See* RCW § 63.60.050. This makes sense: "there is no liability for mere possession of a person's [name or] photo." *Fry*, 2023 WL 2631387 at *6 (applying Indiana law). What matters instead is how the information is used, which will occur in the place of distribution. In other words, that ZoomInfo might possess at its headquarters the contact information for millions of business professionals is not (even under plaintiff's theory) a

1  purported violation—it is instead the alleged *use* of the information that purportedly gives rise to

2  a claim, and this use occurs wherever the end user accesses it (whether in Washington or

3  elsewhere).  Plaintiff, however, has failed to limit her multi-state class to include only those

4  individuals for whom the allegedly violative conduct occurred in Washington.  *See* Compl. at ¶¶

5  114-15.  Accordingly, the purported "statutory directive" to apply Washington law is

6  inapplicable here, and before Washington law can be applied to the individuals in plaintiff's

7  multi-state class, the Court must conduct a conflict-of-law analysis.  *Pope Res. LP v. Certain*

8  *Underwriters at Lloyd's, London*, 19 Wash. App. 2d 113, 124 (2021); *Seizer v. Sessions*, 132

9  Wash. 2d 642, 649 (1997); Restatement (Second) of Conflict of Laws § 6 (1971).

10      Plaintiff concedes conflicts exist among the states' right of publicity laws (*see* Mot. at 8-

11  9)—indeed, she makes continued reference to the differences between the WPRA and right of

12  publicity statutes in other states.  *See, e.g.*, Opp. at 10 ("Unlike the laws considered in those

13  decisions, the WPRA does not require misappropriated names to have independent commercial

14  value.").  Plaintiff also does not dispute that under the "most significant relationship" test (which

15  applies where, as here, conflicts exist among states' laws), the state with the "most significant

16  relationship" will "be the state where the plaintiff was domiciled" when the alleged injury

17  occurred—here, each of the 46 states in which the members of plaintiff's putative class resides.

18  *The Cousteau Society, Inc. v. Cousteau*, 498 F. Supp. 3d 287, 314 (D. Conn. 2020).  In light of

19  the individualized issues that would necessarily result from application of each state's differing

20  right of publicity laws, plaintiff's multi-state class is unsuitable for class treatment and the Court

21  should strike her class allegations.  *See, e.g., Jackson v. Suzuki Motor of Am., Inc.*, 2024 WL

22  3914666, at *8 (C.D. Cal. July 9, 2024) (striking nationwide class allegations at the pleading

23  stage due to choice-of-law issues).

24      **Second,** as shown in ZoomInfo's motion, to the extent the WPRA does purport to apply

25  to conduct occurring wholly outside of Washington—as plaintiff tries here through her attempt

26  to apply the WPRA to out-of-state conduct impacting out-of-state individuals—this application

27  would violate the Dormant Commerce Clause.  Mot. at 11-12.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)                                     14

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1    Plaintiff contends the Ninth Circuit "specifically foreclosed" this argument in *Experience*

2  *Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829 (9th Cir. 2014) (Opp. at 23), but that

3  suggestion mischaracterizes the case.  The court in *Experience Hendrix* limited its holding to the

4  "narrow set of non-speculative circumstances at issue," which "involve[d] only Experience

5  Hendrix's interference with the sale *in Washington*" and whether "Experience Hendrix will

6  attempt to stop such targeted sales *in Washington* in the future."  *Id.* at 835-36 (emphasis

7  added).  Indeed, the Ninth Circuit expressly recognized that "Washington's approach to post-

8  mortem personality rights raises difficult questions regarding whether another state must

9  recognize the broad personality rights that Washington provides," but concluded it "need not

10  resolve that issue" on the narrow facts presented.

11    Unlike the "narrow" facts in *Experience Hendrix*—where the transactions at issue

12  occurred wholly within Washington—plaintiff's proposed class here would apply the WPRA to

13  events occurring *wholly outside* of Washington.  *Id.* at 836.  Accordingly, the "difficult

14  questions" the Ninth Circuit declined to resolve in *Experience Hendrix* are front and center here.

15    Plaintiff alternatively argues ZoomInfo must provide "substantial evidence" of the

16  WPRA's discriminatory impact to raise a challenge based on the Dormant Commerce Clause.

17  Opp. at 23-24.  But that is true only where a defendant has asserted a statute *discriminates*

18  against out-of-state interests through "differential treatment of in-state and out-of-state economic

19  interests that benefits the former and burdens the latter."  *See Black Star Farms LLC v. Oliver*,

20  600 F.3d 1225, 1230 (9th Cir. 2010).  ZoomInfo has not raised such a challenge here.

21    Rather, plaintiff's attempt to extend the WPRA to individuals domiciled outside of

22  Washington is unconstitutional under the Dormant Commerce Clause because of the "statute's

23  inconsistent regulation of activities." *See National Ass'n of Optometrists & Opticians v. Harris*,

24  682 F.3d 1144, 1148 (9th Cir. 2012) ("These other significant burdens on interstate commerce

25  generally result from inconsistent regulation of activities that are inherently national or require a

26  uniform system of regulation."); *Am. C.L. Union v. Johnson*, 194 F.3d 1149, 1162 (10th Cir.

27  1999) ("certain types of commerce have been recognized as requiring national regulation," and

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)

15

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1  "[t]he Internet is surely such a medium") (quotation, citation, alterations omitted).  No evidence

2  of "discriminatory impact" is necessary to address such a challenge, and plaintiff has failed to

3  dispute that applying the WPRA across her multi-state class would necessarily result in such

4  "inconsistent regulation of activities" in violation of the Dormant Commerce Clause.[7]

### CONCLUSION

6          For the reasons shown above, the Court should grant ZoomInfo's motion to dismiss or, in

7  the alternative, strike plaintiff's class allegations.

9  DATED: January 6, 2025

10                                   QUINN EMANUEL URQUHART & SULLIVAN LLP

11                                   By:  /s/ Alicia Cobb
                                         Alicia Cobb, WSBA #48685
12                                       1109 First Avenue, Suite 210
                                         Seattle, Washington 98101
13                                       Phone (206) 905-7000
                                         Fax (206) 905-7100
14                                       aliciacobb@quinnemanuel.com

16                                       Shon Morgan (*pro hac vice*)
                                         John W. Baumann (*pro hac vice*)
17                                       865 South Figueroa Street, 10th Floor
                                         Los Angeles, California 90017
18                                       Phone (213) 443-3000
                                         Fax (213) 443-3100
19                                       shonmorgan@quinnemanuel.com
                                         jackbaumann@quinnemanuel.com

21                                       *Attorneys for Defendant ZoomInfo Technologies LLC.*

---

[7]   The cases plaintiff cites are not relevant to this analysis.  In *Kellman*, 599 F. Supp. at 898-99, the defendant did not raise a Dormant Commerce Clause challenge based on inconsistent regulation of activities, and the court, therefore, did not address such an argument.  The court in *Benson v. Double Down Interactive, LLC*, 527 F. Supp. 3d 1267, 1271 (W.D. Wash. 2021), acknowledged laws that inconsistently regulate activities violate the Dormant Commerce Clause but held that the activities at issue there, involving illegal gambling, were not inherently national and did not require a uniform system of regulation.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS
(3:24-CV-05745-KKE)                                                  16

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## <u>**WORD COUNT**</u>

I certify that this consolidated reply memorandum contains 6,012 words, in compliance with the combined word limit for a reply in support of a motion to dismiss (4,200 words, L.R. 7(e)(3)) and a reply in support of a motion to strike (2,100 words, L.R. 7(e)(4)).  *See also* ECF No. 26 (court order granting stipulation to combine word count for consolidated reply).

DATED this 6th day of January, 2025.


*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND
MOTION TO STRIKE CLASS ALLEGATIONS                    17
(3:24-CV-05745-KKE)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on January 6, 2025, I caused a true and correct copy of the foregoing

3 to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of

4 record.

5          DATED this 6th day of January, 2025.

6

7

8                                         */s/ Alicia Cobb*
                                          Alicia Cobb, WSBA #48685

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000