1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEMARY LAROCK,

                    Plaintiff,

     v.

ZOOMINFO TECHNOLOGIES LLC,

               Defendant.

CASE NO. C24-5745-KKE

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS AND DENYING
DEFENDANT'S MOTION TO STRIKE
CLASS ALLEGATIONS

Plaintiff Memary LaRock sues ZoomInfo Technologies LLC ("ZoomInfo") for violating Washington's Personality Rights Act ("WPRA"), WASH. REV. CODE § 63.60.050.  LaRock argues that the free profile previews and free trials published by ZoomInfo wrongly use LaRock and other putative class members' names to advertise ZoomInfo's products and services.  ZoomInfo moves to dismiss the case under two exemptions in the WPRA and moves to strike the class allegations. The Court denies both motions.

## I.    BACKGROUND

The WPRA grants individuals "a property right in the use of his or her name, voice, signature, photograph, or likeness."  WASH. REV. CODE § 63.60.010.  The WPRA details the circumstances under which these rights are infringed:

> Any person who uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right, has infringed such right.

*Id.* § 63.60.050.  Infringers may be liable for injunctive relief and damages.  *Id.* § 63.60.060.  The WPRA exempts certain uses from liability.  *Id.* § 63.60.070.  Relevant here are the WPRA's exemptions for uses that are "merely descriptive and used fairly and in good faith only to identify or describe something other than the individual or personality" and uses that are "insignificant, de minimis, or incidental."  *Id.*

LaRock alleges ZoomInfo violates the WPRA under two theories.  Dkt. No. 1 ¶¶ 124–152.  First, LaRock asserts that ZoomInfo advertises its database of professional profiles and business-development products through free preview profile pages that list individuals' names and other personal information.  *Id.* ¶¶ 21, 22, 28–72.  LaRock alleges these free preview profile pages are accessed through search engine results for the individual's name and through name searches on the ZoomInfo website.  *Id.* ¶¶ 36, 60.  The free preview profile page includes a profile of the individual with their name and contact information, partially hidden behind a subscription pay-wall.  *Id.* ¶ 31.  The free preview profile page includes advertisements for ZoomInfo's CoPilot and Intent services[1] that inserts the individual's name into the title advertisement.  *Id.* ¶¶ 40, 44.  Second, LaRock alleges ZoomInfo advertises its database and products through "free trials" wherein users have access to "Contact Profiles" that include individuals' names and other personal information.  *Id.* ¶¶ 73–113.  Unlike the free preview profile pages, the Contact Profiles do not hide any of the individual's information.  *Id.* ¶ 97.  Within the Contact Profile page that lists an

---

[1] "Defendant's Intent product advises paying ZoomInfo subscribers when a person or company is searching for products or services that the subscriber offers."  Dkt. No. 1 ¶ 44 n.12.  CoPilot is an artificial intelligence product.  *Id.* ¶ 40.

individual's name, ZoomInfo advertises other products through links on the profile page including products known as Intent, Lists, Chorus, and others.[2] *Id.* ¶ 99.

LaRock brings this action on behalf of two putative classes:

> Free Preview Profile Page Class: All natural persons residing in the United States, but excluding persons residing in California, Illinois, Indiana, and Nevada, who are not subscribers to Zoominfo.com and for whom Defendant established a free-preview "profile" page on Zoominfo.com.

> Free Trial Class: All natural persons residing in the United States, but excluding persons residing in California, Illinois, Indiana, and Nevada, who are not subscribers to Zoominfo.com and for whom Defendant established a "Contact Profile" page accessible to 'free trial' subscribers of Zoominfo.com.

*See id.* ¶¶ 114–15.

ZoomInfo moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) because the alleged uses are exempted under the WPRA. Dkt. No. 20. ZoomInfo also moves to strike the class allegations under Federal Rules of Civil Procedure 12(f) and 23 because the WPRA bars class actions and a multi-state class action is improper. Dkt. No. 19. LaRock responded (Dkt. No. 24) and ZoomInfo replied (Dkt. No. 27). The Court heard oral argument on both motions on February 4, 2025. Dkt. No. 29. The matter is ripe for the Court's consideration.

## II.   SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because ZoomInfo is a citizen of Delaware and Washington (Dkt. No. 1 ¶ 11), the putative class plaintiffs each include one member that is not a citizen of Delaware or Washington (*id.* ¶¶ 114–15), the amount in controversy exceeds $5,000,000, and each putative class would exceed 100 members. 28 U.S.C. §§ 1332(d)(2), (5), (10).

---

[2] "'Intent,' [is] a business intelligence product that identifies companies which are searching for a subscriber's services; 'Lists,' [is] a service where subscribers can upload and create lists of contact profiles; … 'Chorus,' [is] an artificial intelligence product designed to record, summarize, and analyze virtual meetings[.]" Dkt. No. 1 ¶ 99.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS - 3

1

2

### III.   MOTION TO DISMISS

**A.    Legal Standard**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, assuming the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B.    LaRock Alleges Non-Descriptive Uses of Her Name.**

ZoomInfo argues that LaRock has failed to state a claim because the WPRA's "descriptive" exemption applies to the ZoomInfo preview page and pages available during the free trial.  Dkt. No. 20 at 9–12.   The descriptive use exemption shields a user from liability for "merely descriptive" uses.  Specifically, the statute provides:

> This chapter does not apply to a use or authorization of use of an individual's or personality's name that is merely descriptive and used fairly and in good faith only to identify or describe something other than the individual or personality, such as, without limitation, to describe or identify a place, a legacy, a style, a theory, an ownership interest, or a party to a transaction or to accurately describe the goods or services of a party.

WASH. REV. CODE § 63.60.070(5).  Neither party provides case law interpreting this exception or similar right of publicity exemptions, but they agree the Court should look to the plain meaning of the statute. Dkt. No. 20 at 9–10, Dkt. No. 24 at 12 n.1.  ZoomInfo asserts that "[e]very alleged use plaintiff challenges is nothing more than a description of ZoomInfo's database—her claims are based on previews of the content available on ZoomInfo's site and descriptions of its functionality." Dkt. No. 20 at 11–12.  While this argument might be persuasive if the individual names only appeared in example profiles or search results (Dkt. No. 1 ¶¶ 31, 61, 97), LaRock

identifies examples of her name being used in other ways. For example, through the free preview profile, LaRock alleges that ZoomInfo inserts LaRock's name into an advertisement for its CoPilot service. Dkt. No. 1 ¶ 40, *see also id.* ¶ 44 (using LaRock's name in advertisement for ZoomInfo's Intent service). Further, through the free trial Contact Profile, LaRock alleges that her name is pinned to the top of the webpage advertising ZoomInfo's Chorus service. *Id.* ¶ 101. These alleged uses of LaRock's name are not mere examples of the information ZoomInfo maintains.

Because LaRock has alleged that her name is used by ZoomInfo to do more than merely describe its goods or services, the Court denies ZoomInfo's motion on the basis of the descriptive use exemption.

## C.    LaRock Alleges Non-Incidental WPRA Violations.

ZoomInfo also argues that LaRock's claim fails under the WPRA's incidental use exemption, which states:

> This chapter does not apply to the use of an individual's or personality's name, voice, signature, photograph, or likeness when the use of the individual's or personality's name, voice, signature, photograph, or likeness is an insignificant, de minimis, or incidental use.

WASH. REV. CODE § 63.60.070(6). Again, no court has interpreted this exemption specifically with respect to use of an individual's name,[3] but ZoomInfo encourages the Court to consider the following four factors to analyze incidental use:

> (1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication.

---

[3] A recent case from this district cited this exemption to support a holding that incidental similarities are insufficient to state a claim for misappropriation of an individual's likeness. *See Johnson v. Amazon.com Inc.*, No. 2:24-cv-01070-JNW, 2025 WL 949495, at *3–4 (W.D. Wash. Mar. 27, 2025).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS - 5

*Davis v. Elec. Arts Inc*., 775 F.3d 1172, 1180 (9th Cir. 2015) (analyzing "incidental use" under the First Amendment); *see* Dkt. No. 20 at 12–13.  The Ninth Circuit in *Davis* applied this test to find a defendant's "use of the former players' likenesses is not incidental, because it is central to EA's main commercial purpose—to create a realistic virtual simulation of football games involving current and former NFL teams."  775 F.3d at 1175.  Other courts have found business acts analogous to those alleged here to be non-incidental because they go to the heart of the defendant's business.  *See Kellman v. Spokeo, Inc*., 599 F. Supp. 3d 877, 895 (N.D. Cal. 2022) ("Spokeo's business model depends on using the names, information, and likenesses of average people to entice others to subscribe to its services."); *Spindler v. Seamless Contacts, Inc*., No. 4:22-CV-00787-KAW, 2022 WL 16985678, at *5 (N.D. Cal. Oct. 24, 2022) ("Even if, as Plaintiff alleges, he is only one of 'millions of individuals' included in Defendant's database, in aggregate that is not incidental.").

ZoomInfo counters that LaRock's name is just one of millions, and therefore incidental by definition.  *See* Dkt. No. 20 at 16.  The Court is not persuaded.  If that were the analysis, companies would be encouraged to infringe *more* names and likenesses to avoid liability.  *See In re NCAA Student-Athlete Name & Likeness Licensing Litig*., 724 F.3d 1268, 1276 n.7 (9th Cir. 2013) (holding in the context of the transformative use defense under the First Amendment: "Having chosen to use the players' likenesses, EA cannot now hide behind the numerosity of its potential offenses or the alleged unimportance of any one individual player.").  Further, ZoomInfo's reliance on *Charisma Hudson, et al. v. Datanyze* in not persuasive.  702 F. Supp. 3d 628, 634 (N.D. Ohio 2023), *aff'd sub nom. Hudson v. Datanyze, LLC*, No. 23-3998, 2025 WL 80806 (6th Cir. Jan. 13, 2025).  That case held that under Ohio law, "Nonincidental use is that which is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity."  *Id.* at 633 (cleaned up).  That definition of incidental use is

1   inconsistent with the broad protections afforded by the WPRA, which does not condition liability

2   on "reputation, prestige, or other value associated with" a given name. WASH. REV. CODE

3   § 63.60.010 ("The right exists whether or not it was commercially exploited by the individual or

4   the personality during the individual's or the personality's lifetime."). As such, the incidental use

5   analysis in *Datanyze* does not apply to the WPRA's incidental use exemption.

6         In sum, LaRock's allegation that ZoomInfo's use of names is "integral" to its marketing

7   (Dkt. No. 1 ¶¶ 38, 136) is sufficient to overcome the "incidental use" defense at this stage of the

8   proceedings.

9         ZoomInfo's motion to dismiss for failure to state a claim is denied.

10              **IV.   MOTION TO STRIKE CLASS ALLEGATIONS**

11   **A.   Legal Standard**

12         Under Federal Rule of Procedure 12(f), a court may strike "any insufficient defense or any

13   redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A court may

14   "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot

15   be maintained." *Tietsworth v. Sears, Roebuck & Co*., 720 F. Supp. 2d 1123, 1146 (N.D. Cal.

16   2010); *see also Sanders v. Apple Inc*., 672 F. Supp. 2d 978, 989–90 (N.D. Cal. 2009); Fed. R. Civ.

17   P. 23(d)(1)(D) ("In conducting [a class action], the court may … require that the pleadings be

18   amended to eliminate allegations about representation of absent persons and that the action proceed

19   accordingly[.]"). "[D]ismissal of class allegations at the pleading stage," however, "should be

20   done rarely." *In re Wal-Mart Stores, Inc. Wage & Hour Litig*., 505 F. Supp. 2d 609, 615 (N.D.

21   Cal. 2007) (quoting *Myers v. MedQuist, Inc*., No. 05-4608 (JBS), 2006 WL 3751210, at *4 (D.N.J.

22   Dec. 20, 2006)).

23

24

**B.     The WPRA's Class Action Bar Does Not Apply in Federal Court.**

ZoomInfo argues this case cannot proceed as a putative class action because the WPRA explicitly bars class actions.  Dkt. No. 19 at 10–14; WASH. REV. CODE § 63.60.070(3) ("[T]he individuals or personalities complaining of the use shall not bring their cause of action as a class action.").  LaRock responds that this language is procedural and not binding on federal courts, which apply federal rules of procedure that allow class actions.  Dkt. No. 24 at 20–28.

When a state law and federal rule conflict in a case arising under the Court's diversity jurisdiction, courts apply a two-part test to determine which law to apply.  *Martin v. Pierce Cnty.*, 34 F.4th 1125, 1128 (9th Cir. 2022) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)).  The first step of the test requires the Court to evaluate whether the federal procedural rule and state law actually conflict.  *Shady Grove*, 559 U.S. at 398 ("We must first determine whether Rule 23 answers the question in dispute.").  Here, the parties agree that the WPRA's class action ban and Federal Rule of Civil Procedure 23 are in direct conflict and "answer the same question[,]" namely whether a class action can be brought under the WPRA.  *See id.* at 399; Dkt. No. 24 at 25, Dkt. No. 19 at 11.  Because the laws conflict, the Court turns to the second step of the analysis.

The parties disagree on the parameters of the second step of the analysis, but both rely heavily on the Supreme Court's 4-1-4 decision in *Shady Grove*.  In *Shady Grove*, the Supreme Court considered whether a New York state law prohibiting class actions in suits seeking penalties or statutory minimum damages precluded a federal district court sitting in diversity from hearing a class action under Rule 23.  559 U.S. at 396.  In a fractured decision, the Court held that New York could not bar the class action at issue.  Five justices joined in the judgment, but only four justices joined Justice Scalia's plurality.  *Id.* at 395–96.  Justice Stevens joined Justice Scalia's decision in part to affirm that Rule 23 applied in the case, but disagreed with the plurality regarding

whether a valid federal procedural rule should always trump a state procedural rule. *Id.* at 416. Thus, according to the majority, a federal procedural rule will control over a conflicting state law unless the federal rule "exceeds statutory authorization or Congress's rulemaking power." *Id.* at 398. To answer this second question, Justice Scalia would look only to the nature of the federal rule, while Justice Stevens urged an analysis of whether the state rule functions as a "part of the State's definition of substantive rights and remedies." *Id.* at 417 (Stevens, J., concurring).

The Ninth Circuit's *Martin* decision, cited by both parties, implicitly adopts Justice Scalia's plurality opinion. The *Martin* case concerned whether Washington's arbitration declaration requirement in RCW 7.70A.020 applied in federal court. *Martin*, 34 F.4th at 1128. After determining that the Washington statute conflicted with Federal Rules 3 and 8, the court looked to the validity of the federal rules, and concluded that "Rules 3 and 8(a) are both within Congress's constitutional rulemaking power and the statutory authorization provided by the Rules Enabling Act." *Id.* at 1132 ("The Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." (cleaned up)). Applying *Shady Grove*, the court held that because the rules were valid, and conflicted with the state statute, they "displaced" the state law in federal court. *Id.* LaRock argues this Court should take the same approach here, and rule that because the WPRA class action bar conflicts with Rule 23, a valid rule of procedure, the WPRA class action bar does not apply.

By contrast, while also citing *Martin*, ZoomInfo argues that the second step of the conflict analysis should follow Justice Stevens' concurrence in *Shady Grove*, which requires a determination of whether the state law at issue (here, the WPRA class action ban) "function[s] as part of the State's definition of the substantive rights and remedies." Dkt. No. 27 at 18 (quoting *Shady Grove*, 559 U.S. at 417 (Stevens, J., concurring)). The Ninth Circuit has not expressly endorsed this approach, and in fact, appears to disavow it. Though the *Martin* court briefly quoted

the Stevens concurrence in articulating the standard under the Rules Enabling Act, the court did not analyze whether the state law at issue was substantive or procedural.  *Martin*, 34 F.4th at 1129.

Nonetheless, due to the 4-1-4 split in the *Shady Grove* decision and lack of explicit adoption of a test by the Ninth Circuit, some district courts in this circuit evaluate the state law at issue to determine whether it is substantive or procedural.  Applying this reasoning to state law class action bans like the one at issue here, many courts still enforce Rule 23.  *See, e.g.*, *Lindstrom v. Polaris Inc.*, No. CV 23-137-BLG-SPW, 2024 WL 4275619, at *7 (D. Mont. Sept. 24, 2024) (finding the Montana Consumer Protection Act class action ban procedural); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1086 (S.D. Cal. 2017) (finding South Carolina's unfair trade practices act's class action ban procedural).  On the other hand, some courts find that state class action bans are "substantive" and therefore enforceable in federal court.  *See, e.g.*, *Ford v. Hyundai Motor America*, 2021 WL 7448507, at *27–28 (C.D. Cal. Oct. 5, 2021) (enforcing class action ban in Colorado's consumer protection law that states "[e]xcept in a class action" before defining liability and enforcing Alabama class action ban based on statement in state statute that the ban is substantive).

While recognizing the split of authority among our sister district courts in the Ninth Circuit, this Court is persuaded that Justice Scalia's approach in the *Shady Grove* plurality opinion, which asks whether the federal rule "really regulates procedure" is the appropriate second step of the analysis.  *Shady Grove,* 559 U.S. at 407 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)).  This is the approach most consistent with the Ninth Circuit's recent application of *Shady Grove* in *Martin*.

Looking to that question here, the Ninth Circuit has held: "Rule 23 is, of course, a federal procedural rule."  *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 584 (9th Cir. 2022).

> Rule 23 provides a procedural mechanism for a federal court to adjudicate claims of multiple parties at once, instead of in separate suits.  As a claims-aggregating device, Rule 23 leaves the parties' legal rights and duties intact and the rules of decision unchanged, and it does not affect the substance of the claims or plaintiffs' burden of proof.

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (cleaned up); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980) ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims."); *see, e.g.*, *Lee v. ITT Corp.*, No. C10-0618-JCC, 2013 WL 12092549, at *4 (W.D. Wash. Dec. 6, 2013) (confirming Rule 23 is procedural and applies despite foreign country's lack of class action procedure), *aff'd*, 662 F. App'x 535 (9th Cir. 2016).  Therefore, because the WPRA class action ban conflicts with Rule 23, a valid rule of federal procedure, the class action ban must give way.

Even if this Court were to follow those district courts employing Justice Stevens' concurrence, and examine the nature of the class action ban, the result in this case would be the same.  There is no indication that the WPRA's class action ban was intended to impact any substantive right.  Rather, the ban appears in the second sentence of the definition of a prohibited defense.  WASH. REV. CODE § 63.60.070(3) ("It is no defense to an infringement action under this chapter that the use of an individual's or personality's name … includes more than one individual or personality so identifiable.  However, the individuals or personalities complaining of the use shall not bring their cause of action as a class action.").  Moreover, "the class action prohibition itself does not add, subtract, or define any of the necessary elements of the claim."  *Lindstrom*, 2024 WL 4275619, at *7.  Rather, "[t]he prohibition alters only the procedural means by which a plaintiff may pursue that remedy."  *Nelson v. Forest River, Inc.,* No. CV-22-49-BMM, 2023 WL 2610769, at *9 (D. Mont. Mar. 23, 2023).  Because the WPRA's class action ban is not "so bound up with the state-created right or remedy that it defines the scope of that substantive right or

remedy[,]" it does not overcome the federal rule. *See Shady Grove*, 559 U.S. at 420, 432 (Stevens, J., concurring) ("The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt.").

In sum, the Court concludes that the WPRA class action ban is not applicable in federal court.

**C.    The Multi-State Class Is Sufficiently Pleaded.**

ZoomInfo next argues the class allegations should be stricken because the WPRA cannot be applied to out-of-state residents under a choice of law analysis and the dormant Commerce Clause. Dkt. No. 19 at 15–19. ZoomInfo argues that non-residents cannot seek relief under Washington's law where their own state laws provide different protections. Dkt. No. 19 at 15–18. LaRock responds that the WPRA clearly intends to provide a cause of action to people living outside of Washington state. Dkt. No. 24 at 29–32. The parties agree the WPRA conflicts with right of publicity laws in several other states. *See* Dkt. No. 19 at 15–16, Dkt. No. 24 at 29.

To determine which of two or more conflicting laws to apply, "Washington courts use the methodology outlined in the Restatement (Second) of Conflict of Laws § 6 (1971) [hereinafter 'Restatement']." *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1132 (W.D. Wash. 2011), *reversed on other grounds by* 762 F.3d 829 (9th Cir. 2014). Section 6(1) of the Restatement provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(1) (1971). Section 6(2) lays out factors relevant to the "most significant relationship" inquiry where "there is no such directive." *Id.* § 6(2). Accordingly, the Court must first determine whether the WPRA includes a statutory directive on choice of law. If there is a directive, the Court must consider whether it would be unconstitutional to apply the WPRA to

ZoomInfo based on the facts alleged here.  If there is no statutory directive, the Court must apply the most significant relationship test.

    1.  <u>Statutory Directive Analysis</u>

The WPRA states: "This chapter is intended to apply to all individuals and personalities, living and deceased, regardless of place of domicile or place of domicile at time of death."  WASH. REV. CODE § 63.60.010.  This is a statutory directive, evidencing that the legislature intended the WPRA to provide a cause of action to out-of-state plaintiffs.  *Experience Hendrix*, 766 F. Supp. 2d at 1133 (citing *Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002)).

A statutory directive is only enforceable if it is constitutional.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(1).  ZoomInfo argues this statutory directive is unconstitutional under the dormant Commerce Clause.  Dkt. No. 19 at 18–19.  Under the Commerce Clause of the United States Constitution, Congress has authority "[t]o regulate Commerce with foreign Nations, and among the several States."  U.S. CONST. art. I, § 8, cl. 3.  "Courts have found that, implicit in this 'affirmative grant of regulatory power to Congress' is a 'negative aspect, referred to as the dormant Commerce Clause,' that imposes a 'limitation upon the power of the States.'"  *Benson v. Double Down Interactive, LLC*, 527 F. Supp. 3d 1267, 1270 (W.D. Wash. 2021) (quoting *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 991 (9th Cir. 2002)).  "Pursuant to the dormant Commerce Clause, states may neither discriminate against interstate commerce nor impose 'regulations that unduly burden interstate commerce.'"  *Id.* at 1270–71 (quoting *Quill Corp. v. N.D.*, 504 U.S. 298, 312 (1992)).

The Ninth Circuit held in *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.* that the WPRA did not violate the dormant Commerce Clause based on the facts alleged there because the statute did "not affect transactions occurring wholly outside Washington."  762 F.3d 829, 837 (9th Cir. 2014).  Likewise, based on the allegations in the complaint here, the WPRA's application to

1    a multi-state class does not implicate the dormant Commerce Clause because ZoomInfo is located

2    in Washington, and the acts alleged to violate the WPRA are limited to instances where "any

3    person disseminates or publishes such advertisements in this state."   WASH. REV. CODE

4    § 62.60.050; *see also* Dkt. No. 1 ¶¶ 9, 11, 49, 110, 137, 151 (alleging publication and dissemination

5    in Washington state).    Thus, ZoomInfo's claim that the case seeks to regulate conduct "wholly

6    outside of Washington" is without support.  Dkt. No. 27 at 21.  Further, ZoomInfo's argument that

7    the "national" character of the internet implicates the dormant Commerce Clause such that

8    Washington law cannot be applied nationwide *(id.* at 22–23) has also been rejected by courts in

9    this district*.  See Benson*, 527 F. Supp. 3d at 1271 (rejecting dormant Commerce Clause challenge

10   to application of Washington law to nationwide class action where Defendant's mobile application

11   and website were developed, published, and maintained at its Washington headquarters).  Rather,

12   the Ninth Circuit has made clear that even if a Washington law has "significant extraterritorial

13   effects by giving a non-resident a cause of action, 'it passes Commerce Clause muster when, as

14   here, those effects result from the regulation of in-state conduct.'"    *Id.* (quoting *Chinatown*

15   *Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015)).   On its face, the WPRA

16   applies to conduct which occurs in Washington state, and the complaint alleges only conduct

17   taking place in Washington.  As such, there is no obvious constitutional barrier to applying it to

18   the class on the facts alleged here.

19            2.   Most Significant Relationship Analysis

20            Rejecting the statutory directive recognized in *Experience Hendrix*, ZoomInfo urges the

21   Court to engage in a choice of law analysis, known as the most significant relationship test.  Dkt.

22   No. 19 at 16–18.  Even applying this test, the Court concludes the multi-state class is sufficiently

23   pleaded.

24

1    The most significant relationship inquiry involves a two-step analysis. *Benson*, 527 F.

2    Supp. 3d at 1272 (citing *Southwell v. Widing Transp., Inc.*, 676 P.2d 477, 480 (Wash. 1984)). "The

3    Court first evaluates the contacts with each interested jurisdiction, considering which contacts are

4    most significant to the occurrence and the parties and determining where those contacts are found

5    … Second, the Court evaluates the interests and public policies of the competing jurisdictions."

6    *Id.* at 1272–73. ZoomInfo does not meaningfully apply this analysis, but instead reframes the test

7    as a single step: "the state with the 'most significant relationship' will 'be the state where the

8    plaintiff was domiciled' when the alleged injury occurred." Dkt. No. 19 at 16–17 (quoting *The

9    Cousteau Soc'y, Inc. v. Cousteau*, 498 F. Supp. 3d 287, 314 (D. Conn. 2020)[4]). Relying on this

10   partial quote from *Cousteau*, ZoomInfo argues that the law of each class member's state will need

11   to be applied, because a WPRA violation occurs "wherever the end user accesses" a class

12   member's information.[5] Dkt. No. 27 at 21. The Court rejects both ZoomInfo's formulation of the

13   test and its application here. Rather, the Court applies the framework provided in *Benson* and

14   concludes LaRock has sufficiently alleged that Washington has the most significant relationship

15   to the claims in this case.

16       For the first step, relevant state contacts, § 145 of the Restatement identifies the following

17   contacts to be taken into account: the place where the injury occurred; the place where the conduct

18   causing the injury occurred; the domicile, residence, nationality, place of incorporation and place

19   of business of the parties; and the place where the relationship, if any, between the parties is

20

21   _____

22   [4] This quote in *Cousteau* is taken from Section 153 of the Restatement which reads in full that the state with the most significant relationship in a multistate invasion of privacy claim "will usually be the state where the plaintiff was domiciled at the time *if the matter complained of was published in that state*." Restatement (Second) of Conflict of Laws § 153 (emphasis added).

23   [5] As noted below, ZoomInfo's characterization of "use" is in dispute and will undoubtedly be a subject of discovery. For purposes of this motion, the Court accepts as true Plaintiff's allegations concerning where and how her name is used by ZoomInfo.

24

ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS - 15

centered.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.  Again, *Benson* is on point.

There, the court found that the "balance of relevant contacts" tips toward Washington.  *Benson*,

527 F. Supp. 3d at 1273.  As in this case, the defendant in *Benson* was "a Washington corporation,

and any liability-generating conduct on its part occurred here, from creating, publishing, and

maintaining the allegedly illegal gambling games to collecting payments from players around the

country for virtual chips." *Id*.  Like here, some of the *Benson* class members lived in Washington,

and defendant's interactions with class members were "entirely app or web-based," and thus

"could be characterized as centered in Washington or in the state where each class member

resides." *Id.*  On this basis, the court concluded that while many states may have some interest, as

the domicile of the defendant and home to at least some of the plaintiff class members, Washington

"has a greater relationship than does any other single state." *Id.*  The same is true here.

Step two of the most significant relationship analysis "requires an evaluation of the

interests and public policies of the competing jurisdictions."  *Benson*, 527 F. Supp. 3d at 1273.

ZoomInfo does not address this prong of the test.  However, the Court finds that Washington's

public policy is plainly stated in the WPRA, which expressly provides a cause of action to non-

residents.  WASH. REV. CODE § 63.60.010 ("This chapter is intended to apply to all individuals and

personalities, living and deceased, regardless of place of domicile[.]").  "Where the legislature's

intent regarding the range of a state law includes the out-of-state facts involved in a particular case,

the Court is to give effect to that intent unless constitutional considerations forbid it." *Benson*, 527

F. Supp. 3d at 1274 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. b).  As

discussed above, the Court finds no constitutional prohibition on giving effect to the cause of action

created by the legislature here.

Finally, most courts addressing the choice of law issue do so at the class certification stage.

*Kellman*, 599 F. Supp. 3d at 894 ("Courts sometimes decide choice-of-law issues this early in the

case but often defer them until class certification."). "To determine whether the choice-of-law analysis should occur on the pleadings or at class certification, courts generally look to whether discovery would be a meaningful aid to that inquiry." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1010 (N.D. Cal. 2020) (collecting cases). Discovery will be a meaningful aid in this case. For example, ZoomInfo has argued that what "matters instead is how the [plaintiff's] information is used, which will occur in the place of distribution." Dkt. No. 27 at 20. ZoomInfo suggests that the place of distribution is "wherever the end user accesses" the information at issue. *Id.* at 21. But where, when, and how ZoomInfo "uses" plaintiff class members' information involves factual questions that are not yet developed nor before the Court. Rather at this stage, the Court is confined to LaRock's allegations that center the use of class member data within Washington.

In sum, while these issues may be revisited at the class certification or summary judgment stage, the Court concludes that the class allegations are sufficiently pleaded.

## V.    CONCLUSION

For these reasons, Defendant's motion to dismiss and motion to strike class allegations are denied. Dkt. Nos. 19, 20.

The Court will enter a case schedule promptly.

Dated this 8th day of May, 2025.

Kymberly K. Evanson
United States District Judge